JOHN B. SULLIVAN (State Bar No. 96742)
ERIK KEMP (State Bar No. 246196)
MARY KATE KAMKA (State Bar No. 282911)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
NATIONSTAR MORTGAGE LLC

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BURTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:13-cv-00307-LJO-GSA<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    May 29, 2013<br>Time:    8:30 a.m.<br>Crtrm.:   4 |

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 29, 2013, at 8:30 a.m., in Courtroom 4, 7th Floor of the United States District Court for the Eastern District of California at 2500 Tulare Street, Fresno, California, defendant Nationstar Mortgage, LLC ("Nationstar") will and hereby does move to dismiss the complaint with prejudice.

This motion is made pursuant to Fed. R. Civ. P. 12(b)(6), on the ground that the complaint and each of its counts fail to state a claim upon which relief can be granted. This motion is based on the complaint, this motion, the accompanying memorandum of points and authorities and all other documents and pleadings in this case.

Dated:  April 24, 2013

Respectfully submitted,

SEVERSON & WERSON
A Professional Corporation


By:   /s/ *Erik Kemp*
                    Erik Kemp

Attorneys for Defendant
**NATIONSTAR MORTGAGE, LLC**

# TABLE OF CONTENTS

*Page*

I.      INTRODUCTION.................................................................................................... 1

II.     THE ALLEGED FACTS ......................................................................................... 2

III.    NATIONSTAR DID NOT BREACH THE HAMA ............................................... 3

    A.    A Condition Precedent To Loan Modification Was Not Fulfilled ........................... 4

    B.    Residence By Wife And Children Does Not Suffice ................................. 5

    C.    Residence On August 1, 2009 Did Not Suffice ...................................... 5

IV.     BURTON'S OTHER LEGAL THEORIES ALSO FAIL ....................................... 7

    A.    Nationstar Did Not Breach The Implied Covenant Of Good Faith ......................... 7

    B.    The Promissory Estoppel Claim Fails ..................................... 8

    C.    Nationstar Committed No Fraud ....................................... 9

    D.    Burton Has No Viable Unjust Enrichment Claim ..................................... 10

    E.    Burton Has No CLRA Claim .......................................... 11

    F.    Burton Does Not Allege A Viable UCL Claim ..................................... 12

        1.    Unlawful Business Practice ..................................... 12

        2.    Unfair Business Practice ..................................... 13

        3.    Fraudulent Business Practice ..................................... 14

    G.    Burton States No ECOA Claim.......................................... 14

V.      CONCLUSION .................................................................................................. 15

## TABLE OF AUTHORITIES

*Page(s)*

**CASES**

Aleem v. Bank of America,
    2010 WL 532330 (C.D. Cal. 2010) ....................................................................... 13

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) .......................................................................... 9, 12, 13

Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,
    2 Cal.4th 342 (1992) ................................................................................ 8

Carswell v. JP Morgan Chase Bank, N.A.,
    2012 WL 6053168 (9th Cir. 2012) ...................................................................... 11

Darrin v. Bank of America, N.A.,
    2013 WL 877087 (E.D. Cal. 2013) ...................................................................... 12

Davis v. HSBC Bank Nevada, N.A.,
    691 F.3d 1152 (9th Cir. 2012) ......................................................................... 10

Fairbanks v. Superior Court,
    46 Cal.4th 56 (2009) .............................................................................. 11, 12

Flores v. Wells Fargo Bank, N.A.,
    2012 WL 2427227 (N.D. Cal. 2012) ................................................................... 9, 10

Graybill v. Wells Fargo Bank, N.A.,
    2013 WL 978245 (N.D. Cal. 2013) .................................................................... 9, 13

Jones v. CitiMortgage, Inc.,
    2013 WL 504761 (E.D. Cal. 2013) ................................................................. 8, 10, 12

Kearns v. Ford Motor Co.,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................... 14

Kwikset Corp. v. Superior Court,
    51 Cal.4th 310 (2011) .............................................................................. 13

Lectrodryer v. SeoulBank,
    77 Cal. App.4th 723, 91 Cal.Rptr.2d 881 (2000) ...................................................... 11

Lucia v. Wells Fargo Bank, N.A.,
    798 F.Supp.2d 1059 (N.D. Cal. 2011) .................................................................. 13

McKell v. Washington Mut., Inc.,
    142 Cal.App.4th 1457 (2006) ....................................................................... 1, 12

Mehta v. Wells Fargo Bank, N.A.,
    2011 WL 1157861 (S.D. Cal. 2011) ................................................................... 9, 10

# TABLE OF AUTHORITIES

*Page(s)*

*Melchior v. New Line Prods., Inc.*,
106 Cal.App.4th 779, 131 Cal. Rptr.2d 347 (2003) ............................................ 11

