1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DENNIS BURTON,                                    CASE NO. CV F 13-0307 LJO GSA

          Plaintiff,                          **ORDER ON DEFENDANT'S F.R.Civ.P. 12
                                                            MOTION TO DISMISS**
    vs.                                              (Doc. 8.)

NATIONSTAR MORTGAGE LLC,

          Defendant.
_____/

**PRELIMINARY STATEMENT TO THE PARTIES AND COUNSEL**

    Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider, and if necessary, to reconsider consent to a U.S. Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases. A Magistrate Judge consent form is available on this Court's website.

    Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension

1   mid-trial to accommodate criminal matters.  Civil trials are no longer reset to a later date if Judge O'Neill

2   is unavailable on the original date set for trial.  If a trial trails, it may proceed with little advance notice,

3   and the parties and counsel may be expected to proceed to trial with less than 24 hours notice.

4   Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to

5   U.S. District Judges throughout the nation to serve as visiting judges.  This action is under consideration

6   for such reassignment.  In the absence of Magistrate Judge consent, this action is subject to reassignment

7   to a U.S. District Judge from outside the Eastern District of California.  Case management difficulties,

8   including trial setting and interruption, are avoided if the parties consent to conduct of further

9   proceedings by a U.S. Magistrate Judge.

## INTRODUCTION

Defendant Nationstar Mortgage LLC ("Nationstar") seeks to dismiss as insufficiently pled plaintiff Dennis Burton's ("Mr. Burton's") contract and statutory claims arising from Nationstar's invalidating modification of a loan for Mr. Burton's Bakersfield property ("property").  Mr. Burton accuses Nationstar of dishonoring agreements to provide loan modifications and argues that his claims are factually and legally supported.  This Court considered Nationstar's F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing.  *See* Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES Mr. Burton's claims.

## BACKGROUND[1]

### Summary

Nationstar serviced Mr. Burton's property loan and entered into an agreement with Mr. Burton to modify Mr. Burton's loan under the Home Affordable Modification Program ("HAMP").  Mr. Burton is a current Colorado citizen and formerly resided at the property.  Nationstar determined that Mr. Burton's failure to reside on the property invalidated the loan modification and foreclosed on the property.  Mr. Burton accuses Nationstar of wrongfully refusing to modify permanently Mr. Burton's and similarly situated borrowers' loans as required under HAMP although Mr. Burton and the other borrowers were qualified and satisfied HAMP requirements for permanent loan modification.

---

[1]   The factual recitation summarizes Mr. Burton's operative Class Action Complaint for Damages and Injunctive Relief ("complaint") and other matters which this Court may consider.

### The Home Affordable Modification Program

The U.S. Department of Treasury ("DOT") established HAMP pursuant to the Emergency Economic Stabilization Act of 2008, which was amended in February 2009 by the American Recovery and Reinvestment Act of 2009, 12 U.S.C. §§ 5201, et seq. (collectively the "Act").  The Act directed DOT to protect home values and other assets of individuals, to preserve home ownership, to maximize returns to taxpayers, and to provide public accountability.  HAMP was established pursuant to 12 U.S.C. §§ 5211 and 5219 and, as part of the Troubled Asset Relief Program ("TARP"), which authorizes DOT to purchase certain troubled assets.  *See* 12 U.S.C. § 5211.  To the extent DOT acquires mortgages, the Act directs DOT to maximize assistance of homeowners and to encourage mortgage servicers to take advantage of government programs to minimize foreclosures.  *See* 12 U.S.C. § 5219.  To further such goals, DOT, through Federal National Mortgage Association ("Fannie Mae"), entered into agreements with loan servicers.  Nationwide and Fannie Mae entered into such an agreement in September 2009 and entitled "Amended and Restated Commitment to Purchase Financial Instrument and Servicer Participation Agreement," which committed Nationstar to perform certain loan modification and foreclosure prevention services for eligible loans.

### Mr. Burton's HAMP Trial Period Plan

In December 2006, Mr. Burton obtained a nearly $300,000 property loan secured by a deed of trust on the property.  By early 2009, Mr. Burton was in default and applied to Nationstar for a loan modification.

In April 2009, Mr. Burton and Nationstar entered into a Home Affordable Modification Trial Period Plan ("trial plan") under which Mr. Burton was to make three $1,921.58 monthly payments to remain eligible for a permanent loan modification.  Mr. Burton made the trial plan payments for May through July 2009.

### Modification Agreement

Nationstar sent Mr. Burton a Home Affordable Modification Agreement ("HAMA") to modify initially Mr. Burton's monthly payments to $1,915.20.

The HAMA initially states:

> If my representations in Section 1 continue to be true in all material respects, then

3

this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage.

Under the HAMA "My Representations" section 1, Mr. Burton certified and represented that "I live on the Property as my principal residence" ("residence certification").

The HAMA's section 2 addresses "Acknowledgements and Preconditions to Modification" ("preconditions provision") by which Mr. Burton noted his understanding and acknowledgement that:

> B. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents;

> C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.

The HAMA's section 3 addresses "The Modification" ("modification provision") and provides:

> If my representations in Section 1 **continue to be true** in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on August 1, 2009 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  (Bold added.)

Mr. Burton signed the HAMA on August 29, 2009 and returned it to Nationstar, which signed the HAMA on October 9, 2009 and returned it to Mr. Burton.  Mr. Burton "telephoned Nationstar repeatedly, and was told that all the paperwork had been received and that Nationstar simply had to 'book' the modification."  Mr. Burton continued to make $1,915.20 payments set forth in the trial plan.  "During this time," Mr. Burton received a notice of trustee's sale that the property had been sold.  Nationstar assured Mr. Burton "this was not an actual foreclosure and again, that the permanent modification simply needed to be 'booked.'"