*Mid-State Sur. Corp. v. Thrasher Eng'g, Inc.*,
575 F.Supp.2d 731 (S.D. W.Va. 2008) ...................................................... 4

*Pfeifer v. Countrywide Home Loans, Inc.*,
211 Cal.App.4th 1250 (2012) ....................................................... 4

*Platt Pacific v. Andelson*,
6 Cal.4th 307 (1993) ........................................................ 4

*Reynoso v. IndyMac Mortg. Services, FSB*,
2013 WL 388990 (D. Md. 2013) ...................................................... 4

*Rubio v. Capital One Bank*,
572 F.Supp.2d 1157 (C.D. Cal. 2008) ................................................. 12

*Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*,
922 F.Supp. 299 (C.D. Cal. 1996) ................................................... 13

*US Ecology, Inc. v. State of California*,
129 Cal.App.4th 887 (2005) ......................................................... 8

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ..................................................... 14

*Willard v. Valley Forge Life Ins. Co.*,
218 F.Supp.2d 1197 (C.D. Cal. 2002) ................................................. 4

## STATUTES, REGULATIONS, RULES

Code of Federal Regulations
Title 12
Section 202.2 ............................................................ 1, 14, 15

Federal Rules of Civil Procedure
Rule 8 ................................................................. 9, 10
Rule 9 ................................................................ 10, 14

California Business and Professions Code
Section 17200 ................................................................ 3
Section 17204 ............................................................... 13

California Civil Code
Section 1750 ................................................................. 1
Section 1770 ............................................................. 11, 12

**TABLE OF AUTHORITIES**

*Page(s)*

**OTHER AUTHORITIES**

Farnsworth on Contracts (3d ed. 2004)
     Volume II, section 8.2 ............................................................................................................. 4

Federal Reserve Board, Consumer Affairs Letter CA 09-13 (Dec. 4, 2009) ............................... 15

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.      INTRODUCTION

3      This case arises from an attempted HAMP loan modification that was not completed

4  because the borrower moved out of his former Bakersfield home to Colorado.

5      In the second half of 2009, plaintiff Dennis Burton and defendant Nationstar Mortgage,

6  LLC ("Nationstar") signed a Home Affordable Modification Agreement ("HAMA").  The agree-

7  ment provided that it would modify Burton's promissory note and deed of trust if Burton's "repre-

8  sentations in Section 1 continue to be true in all material respects."  The second of the referenced

9  representations was "I live in the Property as my principal residence …."

10      As Burton's complaint admits, that representation did not "continue to be true."  In fact,

11  Burton took a job in Colorado.  He returned only "periodically" to California and "stay[ed]" at the

12  Bakersfield home when he "visited."  Compl., ¶ 31.

13      Burton alleges that his wife and children continued to reside in the Bakersfield home full

14  time.  *Id.*  But that fact is irrelevant.  Burton's wife was not a co-borrower on the loan.  She did not

15  sign the HAMA, only Burton did.  And it was Burton, not his wife, who represented that he, not

16  she, lived in the home as his, not her, principal residence.

17      These allegations show that Nationstar had a contractually authorized reason for invali-

18  dating the HAMA.  Consequently, none of the complaint's counts state a claim on which relief

19  may be granted.

20      In addition, individual counts are flawed for a variety of other reasons that are explained in

21  detail below.  For example, the last count for violation of the Equal Credit Opportunity Act

22  ("ECOA") fails because no adverse action notice need be given to a borrower who is in default.

23  12 C.F.R. § 202.2(c)(1)(i).  The first of Burton's representations in his HAMA includes the state-

24  ment "I am in default under the Loan Documents."  Count VI for violation of California's Con-

25  sumers Legal Remedies Act ("CLRA"; Civ. Code, § 1750 et seq.) fails for a different reason:  the

26  CLRA does not apply to a loan or loan modification that is not a "good" or "service."  *McKell v.*

27  *Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1488 (2006).

28      For these and the other reasons discussed below, the complaint should be dismissed.

80001.0009/2631334.1

II.     **THE ALLEGED FACTS**

Burton is now a citizen of Colorado.  Compl., ¶ 11.  He used to live in a house in Bakers-field.[1]  *Id.*  In December 2006, Burton had obtained a home mortgage loan of about $300,000, securing it with a deed of trust encumbering the property.  Compl., Ex. A-1, p. 1.

By early 2009, Burton was in default on the loan.  He applied to the servicer, Nationstar, for a loan modification.  In April 2009, Burton and Nationstar entered into a Home Affordable Modification Trial Period Plan ("TPP") under which Burton was to make monthly payments of $1,921.58 for three months in order to qualify for a permanent loan modification.  Compl., ¶¶ 21-23, Ex. A-1.  Burton says he made all three required payments under the TPP.  Compl., ¶ 26.