## HAMA Termination

After several months, Nationstar refused to honor the HAMA to modify Mr. Burton's loan documents.  Nationstar's March 7, 2010 letter indicated that it was terminating the HAMA and dropping Mr. Burton from HAMP because the property was not "owner occupied" although Mr. Burton's wife and children resided full time at the property.  Mr. Burton "was temporarily working in Colorado and

1   would return periodically to California and stay at the Bakersfield property when he visited." Mr. Burton

2   "took such employment when it became evident that Nationstar was defaulting on the [HAMA] and

3   Burton would need additional income to save his home."

4   Nationstar refused to reinstate the HAMA and foreclosed on the property.

5   **Mr. Burton's Claims**

6   The complaint alleges that Nationstar used non-owner occupation of the property "as a pretext"

7   to not honor the HAMA although "Nationstar had no such authority to re-evaluate Burton's eligibility

8   in March 2010, several months after his [HAMA's] Modification Effective Date."  The complaint

9   alleges contract and statutory claims (discussed below) for Mr. Burton and similarly situated borrowers

10  for Nationstar's "intentional and systematic failure to provide permanent loan modifications to

11  borrowers" who signed HAMAs under HAMP.  The complaint further alleges that "Nationstar refuses

12  to correct known errors, misrepresents to borrowers that they must be in default to participate in the

13  HAMP, improperly reviews borrowers after their Modification Effective Dates, fails to provide

14  approvals and denials within reasonable periods of time, fails to adequately hire and train staff to

15  effectuate loan modifications, routinely loses borrower HAMP applications and related paperwork, and

16  otherwise routinely disregards HAMP directives and guidelines."

17  **DISCUSSION**

18  **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

19  Nationstar contends that the complaint's claims fail given Nationstar's "contractually authorized

20  reason for invalidating the HAMA."

21  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal

22  theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica*

23  *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297

24  (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*,

25  250 F.3d 729, 732 (9th Cir. 2001).

26  In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

27  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

28  can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80

5

F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d

6

962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[2] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

---

[2]   "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

1  Lastly, under F.R.Evid. 201, a court may take judicial notice of "matters of public record." *Lee*

2  *v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500,

3  504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record

4  outside the pleadings); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

5  With these standards in mind, this Court turns Nationwide's challenges to the complaint's claims.

6  **Breach Of Contract**

7  The complaint's (first) breach of contract claim alleges that Nationstar breached the HAMA by

8  failing to modify permanently Mr. Burton's loan and foreclosing on the property.  More specifically, the

9  breach of contract claim alleges that:

10  Nationstar breached the requirement that it verify that its customers'
representations continued to be true prior to the Modification Effective Date by delaying

11  its review and continuing to evaluate borrowers long after the Modification Effective
Dates had passed.  In Burton's case, for example, Nationstar was continuing to review

12  his eligibility for the HAMP through March 7, 2010, despite his Modification Effective
Date having passed seven months earlier.

13

14  Nationstar characterizes breach of contract as "the crux of his case" and argues that under the

15  HAMA, modification was not effective and was terminated properly by Nationstar.

16  *Condition Precedent*

17  Nationstar argues the absence of a contract breach given the complaint's acknowledgment that

18  Mr. Burton did not satisfy a condition precedent of residing on the property.

19  "A contract is unenforceable if a condition precedent is not met." *Willard v. Valley Forge Life*

20  *Ins. Co.*, 218 F.Supp.2d 1197, 1201 (C.D. Cal. 2002); *see Platt Pacific v. Andelson*, 6 Cal.4th 307, 24

21  Cal.Rptr.2d 597 (1993); *Metro. Life Ins., Co. v. Devore*, 66 Cal.2d 129, 56 Cal.Rptr. 881, 424 P.2d 321

22  (1967).

23  With the HAMA's residence certification, Mr. Burton certified that he lived "on the Property as

24  my principal residence."  The HAMA's preconditions provision provides that Loan Documents will not

25  be modified if "prior to the Modification Effective Date as set forth in Section 3 the Lender determines

26  that my representations in Section 1 are no longer true and correct."  The HAMA's Section 3

27  modification provision provides that Mr. Burton's Loan Documents will be modified effective August

28  1, 2009, if the Section 1 representations, including the residence certification, "continue to be true in all

1   material respects and all preconditions to the modification set forth in Section 2 have been met."

2         Nationstar contends that complaint acknowledges Mr. Burton's Colorado residence to invalidate

3   the residence certification, compliance with which was a condition precedent to loan modification.  *See*

4   *Reynoso v. IndyMac Mortg. Services, FSB*, 2013 WL 388990, at n. 2 (D. Md. 2013) ("the relevant

5   property in Riverdale, Maryland, does not appear to be Ms. Reynoso's principal residence, which would

6   disqualify Ms. Reynoso from a HAMP loan modification").  Nationstar argues that the HAMA's

7   preconditions provision does not obligate Nationstar to verify the truth of the residence certification prior

8   to the Modification Effective Date.  Nationstar notes that the preconditions provision only states "what

9   will occur if the lender happens to find out the representations are no longer true."  Nationstar concludes

10  that in the absence of its duty to verify the residence certification, "there was no breach in failing to do

11  so before the Modification Effective Date."

12        Nationstar notes that August 1, 2009 is the effective date to modify Loan Documents, if all

13  conditions, including continued adherence to the residence certification, are met.  Nationstar argues that

14  since it did not sign the HAMA until October 9, 2009, modification was dependent on Mr. Burton's

15  adherence to the residence certification up to that date.  Nationstar summarizes that "the HAMA's

16  condition precedent cannot reasonably be read to require only that the borrower's representations be true

17  on the Modification Effective Date (here, August 1, 2009) and not thereafter."