Nationstar sent Burton a HAMA, which Burton signed on August 25, 2009 and Nationstar signed on October 9, 2009.  Compl., ¶ 27, Ex. A-2.  The HAMA begins with the following text:

> *If my representations in Section 1 continue to be true in all material respects*, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

Compl., Ex. A-2, p. 2 (emphasis added).

Section 3 restates the condition mentioned in the introductory text:

> 3.     **The Modification**.  *If my representations in Section 1 continue to be true in all material respects* and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on August 1, 2009 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  …

Compl., Ex. A-2, p. 3 (emphasis added).

Section 1 of the HAMA provides:

> 1.     **My Representations**.  I certify, represent to Lender and agree:
>
>> A.     I am experiencing a financial hardship, and as a

---

[1]     The complaint alleges that the home was on Paulina Street, Compl., ¶ 11, but the HAMA lists the property address as "5705 Nomi Street," Compl., Ex. A-2, p. 1.  Moreover, a search on Google Maps indicates there is no Paulina Street in Bakersfield.

1   result, (i) I am in default under the Loan Documents …

2          B.      I live in the Property as my principal residence ….

3   Compl., Ex. A-2, p. 2.

4          Burton continued making monthly payments of $1,915,20 as was required under both the

5   TPP and HAMA.  Compl., ¶ 29.  He had several telephone contacts with Nationstar personnel in

6   which he was told to keep making those payments and that his loan modification "was simply

7   waiting to be 'booked.' "  Id.

8          After several months, however, Nationstar refused to honor the HAMA.  Compl., ¶ 30.  In-

9   stead, it sent Burton a letter on March 7, 2010 stating that it had terminated the HAMA and was

10  proceeding with foreclosure because Burton's home was not "owner occupied."  Compl., ¶ 31.

11         Burton further alleges:

12             At that time, Burton's wife and seven children were residing full
               time at the Bakersfield property.  Burton was temporarily working in
13             Colorado and would return periodically to California and stay at the
               Bakersfield property when he visited.

14
    Compl., ¶ 31.
15

16         Burton claims he took the job in Colorado "when it became evident that Nationstar was

17  defaulting on the" HAMA and that Burton would need more income to save his home.  Id.

18         Nationstar refused to reinstate the HAMA and ultimately foreclosed on Burton's former

19  Bakersfield home.  Compl., ¶ 33.

20         Based on these factual allegations, Burton attempts to allege for himself and for a class

21  eight claims for relief based on theories of (1) breach of contract, (2) breach of the covenant of

22  good faith, (3) promissory estoppel, (4) fraud, (5) unjust enrichment/restitution, (6) violation of the

23  CLRA, (7) violation of California Business and Professions Code § 17200 ("UCL"), and

24  (8) violation of ECOA.  Compl., ¶¶ 46-99.

25  **III.    NATIONSTAR DID NOT BREACH THE HAMA**

26         Burton's first count for breach of contract is the crux of his case.  It fails because Burton's

27  own allegations show that his representation that the Bakersfield property was his principal resi-

28  dence did not continue to be true.  Therefore, under the HAMA's express terms, the modification

1    did not take effect, but instead was properly terminated by Nationstar.

2        **A.    A Condition Precedent To Loan Modification Was Not Fulfilled**

3        The HAMA's introductory text and section 3 both expressly state, as a condition precedent

4    to modification of Burton's loan, that his representations in section 1 must "continue" to be true.

5    *See* p. 2 above; Compl., ¶¶ 48, 49, Ex. A-2, pp. 2-3.  Each of those parts of the HAMA begin with

6    the words "[i]f my representations in Section 1 continue to be true in all material respects ...."  *Id.*

7    That wording is more than sufficient to create a condition precedent.[2]

8        Burton's own complaint shows that he did not fulfill this express condition precedent to a

9    permanent loan modification.  One of Burton's representations in section 1 was that "I live in the

10   Property as my principal residence."  That representation did not "continue to be true in all mate-

11   rial respects."  Burton concedes that he took a job in Colorado and thereafter returned to California

12   only "periodically" and "stay[ed] at the Bakersfield property when he visited."  Compl., ¶ 31.

13   Staying at a home when visiting periodically is not living in the home as one's principal residence.

14       "A contract is unenforceable if a condition precedent is not met."  *Willard v. Valley Forge*

15   *Life Ins. Co.*, 218 F.Supp.2d 1197, 1201 (C.D. Cal. 2002) (citing *Platt Pacific v. Andelson*,

16   6 Cal.4th 307, 313-14 (1993)).  So, contrary to Burton's allegation, Nationstar did not breach his

17   HAMA "by failing to permanently modify Burton's ... loan[] and instead foreclosing on [him]

18   ...."  Compl., ¶ 50.  Instead, the duty to permanently modify Burton's loan never matured because

19   a condition precedent to that duty was not met.  *See e.g., Reynoso v. IndyMac Mortg. Services,*

20   *FSB*, 2013 WL 388990, at * 4 & n. 2 (D. Md. 2013) (noting borrower was not qualified for HAMP

21   since property was not her principal residence).