18        In addition, Nationstar challenges the complaint's failure to allege specifically that Mr. Burton

19  resided on the property on October 9, 2009, when Nationstar signed the HAMA to effectuate it.

20  Nationstar argues that Mr. Burton cannot rely on a representation in his opposition papers that he resided

21  on the property in January 2010.  "In determining the propriety of a Rule 12(b)(6) dismissal, a court may

22  not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to

23  a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th

24  Cir.1998).

25        Mr. Burton responds that conditions precedent were satisfied because as of October 9, 2009,

26  when Nationstar signed the HAMA, Mr. Burton resided on the property.  Mr. Burton continues that as

27  of no later than October 9, 2009, Nationstar had manifested its assent to the HAMA and "a contract was

28  formed with an Effective Date of August 1, 2009." "[T]o form a contract, both parties must express their

1    mutual assent by outward manifestations of consent which would lead a reasonable person to believe

2    that the parties had reached an agreement." *Avel Pty. Ltd. v. Breaks*, 1993 WL 11867, at *4 (9th Cir.

3    1993) (citing 1 B.E. Witkin, Summary of California Law § 119 (9th ed. 1987 & Supp1992); *Brant v.*

4    *California Dairies*, 4 Cal.2d 128, 133, 48 P.2d 13, 16 (1935)).

5         Mr. Burton argues that the complaint does not imply that his residence certification was untrue

6    when Nationstar signed the HAMA in that the complaint alleges Mr. Burton took Colorado employment

7    "when it became evident that Nationstar was defaulting on the [HAMA] and Burton would need

8    additional income to save his home."  Mr. Burton concludes that his residence certification remained

9    true through the time Nationstar signed the HAMA and "became obligated to perform."  Mr. Burton

10   contends that the HAMA does not grant Nationstar "unfettered authority" of continuous review of the

11   residence certification to cancel the HAMA.  Mr. Burton claims that Nationstar breached the HAMA

12   by terminating it based on a post-Modification Effective Date determination as to Mr. Burton's

13   occupancy.

14        The modification provision sets August 1, 2009 to modify Loan Documents if the residence

15   certification continues to be true.  The HAMA is silent as to the duration of the residence certification,

16   that is, for how long the borrower must occupy the property.  The preconditions provision contemplates

17   that if "prior to the Modification Effective Date," the residence certification is "no longer true and

18   correct, the Loan Documents will not be modified and this Agreement will terminate."  The key words

19   are "prior to the Modification Effective Date."  There is no dispute that the Modification Effective Date

20   was no later than October 9, 2009.  Up to that date, Nationstar was empowered to terminate the HAMA

21   if the residence certification was not met.  Nothing in the complaint indicates that Mr. Burton did not

22   occupy the property as of October 9, 2009.  Likewise, nothing in the complaint indicates that Mr. Burton

23   occupied the property as of October 9, 2009.  The complaint alleges that Mr. Burton took Colorado

24   employment "when it became evident that Nationstar was defaulting" based on "a pretext for not

25   honoring" the HAMA.  The complaint and its inferences raise uncertainty whether Mr. Burton occupied

26   the property as of August 1, 2009 or October 9, 2009 to satisfy the residence certification.  Such

27   uncertainty subjects the breach of contract claim to dismissal with leave to amend to confirm whether

28   Mr. Burton resided on the property to satisfy the residence certification as a condition precedent to

1  effectuate the HAMA.

2  ## Breach Of The Implied Covenant Of Good Faith And Fair Dealing

3  The complaint's (second) breach of the implied covenant of good faith and fair dealing claim

4  ("implied covenant claim") alleges that Nationstar abused its authority under the HAMA and frustrated

5  borrowers' ability to obtain benefits of HAMAs by "failing to 'book,' record, otherwise cause"

6  modifications to be put into effect.

7  Nationstar argues that the implied covenant claim fails on the same grounds as does the breach

8  of contract claim in that the implied covenant "does not prohibit what the express terms of the contract

9  permits."

10  "There is an implied covenant of good faith and fair dealing in every contract that neither party

11  will do anything which will injure the right of the other to receive the benefits of the agreement."

12  *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000)

13  (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The

14  covenant of good faith and fair dealing is implied in every contract as a method to protect the interests

15  of the parties in having the contractual promises and purposes performed." *Love v. Fire Ins. Exchange,*

16  221 Cal.App.3d 1136, 1147, 271 Cal.Rptr. 246 (1990). The "implied covenant of good faith and fair

17  dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended

18  to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114

19  Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted).

20  "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be

21  read into a contract to prohibit a party from doing that which is expressly permitted by the agreement

22  itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585

23  (2008). "As to acts and conduct authorized by the express provisions of the contract, no covenant of

24  good faith and fair dealing can be implied which forbids such acts and conduct." *Carma Developers*

25  *(Cal.), Inc. v. Marathon Development Cal., Inc.*, 2 Cal.4th 342, 374, 6 Cal.Rptr.2d 467 (1992). "The

26  covenant 'cannot impose substantive duties or limits on the contracting parties beyond those

27  incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15

28  Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352

11

(2000)).  Moreover, although the implied covenant particularly applies when a party has discretionary power affecting rights of another party, "the implied covenant does not trump an agreement's express language."  *Steiner v. Thexton*, 48 Cal.4th 411, 419-420, 226 P.3d 359 (2010).