22

23

24   [2]       "Parties often use language such as 'if,' 'on condition that,' 'provided that,' 'in the event
     that,' and 'subject to' to make an event a condition but other words may suffice."  II Farnsworth
25   on Contracts, § 8.2, pp. 415-16 (3d ed. 2004) (fn. omitted).  "Words such as 'provided that' and
     'if,' when used to qualify a promise, are among the most commonly used expressions to create a
26   condition precedent, but they are not the only words capable of doing so."  *Mid-State Sur. Corp. v.*
     *Thrasher Eng'g, Inc.*, 575 F.Supp.2d 731, 741 (S.D. W.Va. 2008); *see also Pfeifer v. Countrywide*
27   *Home Loans, Inc.*, 211 Cal.App.4th 1250, 1267-68 (2012).

28

**B.      Residence By Wife And Children Does Not Suffice**

Burton alleges that though he no longer resided in the Bakersfield home, his wife and children did.  Compl., ¶ 31.  Without saying so expressly, he implies that residence by wife and children should suffice, even if he resided elsewhere.

Burton is wrong.  The HAMA lists Burton, himself, as the sole borrower, and states that as used in the HAMA, "I" refers to him, Dennis Burton, only.  Compl., Ex. A-2, p. 1.  The representation in section 1(B) is that "I" live in the property as my principal residence.  Compl., Ex. A-2, § 1(B), p. 2.  Since "I" refers only to Dennis Burton, the representation is that he, Dennis Burton, lives in the property as his principal residence.

Section 1(B) does *not* say "I or my family" reside there or "my wife and children" live in the home.  Any number of other phrases could have been used if the HAMA was intended to allow a loan modification to be finalized when the borrower's relatives use the encumbered property as a principal residence, but the borrower himself does not.

Instead of any of those possible phrases, the HAMA's actual representation is stark, simple and explicit.  "I," which is defined to mean the borrower, Dennis Burton, "live in the Property as my principal residence."  Compl., Ex. A-2, p. 1 & § 1(B), p. 2.  That can only mean that Dennis Burton must reside in the Bakersfield home as his principal residence, whoever else may or may not reside there.

Since that representation did not "continue to be true in all material respects," a condition precedent to a permanent loan modification was not fulfilled, and the modification agreement was unenforceable.

**C.      Residence On August 1, 2009 Did Not Suffice**

Burton tries another dodge around his failure to satisfy the condition precedent.  He avers that the HAMA "obligated Nationstar to verify its customers' continued eligibility prior to the Modification Effective Dates set forth in [the HAMA] (*See* [HAMA] ¶¶ 2A-B.)"  Compl., ¶ 53.  He further claims that "Nationstar breached the requirement that it verify that its customers' representations continued to be true prior to the Modification Effective Date by delaying its review and continuing to evaluate borrowers long after their Modification Effective Dates had passed."

1  Compl., ¶ 55.

2      These contentions misconstrue the HAMA in two different ways.  First, contrary to Bur-

3  ton's allegation, section 2 of the HAMA does *not* impose any contractual duty or obligation on

4  Nationstar to verify the truth of his section 1 representations before the Modification Effective

5  Date.  That fact is evident in section 2's title—"Acknowledgements and Preconditions to

6  Modification"—as it is in section 2's text:

7          2.      **Acknowledgements and Preconditions to Modification**.  I
                   understand and acknowledge that:
8
                   A.      TIME IS OF THE ESSENCE under this Agreement;
9
                   B.      If prior to the Modification Effective Date as set forth
10                         in Section 3 the Lender determines that my represen-
                           tations in Section 1 are no longer true and correct, the
11                         Loan Documents will not be modified and this
                           Agreement will terminate.  In this event, the Lender
12                         will have all the rights and remedies provided by the
                           Loan Documents;
13
                   C.      I understand that the Loan Documents will not be
14                         modified unless and until (i) I receive from the Len-
                           der a copy of this Agreement signed by the Lender,
15                         and (ii) the Modification Effective Date (as defined
                           in Section 3) has occurred.  I further understand and
16                         agree that the Lender will not be obligated or bound
                           to make any modification of the Loan Document if I
17                         fail to meet any one of the requirements under this
                           Agreement.
18
   Compl., Ex. A-2, p. 2.
19

20      Only the first sentence of section 2(B) mentions anything about the borrower's representa-

21  tions.  It clearly does not impose any contractual duty on the lender to verify the borrower's repre-

22  sentations.  Instead, it simply states what will occur if the lender happens to find out the represen-

23  tations are no longer true.  As there is no contractual duty to verify, there was no breach in failing

24  to do so before the Modification Effective Date.

25      Second, Burton's allegations misconstrue the effect of the Modification Effective Date.

26  The complaint implies that so long as the borrower's section 1 representations are true on that

27  date, it does not matter whether they are true thereafter.