Nationstar contends that "the HAMA's express terms authorized Nationstar to invalidate the HAMA when it learned Burton's section 1 representations were not true."  Nationstar points to the absence of an implied covenant to preclude Nationstar's refusal to modify loan documents when it discovered that Mr. Burton did not live in the property.  Nationstar notes that it did not promise or imply that it would process the HAMA more quickly "so he could move from Bakersfield sooner without ill effect."

Mr. Burton responds that the HAMA did not allow Nationstar to invoke the residence certification and preconditions provision after the August 1, 2009 Modification Effective date or after Nationstar's October 9, 2009 signing of the HAMA.  Mr. Burton continues that Nationstar was not allowed a continuous review of the residence certification to invoke grounds to terminate the HAMA.  Mr. Burton argues that the HAMA obligated Nationstar to modify his loan after Mr. Burton met necessary conditions and that the complaint adequately alleges that Nationstar abused its discretion to delay "booking the modification."

The complaint alleges that under the HAMA, Mr. Burton was entitled to loan modification and to receive such benefit upon his satisfaction of modification conditions.  As noted above, the complaint is unclear whether Mr. Burton satisfied the residence certification as of October 9, 2009, when Nationstar signed the HAMA.  With such uncertainty, the complaint lacks sufficient facts that Nationstar exceeded HAMA terms by terminating the HAMA on grounds not contemplated by the HAMA and as a pretext.  Without clarity of Mr. Burton's satisfaction of the residence certification, the complaint fails to establish that Nationstar exceeded what it was expressly permitted to do, that is, terminate the HAMA based on Mr. Burton's failure to satisfy the residence certification.  The implied covenant claim fails but is subject to amendment.

**Promissory Estoppel**

The complaint's (third) promissory estoppel claim alleges that Nationstar "failed to honor its promise" to modify permanently Mr. Burton's loan.  The promissory estoppel claim further alleges that

had Mr. Burton "known that Nationstar would subsequently improperly refuse to permanently modify his loan, he would have engaged in other efforts to save his home, performed "efficient breaches," declared bankruptcy, or taken other alternatives that did not involve "paying additional monies to Nationstar for essentially nothing in return."

Nationstar argues that promissory estoppel does not apply given that lack of consideration is not an issue.

### Elements

Under the promissory estoppel doctrine, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement."  *Youngman v. Nevada Irrigation Dist.*, 70 Cal.2d 240, 249, 74 Cal.Rptr. 398 (1969); *see Lloyd v. R.K.O. Pictures, Inc.*, 136 Cal.App.2d 638, 299, 289 P.2d 295 (1955) ("Promissory estoppel is defined as a"promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.")  Promissory estoppel elements are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal.App.3d 885, 891, 131 Cal.Rptr. 836 (1976); *see Toscano v. Greene Music*, 124 Cal.App.4th 685, 692, 21 Cal.Rptr.3d 732 (2004).

Promissory estoppel is "a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced."  *Raedeke v. Gibraltar Sav. & Loan Assn.,* 10 Cal.3d 665, 672,111 Cal.Rptr. 693 (1974).  "[P]romissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract . . . ."  *US Ecology, Inc. v. State*, 129 Cal.App.4th 887, 904, 28 Cal.Rptr.3d 894 (2005).

A"promise is an indispensable element of the doctrine of promissory estoppel," which "cannot be invoked and must be held inapplicable in the absence of a showing that a promise had been made upon which the complaining party relied to his prejudice."  *Division of Labor Law Enforcement v.*

13

*Transpacific Transportation Co.,* 69 Cal.App.3d 268, 277, 137 Cal.Rptr. 855 (1977).  "Estoppel cannot be established from . . . preliminary discussions and negotiations."  *National Dollar Stores v. Wagnon*, 97 Cal.App.2d 915, 919, 219 P.2d 49 (1950).

Nationstar argues that the complaint addresses failure to satisfy a condition precedent, which promissory estoppel cannot cure.  As such, Nationstar contends that the lack of consideration is not at issue to invoke promissory estoppel.  Nationstar further challenges detrimental reliance allegations given Mr. Burton's existing loan payment obligations and the conclusory allegations of possible actions Mr. Burton could have taken to avoid foreclosure.

Mr. Burton responds that Nationstar's claim of absence of contract formation "open[s] the door for alternative quasi-contractual claims."  *Mendez v. Bank of America Home Loans Servicing, LP*, 840 F.Supp.2d 639, 654 (E.D. N.Y. 2012) ("Plaintiff is permitted to continue his claim for promissory estoppel because the existence of the contract itself is disputed, specifically with regard to whether the conditions precedents were satisfied by the Plaintiff").  As to detrimental reliance, Mr. Burton points to complaint allegations that he forewent "efficient breach," declaring bankruptcy, and devotion of resources and monies to avenues other than loan modification.  *See Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 566 (7th Cir. 2012) (denying dismissal of promissory estoppel claim where plaintiff asserted that defendant "made an unambiguous promise that if she made timely payments and accurate representations during the trial period, she would receive an offer for a permanent loan modification" and that "she relied on that promise to her detriment by foregoing the opportunity to use other remedies to save her home (such as restructuring her debt in bankruptcy)").

By attacking contract formation, Nationstar puts into issue a quasi-contract claim such as promissory estoppel.  As such, Mr. Burton is not precluded to attempt to allege a promissory estoppel claim.  Nonetheless, Nationstar is correct that the complaint lacks sufficient facts to support detrimental reliance given limited references to declaring bankruptcy or devoting monies other than to additional payments to Nationstar.  The complaint fails to explain an "efficient breach," which presumably addresses a breach of the trial plan or HAMA.  Mr. Burton proffers no facts to indicate his more viable options to foreclosure.  There are no facts that Mr. Burton contemplated bankruptcy, consulted a bankruptcy attorney, or had other options to preclude foreclosure.  Given the complaint's allegations of

14

1  Nationstar's delay, the complaint suggests that Mr. Burton had an opportunity to exercise options other

2  than modification but chose not to.  The promissory estoppel claim fails in the absence of sufficient facts

3  to support Mr. Burton's detrimental reliance.  Mr. Burton is granted leave to amend the promissory

4  estoppel claim.