28      That implicit assertion also misreads the HAMA.  As section 3 makes clear, the Modifica-

tion Effective Date—in Burton's case, August 1, 2009—is the date as of which the loan terms will be modified, if all conditions to the loan modification are met.  But as already pointed out, one of those conditions was that the borrower's "representations in Section 1 ***continue*** to be true in all material respects."  Compl., Ex. A-2, § 3, p. 3 (emphasis added).  "Continue" must mean, at a minimum, that the representations are true as of the dates on which Burton and Nationstar signed the HAMA—particularly as section 2(C) states that "the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender …."  Since loan modification does not occur until the lender signs and returns the HAMA, the representations must "continue" to be true through at least that date (in this case, October 9, 2009).

If the parties intended that the borrower's representations need be true on the Modification Effective Date, and not thereafter, it would have been simple enough to draft the "if" clause in the HAMA's introductory text and section 3 to say so expressly.  Instead of the actual wording—"If my representations in Section 1 continue to be true in all material respects"—those portions of the HAMA would have contained language that specifically referenced the Modification Effective Date, such as "If my representations in Section 1 are true on [or through] the Modification Effective Date in all material respects."

Of course, that alternative wording cannot be found in Burton's HAMA.  So the HAMA's condition precedent cannot reasonably be read to require only that the borrower's representations be true on the Modification Effective Date (here, August 1, 2009) and not thereafter.

Thus, the complaint fails to state a breach of contract claim on which relief may be granted.

## IV.    BURTON'S OTHER LEGAL THEORIES ALSO FAIL

### A.    Nationstar Did Not Breach The Implied Covenant Of Good Faith

Burton's second count alleges that Nationstar breached the implied covenant of good faith by abusing its discretionary powers under the HAMA by "failing to 'book,' record, or otherwise cause Burton's … modification[] to be put into effect …."  Compl., ¶¶ 58-60.

This claim fails for the same reason as the breach of contract claim.  If anything is clear about the implied covenant of good faith, it is that the covenant does not prohibit what the express

terms of the contract permits.  "As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct."  *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 374 (1992); *Jones v. CitiMortgage, Inc.*, 2013 WL 504761, at *8 (E.D. Cal. 2013).  Here, as explained above (pp. 3-7), the HAMA's express terms authorized Nationstar to invalidate the HAMA when it learned Burton's section 1 representations were not true.  So no covenant may be implied to forbid Nationstar from refusing to modify Burton's note and deed of trust once it found that he no longer resided in Bakersfield.

What Burton seems to claim is that Nationstar should have processed his HAMA more quickly so he could move from Bakersfield sooner without ill effect.  But that is not a benefit that the HAMA promised him or even a reasonable implication from its terms.  HAMP was intended to benefit borrowers who continued living in the homes they could not quite afford, not people like Burton who moved elsewhere.

**B.      The Promissory Estoppel Claim Fails**

The third count of Burton's complaint attempts to allege a claim based on a promissory estoppel theory.  Nationstar supposedly promised to modify Burton's loan.  He relied on the promise by making the "required payments" and kept his "representations true and correct through [his] Modification Effective Date[]."  Compl., ¶¶ 63, 64.  Had he only known the truth, Burton might have "save[d his] home" through an " 'efficient breach' " or by filing a bankruptcy petition or by other means not involving paying Nationstar any money.  Compl., ¶ 64.

This claim fails for at least two reasons.  First, promissory estoppel surmounts one and only one defect in an ordinary breach of contract claim—lack of consideration.  "[P]romissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract …."  *US Ecology, Inc. v. State of California*, 129 Cal.App.4th 887, 904 (2005).  Here, as shown above, pp. 3-7, the problem with Burton's breach of contract claim is not lack of consideration, but failure of a condition precedent.  Promissory estoppel does not cure that defect and so does not give Burton a viable claim for relief.

1     Second, Burton fails to allege sufficient detrimental reliance on Nationstar's promise to

2  support a promissory estoppel claim.  Paying sums Burton already owed under his note and deed

3  of trust (or the lesser sums allowed under the TPP or HAMA) does not suffice.  *Flores v. Wells*

4  *Fargo Bank, N.A.*, 2012 WL 2427227, at *7 (N.D. Cal. 2012).  "Efficient breach" presumably

5  means not paying as agreed.  Such a breach would, of course, not save Burton's home.  Moreover,

6  breach, whether or not "efficient," is, in this instance, simply not making legally required pay-

7  ments.  As making those payments cannot suffice, neither can foregoing the opportunity not to

8  make them.  Not filing a bankruptcy petition is also insufficient to anchor a promissory estoppel

9  claim, at least absent facts Burton does not allege.  *See Mehta v. Wells Fargo Bank, N.A.*, 2011

10 WL 1157861, at *3 (S.D. Cal. 2011).  "Other alternatives" not further specified does not satisfy

11 federal pleading standards.  Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009);

12 *see also Graybill v. Wells Fargo Bank, N.A.,* 2013 WL 978245, at *15 (N.D. Cal. 2013).