5                                                    **Fraud**

6         The complaint's (fourth) fraudulent misrepresentation claim accuses Nationstar of

7  misrepresenting that, if Mr. Burton's certifications continued to be true, as determined by Nationstar

8  prior to the Modification Effective Date, the HAMA would amend and supplement Loan Documents,

9  which would automatically modify on the Modification Effective Date.  The fraud claim further alleges

10  that Nationstar failed to honor is promise to modify permanently Mr. Burton's loan.

11        Nationstar faults the complaint's vagueness and absence of facts to satisfy fraud elements and

12  F.R.Civ.P. 9(b) pleading requirements.

13                                                   *Elements*

14        The elements of a California fraud claim are: (1) misrepresentation (false representation,

15  concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

16  to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th

17  631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent

18  misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*

19  *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

20        "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

21  specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133,

22  156, 53 Cal.Rptr.2d 336 (1996).  There must be a showing "that the defendant thereby intended to induce

23  the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff

24  actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment."

25  *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336.  "The absence of any one of these required elements

26  will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231

27  Cal.Rptr. 355 (1986).

28  / / /

                                                    15

### *Particularity Pleading Standard*

Nationwide faults the complaint's absence of specificity to satisfy F.R.Civ.P. 9(b).

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[4] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the

---

[3]   F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original).

[4]   "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

1    omission complained of, but these circumstances do not "constitute" fraud.   The
2    statement in question must be false to be fraudulent.   Accordingly, our cases have
     consistently required that circumstances indicating falseness be set forth. . . . [W]e [have]
3    observed that plaintiff must include statements regarding the time, place, and *nature* of
     the alleged fraudulent activities, and that "mere conclusory allegations of fraud are
4    insufficient." . . .   The plaintiff must set forth what is false or misleading about a
     statement, and why it is false.  In other words, the plaintiff must set forth an explanation
5    as to why the statement or omission complained of was false or misleading. . . .

6    In certain cases, to be sure, the requisite particularity might be supplied with great
     simplicity.

7    *In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in

8    original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal*

9    *Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.

10   1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the

11   misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times,

12   dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber*

13   *Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state

14   the time, place, and specific content of the false representations as well as the identities of the parties

15   to the misrepresentation").

16   ***Misrepresentation***

17   Nationstar argues that the HAMA does not represent that if Mr. Burton's representations

18   continued to be true as determined by Nationstar prior to the Modification Effective Date, the HAMA

19   would modify Mr. Burton's loan documents as of the Modification Effective Date, or August 1, 2009.

20   Nationstar points to the HAMA's modification provision to the effect that if Nationstar learns prior to

21   the Modification Effective Date that the residence certification is not true, there will be no loan

22   modification.   Nationwide argues that the HAMA fails to promise modification if the residence

23   certification does not continue to be true through Nationwide's belated HAMA signature well after the

24   Modification Effective Date.

25   Mr. Burton responds that the HAMA allowed Nationstar to terminate the HAMA if, prior to the

26   Modification Effective Date, Nationstar determined that Mr. Burton failed to continue to satisfy the

27   residence certification.  Mr. Burton characterizes the HAMA to represent that Nationstar was committed

28   to make such determination prior to the Modification Effective Date.

17

As noted above, the preconditions provision contemplates that if "prior to the Modification Effective Date," the residence certification is "no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate."   There is no dispute that the Modification Effective Date was no later than October 9, 2009.  Through the HAMA, Nationstar represented that:

1.   Loan modification will proceed if the residence certification remains true through the Modification Effective Date; and

2.   Loan documents are subject to modification after Mr. Burton receives the HAMA signed by Nationstar and the Modification Effective Date has occurred.

The complaint identifies adequate representations to support a fraud claim, assuming Mr. Burton satisfied the residence certification at the requisite time.

### *Justifiable Reliance*

The fraud claim further alleges that had Mr. Burton known that Nationstar would improperly refuse to permanently modify his loan, he would have engaged in other efforts to save his home, performed "efficient breaches," declared bankruptcy, or taken other alternatives that did not involve "paying additional monies to Nationstar for essentially nothing in return."

Nationstar further challenges the complaint's absence of facts to support Mr. Burton's justifiable reliance as Mr. Burton remained obligated to make loan payments and foregoing a chance to breach his obligations or to file bankruptcy does not constitute justifiable reliance.

Mr. Burton responds that absent his reliance on Nationstar's representations as to loan modification, Mr. Burton had several months remaining to pursue other "realistic" alternatives to avoid foreclosure.

The fraud claim must satisfy F.R.Civ.P. 9(b) particularity and fails to do so as to reliance elements.  To support justifiable reliance, the complaint points to Mr. Burton's foregoing "efficient breaches," bankruptcy, or other alternatives.  The complaint fails to explain sufficiently Mr. Burton's failure or inability to pursue such alternatives.  The complaint merely raises inferences that Mr. Burton chose loan modification over other alternatives but does not explain Mr. Burton's rationale or grounds to do so.  Nationstar raises valid points to attack the fraud claim which is subject to dismissal with leave to amend.

**Unjust Enrichment/Restitution**

The complaint's (fifth) unjust enrichment/restitution claim alleges that Mr. Burton "conferred benefits on Nationstar, including monthly payments that shouldn't have been made and in the form of [his] home[] which shouldn't have been foreclosed." The unjust enrichment claim seeks "restitution by returning monies paid during and after the trial periods where no permanent modification was provided" and restoring possession of Mr. Burton's wrongfully taken home.