13     **C.     Nationstar Committed No Fraud**

14     As the basis for his fourth count for fraud, Burton avers that Nationstar represented in the

15 HAMA that "if Burton's … representations continued to be true and correct, as determined by

16 Nationstar prior to the Modification Effective Date," then the HAMA would modify his note and

17 deed of trust as of that date.  Compl., ¶ 68.

18     As already seen, the HAMA does not make that representation.  *See* pp. 5-7 above.  Sec-

19 tion 2(B) states the converse proposition:  If Lender learns before the Modification Effective Date

20 that the representations are no longer true, the loan will not be modified.  But nothing in the

21 HAMA promises modification if the borrower's representations do not "continue to be true in all

22 material respects" at least through both parties' executing the HAMA, if, as in this case, the

23 agreement is signed well after the Modification Effective Date.

24     Burton's fraud claim also fails for the same reason his promissory estoppel claim does—

25 lack of reliance.  Again, he alleges that but for the supposedly fraudulent representation, he would

26 have "engaged in other efforts to save [his] home[], performed 'efficient breaches,' declared bank-

27 ruptcy, or taken other alternatives" rather than pay Nationstar what he owed.  Compl., ¶ 69.  As

28 already shown, paying what you owe—or foregoing the chance to breach, efficiently or otherwise,

by not paying what you owe—is not sufficiently detrimental reliance to support a promissory fraud claim.  *Flores*, 2012 WL 2427227, at *7.  It does no better as support for a fraud claim. Similarly, just avoiding bankruptcy is not enough.  *Mehta*, 2011 WL 1157861, at *3.  The rest of Burton's reliance allegation fails to satisfy Fed. R. Civ. P. 8(a), let alone Fed. R. Civ. P. 9(b)'s more stringent requirements.

At the end of his fraud count, Burton appends five paragraphs which bizarrely seek to hold Nationstar liable for "a broader scheme" to defraud based on what is clearly negligent conduct— "intentionally fail[ing] to adhere to basic standards of competence and diligence," "employ[ing] personnel to process loan modifications without sufficient experience or training," and "falsely report[ing] its compliance with HAMP to the government."  Compl., ¶¶ 72-76.

Even more clearly than the rest of Count IV, these five paragraphs fail to allege fraud and must be dismissed.  Under California law, fraud requires the statement of a known falsehood on which the plaintiff justifiably relies to his or her detriment.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012); *Jones*, 2013 WL 504761, at *5.  Apart from the asserted false report of HAMP compliance,[3] paragraphs 72-76 allege no misstatement of fact.  Instead, these paragraphs charge that Nationstar did not conform to "basic standards of competence and diligence" and hired insufficiently trained personnel.  These allegations are not sufficient to allege any claim either, but at most they might be negligence—a claim Burton does not attempt to allege. It is certainly not fraud.

**D.     Burton Has No Viable Unjust Enrichment Claim**

Count V of Burton's complaint attempts to allege a claim for unjust enrichment, assertedly as an alternative to Count I's breach of contract claim.  *See* Compl., 15:26.  It asserts that Burton conferred benefits on Nationstar "including monthly payments that shouldn't have been made" and his "home[] which shouldn't have been foreclosed on and repossessed."  Compl., ¶ 78.  Bur-

---

[3]      The purportedly false report was made to the government, not to Burton.  He does not and cannot allege that he relied in any manner on Nationstar's telling the Treasury it was complying with HAMP.

1  ton goes on to say that "equity and good conscience demand that Nationstar make restitution by

2  returning monies paid during and after trial periods where no permanent modification was pro-

3  vided …." Compl., ¶ 79.

4        In a recent memorandum disposition, the Ninth Circuit gave suitably short shrift to a simi-

5  lar claim:

6           The district court properly dismissed the claim for unjust enrich-
            ment.  Even if such a theory exists in California, *compare Melchior*
7           *v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 131 Cal. Rptr.2d
            347, 357 (2003) (holding that there is no cause of action in Califor-
8           nia for unjust enrichment), *with Lectrodryer v. SeoulBank*, 77 Cal.
            App.4th 723, 91 Cal.Rptr.2d 881, 883-84 (2000) (permitting an un-
9           just enrichment claim to stand),  JPMorgan Chase Bank ("Chase")
            was entitled to receive Plaintiff's loan payments because it was the
10          loan servicer.

11 *Carswell v. JP Morgan Chase Bank, N.A.*, 2012 WL 6053168, at *1 (9th Cir. 2012).