Nationstar notes that as Mr. Burton's loan servicer, it was entitled to receive his payments. Nationstar points to *Carswell v. JP Morgan Chase Bank N.A.*, 2012 WL 6053168, at *1 (9th Cir. 2012), where the Ninth Circuit found that the "district court properly dismissed the claim for unjust enrichment. Even if such a theory exists in California," the defendant loan servicer "was entitled to receive Plaintiff's loan payment because it was the loan servicer." Nationstar points to the absence of inequity or unconscionability to retain Mr. Burton's monthly payments under the trial plan given that those payments were less than Mr. Burton's original loan obligations. Nationstar concludes that the complaint fails to demonstrate "unjust retention of benefits by Nationstar."

Mr. Burton notes that inequity arises "to allow a servicer to take a borrower's money under the pretense that a loan modification will be offered when, in reality, it will never be implemented." Mr. Burton further supports the unjust enrichment claim by accusing Nationstar of dragging out the loan modification process and siphoning away money from defaulting borrowers.

Mr. Burton offers hyperbole, nothing meaningful, to support the unjust enrichment/restitution claim. Mr. Burton points to no facts or potential facts to reflect unjust enrichment or inequity to warrant restitution. Mr. Burton ignores the benefit he received to continue to remain in the property when he made trial plan payments and that foreclosure resulted from his inability to satisfy his original loan obligations. This Court construes Mr. Burton's absence of meaningful support for the unjust enrichment/restitution claim as his inability to do so to warrant dismissal of the unjust enrichment claim.

**Consumer Legal Remedies Act**

The complaint's (sixth) claim proceeds under the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code, §§ 1750, et seq., to allege that "Nationstar's practices constitute unfair practices under the CLRA."

1    Nationwide challenges the applicability of the CLRA.

2    The CLRA renders unlawful "unfair methods of competition and unfair or deceptive acts or

3    practices undertaken by any person in a transaction intended to result or which results in the sale or lease

4    of goods or services to any consumer." Cal. Civ. Code, § 1770(a). The CLRA defines "goods" as

5    "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal.

6    Civ. Code, § 1761(a). The CLRA defines "services" as "work, labor, and services for other than a

7    commercial or business use, including services furnished in connection with the sale or repair of goods."

8    Cal. Civ. Code, § 1761(b).

9    Nationwide notes that a real property loan or modification "is not a good or service"subject to

10   the CLRA. *See Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1017 (N.D. Cal. 2009)

11   (because plaintiff "has challenged only the validity of the mortgage loan . . ., the Court dismisses the

12   CLRA claim with prejudice"); *see also Fairbanks v. Superior Court*, 46 Cal.4th 56, 65, 205 P.3d 201

13   (2009) (noting "legislative intent in limiting the definition of 'goods' to include only 'tangible chattels'").

14   Nationstar further challenges the CLRA claim as conclusory given its mere allegation that

15   "Nationstar's practices constitute unfair business practices under the CLRA." Nationstar notes that the

16   CLRA prohibits specific delineated conduct, none of which the complaint identifies or alleges.

17   Mr. Burton responds that the CLRA "applies to a broad range of services, including mortgage

18   loans and modifications." Mr. Burton equates loan modification to financial services subject to CLRA.

19   Mr. Burton argues that Nationstar's "alleged false statements regarding the timing of when it would

20   permanently modify borrowers' loans falls neatly" within CLRA prohibitions.

21   This Court disagrees with Mr. Burton's conclusions and those of the non-binding authorities he

22   cites. This Court is unconvinced that Nationstar's loan modification activities amount to a "sale or lease

23   of goods or services" subject to the CLRA given the CLRA's emphasis to remedy wrongs in connection

24   with goods and related services. Mr. Burton attempts to stretch CLRA liability to a point not

25   contemplated by the CLRA. This Court is not prepared to equate Nationstar's alleged loan modification

26   deficiencies as prohibitions in connection with goods or services subject to the CLRA. The complaint's

27   failure to tether meaningfully Nationstar's alleged wrongs to a CLRA violation is fatal to the complaint's

28   CLRA claim. A purported CLRA claim is subject to dismissal.

1                                                **Equal Credit Opportunity Act**

2         The complaint's eighth claim alleges violations of the Equal Credit Opportunity Act ("ECOA"),

3 15 U.S.C. §§ 1691, et seq., that Nationstar failed to provide notice of action taken on Mr. Burton's

4 applications and to provide specific reasons for denial within 30 days of receipt of completed or

5 incomplete applications.

6         Nationstar argues that an ECOA claim fails in that Mr. Burton was in default.  ECOA regulations

7 exclude from an "adverse action" "[a]ny action or forbearance relating to an account taken in connection

8 with . . . default, or delinquency as to that account."  Nationstar points to Federal Reserve Board

9 Consumer Affairs Letter No. CA 09-13, which provides that under ECOA regulations, "a creditor is not

10 required to provide an adverse action notice to a borrower whose account is currently delinquent or in

11 default."  Nationstar concludes that given Mr. Burton's default, "any action taken with respect to it was

12 not 'adverse action' for ECOA purposes."

13         Mr. Burton concedes that he lacks an ECOA claim.  As such, the ECOA claim is dismissed.

14                                           **Unfair Business Practices**

15         The complaint's seventh claim proceeds under the California Unfair Competition Law ("UCL"),

16 Cal. Bus. & Prof. Code, §§ 17200, et seq.  Nationwide challenges the complaint's absence of facts to

17 support its unlawful, unfair or fraudulent business practices.