12
        Here, Nationstar serviced Burton's loan.  Compl., ¶ 16, Ex. A-2, p. 1.  It was entitled to re-
13
   ceive his loan payments.  There is nothing inequitable or unconscionable in Nationstar's retaining
14
   Burton's monthly payments made under the TPP or afterwards.  Those payments were less than
15
   the sums he was contractually obligated to pay under his promissory note.
16
        As already explained, Burton was not promised a loan modification unless his section 1
17
   representations "continue[d] to be true in all material respects."  When he moved to Colorado,
18
   Burton lost the right to modify the loan on his Bakersfield home.
19
        Burton does not and cannot factually support the conclusory allegations of Count V that he
20
   made payments he "shouldn't have" or that his home "shouldn't have been foreclosed on and re-
21
   possessed."  Compl., ¶ 78.  Hence, he shows no unjust retention of benefits by Nationstar.
22
   **E.        Burton Has No CLRA Claim**
23
        Count VI of Burton's complaint fails to allege a viable CLRA claim for two reasons.  First,
24
   the CLRA "prohibits specified unfair and deceptive acts and practices in a 'transaction intended to
25
   result or which results in the sale or lease of goods or services to any consumer.' " *Fairbanks v.*
26
   *Superior Court,* 46 Cal.4th 56, 59 (2009) (quoting Civ. Code, § 1770(a)).  A home mortgage loan
27
   or a modification of such a loan is not a good or service within the CLRA's definitions of those
28

1  terms.  So the statute does not apply.[4]  *McKell*, 142 Cal.App.4th at 1488; *Darrin v. Bank of Amer-*

2  *ica, N.A.*, 2013 WL 877087, at *6 (E.D. Cal. 2013).

3       Second, Burton's complaint alleges only that "Nationstar's practices constitute unfair busi-

4  ness practices under the CLRA."  Compl., ¶ 81.  That averment is the very sort of "threadbare

5  recital" or "mere conclusory statement" which cannot withstand a motion to dismiss.  *Ashcroft,*

6  556 U.S. at 678.  Moreover, the CLRA does not forbid "unfair business practices" in general.  In-

7  stead, it prohibits 23 specific kinds of misleading conduct, such as "[a]dvertising furniture without

8  clearly indicating that it is unassembled if that is the case," or "[r]epresenting that a part, replace-

9  ment, or repair service is needed when it is not."  Civ. Code, § 1770(a)(11), (15).  Neither in Count

10 VI nor anywhere else in the complaint is there any allegation of facts establishing that Nationstar

11 engaged in any of one of the 23 types of conduct that the CLRA forbids.

12      **F.       Burton Does Not Allege A Viable UCL Claim**

13      Rather than restating the requirements for pleading a claim under California's UCL in fed-

14 eral court, Nationstar respectfully refers the Court to its own recent recitation of those require-

15 ments.  *Jones*, 2013 WL 504761, at *11-13.  Burton's allegations do not satisfy those requirements

16 for the reasons stated below.

17                **1.       Unlawful Business Practice**

18      Burton begins by claiming that Nationstar's conduct is unlawful because it violates

19 ECOA's adverse action notice requirement.  Compl., ¶ 86.  This allegation fails for the reason dis-

20 cussed in greater detail below; namely, Burton was in default and so Nationstar was not required

21 to send him an adverse action notice.  *See* pp. 14-15 below.  "Where a plaintiff cannot state a

22 claim under the "borrowed" law, [he] cannot state a UCL claim either."  *Jones*, 2013 WL 504761,

23 at *12 (*quoting Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008)).

24      Burton also alleges that Nationstar's conduct was unlawful because it violated "numerous

25

───────────────

26 [4]       That ancillary services, such as loan servicing, are provided in connection with a home
loan is insufficient to draw the otherwise exempt transaction within the CLRA's scope.  *Fair-*

27 *banks*, 46 Cal.4th at 65.

28

1   provisions of the HAMP directives that prohibit the charging of late fees, dual tracking, falsely

2   telling borrowers they need to be in default to qualify, reevaluating borrowers after their Modifi-

3   cation Effective Dates and otherwise grossly mishandling its borrowers' HAMP applications and

4   contract documents." Compl., ¶ 86. Needless to say, this is the sort of "threadbare recital" or

5   "mere conclusory statement" that cannot withstand a motion to dismiss. *Ashcroft,* 556 U.S. at

6   678.

7           Also, except for the assertion that Nationstar "reevaluat[ed] borrowers after their Modifica-

8   tion Effective Dates,"[5] Burton has not alleged facts showing that any of these supposed violations

9   occurred in the servicing of his loan or that any of them caused him any economic injury. So he

10  lacks standing to pursue a UCL claim based on those allegedly wrongful acts.[6] Bus. & Prof. Code,

11  § 17204.