18         "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

19 unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

20 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

21 competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

22 *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).

23         "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

24 reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

25 *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

26                                         ***Unlawful Business Practice***

27         The UCL claim alleges an unlawful business practice based on Nationstar's violations of the

28 ECOA "requirement that lenders provide timely answers on credit applications, as well as numerous

provisions of the HAMP directives that prohibit the charging of late fees, dual tracking, falsely telling borrowers they need to be in default to qualify, reevaluating borrowers after their Modification Effective Dates, and otherwise grossly mishandling its borrowers' HAMP applications and contract documents."

Nationstar points to the complaint's lack of allegations of its illegal conduct to support an unlawful business practice.

An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL.  *Farmers Ins.,* 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

A fellow district court has explained the borrowing of a violation of law other than the UCL:

> To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

Nationstar argues that an alleged ECOA adverse action fails to support a UCL unfair business practice because Mr. Burton's default did not obligate Nationstar to send Mr. Burton an adverse action notice under the ECOA.  Nationstar faults its purported HAMP violations as conclusory and unsupported

1    by sufficient facts.

2          Nationstar further challenges a UCL unfair business practice based on a HAMP violation in

3    absence of a private right of action under HAMP.      A fellow district court explains the absence of a

4    private right of action under HAMP:

5                Nowhere in the HAMP Guidelines, nor in the EESA, does it expressly provide
            for a private right of action. Rather, Congressional intent expressly indicates that
6           compliance authority was delegated solely to Freddie Mac. By delegating compliance
            authority to one entity, Freddie Mac, Congress intended that a private cause of action was
7           not permitted. *See Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir.2001)
            (reiterating that "the doctrine of expressio unis est exclusio alterius instructs that where
8           a law expressly describes a particular situation to which it shall apply, what was omitted
            or excluded was intended to be omitted or excluded.").

9

10   *Marks v. Bank of America, N.A.*, 2010 WL 2572988, at *5, 6 (D. Az. 2010); *see Pantoja v. Countrywide*

11   *Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D. Cal. 2009) ("Thus, the Court finds that there is no

12   implied private right to sue fund recipients under TARP," which was enacted under EESA and of which

13   HAMP is a part.)

14         "[T]here is no express or implied private right of action to sue lenders or loan servicers for

15   violation of HAMP." *Cleveland v. Aurora Loan Services, LLC*, 2011 WL 2020565, at *4 (N.D. Cal.

16   2011); *see, Manabat v. Sierra Pac. Mortg. Co.*, 2010 WL 2574161 at *11 (E.D. Cal. 2010) (dismissing

17   plaintiff's wrongful foreclosure claim because there is no private right of action for HAMP violations

18   against lenders that receive HAMP funds); *Simon v. Bank of Am., N.A.*, 2010 WL 2609436 at *7 (D.

19   Nev. 2010) ("[C]ourts have consistently held that [HAMP] does not provide borrowers with a private

20   cause of action against lenders for failing to consider their application for loan modification, or even to

21   modify an eligible loan"); *see also Carrasco v. HSBC Bank USA, N.A.,*2012 WL 646251, at 5 (N.D. Cal.

22   2012) (plaintiffs failed to demonstrate that HAMP requires "that a lender enter into a loan modification,

23   as opposed to simply encouraging that lenders work with borrowers to avoid foreclosures").

24         Moreover, reliance on HAMP to support breach of contract or negligence claims and in turn a

25   UCL claim is misplaced. *See Marks*, 2010 WL 2572988 at *6 ("Plaintiff is precluded from asserting a

26   private cause of action under the HAMP, even disguised as a breach of contract claim"); *Ming'ate v.*

27   *Bank of America, N.A.*, 2011 WL 4590431, at *6 D. Minn. 2011) ("HAMP creates no duty for lenders

28   to make loan modifications or to do so in a timely fashion; as a result, Plaintiffs' negligence claim is

23

dismissed").

To support an unlawful business practice, Mr. Burton points to complaint allegations to the effect that "Nationstar makes false statements to borrowers and performs re-evaluations months after it is allowed to." Mr. Burton further notes the complaint "details how Burton received foreclosure notices while he was being considered for a loan modification – a plain allegation of dual tracking."

The complaint fails to state with reasonable particularity the underlying unlawful business activity to support a UCL claim. Mr. Burton is unable to rely on ECOA deficiencies with dismissal of the ECOA claim. Reliance on purported HAMP irregularities is misplaced given the complaint's conclusory allegations and failure to pinpoint Nationstar's actionable HAMP violation as to Mr. Burton. Mr. Burton's further points regarding false statements, belated re-evaluations, and dual tracking fail to substantiate unlawful business activity under the UCL.

### *Unfair Business Practice*

The UCL claim alleges that Nationstar engaged in unfair conduct with its serial breaches of HAMAs, misleading borrowers regarding ability to obtain loan modifications, and foreclosure despite borrowers' compliance with trial plan and HAMA requirements.

Nationstar contends that the complaint's conclusory allegations fail to support that Nationstar committed a UCL unfair business practice.

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone*, 20 Cal.4th 163,187, 83 Cal.Rptr.2d 548 (1999). A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996) (internal quotations and citations omitted). The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

Nationstar faults the complaint's absence of allegations that it breached Mr. Burton's or any other

1   borrower's HAMA or that Mr. Burton or any other borrower complied with HAMA requirements but

2   was foreclosed upon.

3       To support an unfair business practice claim, Mr. Burton asserts that the complaint "details how

4   Nationstar delays its converting of borrowers with signed [HAMAs] to permanent modification by

5   dragging its feet instead of taking steps necessary to 'book' modification or otherwise ensure that it

6   becomes automatically effective upon the modification effective date."