12          Finally, California may not grant a borrower a remedy for violation of HAMP directives

13  when Congress and the Treasury have chosen not to do so. "There is no private right of action

14  under HAMP, and the UCL cannot create a private right of action where none exists under the

15  federal statute." *Graybill,* 2013 WL 978245, at *16 (*citing Lucia v. Wells Fargo Bank, N.A.*,

16  798 F.Supp.2d 1059, 1072 (N.D. Cal. 2011); *Aleem v. Bank of America*, 2010 WL 532330, at *3

17  (C.D. Cal. 2010); *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F.Supp. 299,

18  316 (C.D. Cal. 1996)).

19                    **2.        Unfair Business Practice**

20          The gist of Burton's allegations under the UCL's unfair business practice prong is that Na-

21  tionstar "serially breach[es]" HAMAs, "foreclose[s] on borrowers who have fully complied with

22  all [HAMA] and HAMP requirements, and "mislead[s] borrowers regarding their ability to obtain

23  _____

24  [5]        As shown above, pp. 5-7, the HAMA does not forbid reevaluation of the borrower's sec-
    tion 1 representations after the Modification Effective Date. Burton does not point to any HAMP
    "directive" that does so either.

25  [6]        "Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the unfair
26  competition …. 'The phrase "as a result of" in its plain and ordinary sense means "caused by" and
    requires a showing of a causal connection or reliance on the alleged misrepresentation.' " *Kwikset*
27  *Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011) (citations omitted).

28

1    loan modifications."  Compl., ¶ 88.

2         This conclusory allegation is not supported by any allegations of fact.  As previously

3    shown, pp. 4-7, Nationstar did not breach Burton's HAMA, and he alleges no facts showing that

4    Nationstar breached any other borrower's loan modification agreement.  Burton's complaint,

5    likewise, fails to show that he (or any other borrower) complied with all requirements of his

6    HAMA, yet was foreclosed upon.  The complaint also fails to allege any facts showing that Na-

7    tionstar misled Burton or any other borrower about his or her ability to obtain a loan modification.

8                    **3.      Fraudulent Business Practice**

9         Burton's complaint devotes only one sentence to the UCL's fraudulent business practice

10   prong, asserting that the conduct "described throughout this Complaint" and specifically in

11   paragraphs 67-76 (the fraud claim, Count IV), "violates the UCL's fraudulent prong."  Compl., ¶

12   87.

13        This is plainly inadequate pleading.  Fed. R. Civ. P. 9(b) applies to UCL fraudulent busi-

14   ness practice claims.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009); *Vess v.*

15   *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).  Neither paragraph 87 nor the

16   paragraphs it incorporates by reference come anywhere close to satisfying Rule 9(b)'s requirement

17   of pleading fraud with particularity.

18        Furthermore, as already shown (*see*  p. 9), Nationstar does not make the only

19   misrepresentation alleged in paragraphs 67-76.

20                    **G.      Burton States No ECOA Claim**

21        Burton finally claims that Nationstar violated ECOA when it failed to send him an adverse

22   action notice upon terminating his HAMA because he no longer lived in the Bakersfield house as

23   his principal residence.  Compl., ¶¶ 91-99.

24        This claim fails because Burton was in default under his loan with Nationstar.  In his

25   HAMA, Burton specifically represents "I am in default under the Loan Documents."  Compl.,

26   Ex. A-2, § 1(A)(i), p. 2.  Regulation B, which implements ECOA, defines "adverse action" to ex-

27   clude "[a]ny action or forbearance relating to an account taken in connection with … default, or

28   delinquency as to that account."  12 C.F.R. § 202.2(c)(2)(ii).  As the Federal Reserve Board ex-

1   plained in Consumer Affairs Letter No. CA 09-13:  "Under Regulation B, a creditor is not re-

2   quired to provide an adverse action notice to a borrower whose account is currently delinquent or

3   in default."[7]  An omitted footnote appended to this sentence cites 12 C.F.R. § 202.2(c)(2)(ii).

4   Since Burton's loan was in default, any action taken with respect to it was not "adverse action" for

5   ECOA purposes.  No adverse action notice was required.  No ECOA violation is alleged.

6   **V.      CONCLUSION**

7        For the reasons stated above, the Court should dismiss Burton's complaint and each of its

8   counts with prejudice.

9   DATED:  April 24, 2013                    SEVERSON & WERSON
                                              A Professional Corporation
10

11

12                                           By:      _/s/ Erik Kemp_____
                                                            Erik Kemp
13

14                                           Attorneys for Defendant
                                             **NATIONSTAR MORTGAGE, LLC**
15

16

17

18

19

20

21

22

23

24

25   _____

26   [7]      Consumer Affairs Letter CA 09-13 (Dec. 4, 2009) on the subject of "Mortgage Loan
     Modification and Regulation B's Adverse Action Requirement" is publicly available at
27   <http://www.federalreserve.gov/boarddocs/caletters/2009/0913/caltr0913.htm>.

28