7       Mr. Burton offers little meaningful support of a unfair business practice claim and relies on

8   generalities of Nationstar's delay.  The complaint fails to state with reasonable particularity unfair

9   business practices to support a UCL claim.

10                          ***Fraudulent Business Practice***

11      The UCL claim alleges that Nationstar's conduct violated "the UCL's fraudulent prong."

12      The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members

13  of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,*

14  178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be

15  deceived," *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439 (2000); *Medical*

16  *Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

17  A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or

18  business practice in question." *Schnall*, 78 Cal.App.4th at 1167, 93 Cal.Rptr.2d 439.

19      Nationstar faults the complaint's failure to identify its specific fraud given the UCL claim's

20  reliance on allegations that Nationstar misrepresented that if Mr. Burton's residence certification

21  remained true, as determined by Nationstar prior to the Modification Effective Date, his loan documents

22  would automatically modify on the Modification Effective Date.  Nationstar further challenges

23  allegations of Nationstar's "scheme to defraud" (complaint paras. 72-76)[5] to support a UCL fraud claim.

24      Mr. Burton responds that Nationstar falsely represents in its HAMAs "that it will permanently

25  modify its borrowers' loans and that any review that could result in a termination decision would occur

26

27      [5]      The complaint's scheme to defraud allegations claim that Nationstar sought "to extract as much money as
    possible from distressed homeowners prior to unlawfully foreclosing and re-taking possession of their homes" and "failed
28  to adhere to basic standards of competence and diligence."

1  'prior to the Modification Effective Date.'"

2      Similar to the unlawful and unfair business practices claims, the UCL claim lacks necessary

3  precision to support fraud under the UCL.  The UCL claim rests on generalities, not reasonable

4  particularity, to attempt to allege fraudulent business practices.

5                                        ***Standing***

6      Nationstar further challenges Mr. Burton's standing to pursue UCL relief in the absence of

7  allegation of his economic injury.

8      California Business and Professions Code section 17204 limits standing to bring a UCL claim

9  to specified public officials and a private person "who has suffered injury in fact and has lost money or

10  property as a result of the unfair competition."  "This provision requires [plaintiff] to show that she has

11  lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see*

12  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-60 (9th Cir.2009), and also requires a 'causal connection'

13  between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th

14  847, 70 Cal.Rptr.3d 466, 471-72 (2008)." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th

15  Cir. 2010), *cert. denied*, 131 S.Ct. 1817 (2011).

16      Business and Professions Code section 17203 addresses UCL relief and provides in pertinent

17  part:

18          Any person who engages, has engaged, or proposes to engage in unfair
        competition may be enjoined in any court of competent jurisdiction. The court may make
19      such orders or judgments . . . as may be necessary to restore to any person in interest any
        money or property, real or personal, which may have been acquired by means of such
20      unfair competition.

21      "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

22  remedies are 'generally limited to injunctive relief and restitution.'" *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

23  950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

24  *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).  "The UCL limits the remedies available

25  for UCL violations to restitution and injunctive relief . . ." *Madrid v. Perot Systems Corp.*, 130

26  Cal.App.4th 440, 452, 30 Cal.Rptr.3d 210 (2005).

27      The complaint lacks facts of Mr. Burton's money or property allegedly lost in that he was

28  obligated to pay his loan and faced foreclosure if he failed to meet his obligations.  Nationstar's servicing

of Mr. Burton's loan and pursuit of loan modification did not relieve Mr. Burton of his obligations.  Mr. Burton's alleged incurrence of late fees originally waived by the HAMA fail to substantiate requisite money or property lost given the absence of allegations that he directly paid such amounts out of pocket. Mr. Burton's reliance on discovery to ferret out his injury is unavailing as he is in a position to know such information.

In addition, the complaint lacks facts to support Mr. Burton is entitled to restitution.  The "notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep." *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 340, 74 Cal.Rptr.2d 55 (1998).  Nationstar is correct that Mr. Burton's trial plan and HAMA payments fail to satisfy restitution elements in that he was obligated to make such payments, or no less than his original loan payments.  The complaint further lacks facts that Mr. Burton is entitled to injunctive relief in the absence of allegations of a threat of Nationstar's continuing misconduct.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660 (1983) (party seeking injunctive relief must demonstrate "likelihood of substantial and immediate irreparable injury").

The complaint lacks facts, and Mr. Burton points to none, to support an unlawful, unfair or fraudulent business claim and Mr. Burton's standing to seek UCL relief to warrant dismissal of the UCL claim.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISS with leave to amend the (first) breach of contract, (second) implied covenant, (third) promissory estoppel, and (fourth) fraud claims;

3. DISMISSES with prejudice the (fifth) unjust enrichment/restitution, (sixth) CLRA, (seventh) UCL, and (eighth) ECOA claims;

4. ORDERS Mr. Burton, no later than June 17, 2013, to file either: (a) papers to dismiss this action; or (b) a first amended complaint which amends only the breach of contract, implied covenant, promissory estoppel, and fraud claims and omits the claims dismissed with prejudice.  Without this Court's order, Mr. Burton is prohibited to allege claims

dismissed with prejudice and to add claims other than the breach of contract, implied covenant, promissory estoppel and fraud claims.  If Mr. Burton elects to amend the breach of contract, implied covenant, promissory estoppel and fraud claims, he is admonished to pursue only such claims based on sufficient supporting facts and law and that this Court will grant Mr. Burton no further attempt to plead claims; and

5. ORDERS Nationstar, no later than July 8, 2013, to file and serve a response to Mr. Burton's amended complaint.


IT IS SO ORDERED.

**Dated:**   **May 28, 2013**          **/s/  Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

28