1  JOHN B. SULLIVAN (State Bar No. 96742)
   ERIK KEMP (State Bar No. 246196)
2  MARY KATE KAMKA (State Bar No. 282911)
   SEVERSON & WERSON
3  A Professional Corporation
   One Embarcadero Center, Suite 2600
4  San Francisco, California 94111
   Telephone: (415) 398-3344
5  Facsimile: (415) 956-0439

6  Attorneys for Defendant
   NATIONSTAR MORTGAGE LLC

7

8              UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11  DENNIS BURTON, on behalf of himself and       Case No. 1:13-cv-00307-LJO-JLT
    all others similarly situated,
12                                                 **NATIONSTAR'S MEMORANDUM OF**
              Plaintiff,                           **POINTS AND AUTHORITIES IN**
13                                                 **OPPOSITION TO PLAINTIFF'S**
         vs.                                       **MOTION FOR CLASS CERTIFICATION**
14
    NATIONSTAR MORTGAGE LLC,                       Date:    October 6, 2014
15  a Delaware limited liability company,          Time:    9:00 a.m.
                                                   Crtrm.:  Bakersfield Courtroom, 510 19th
16            Defendant.                                     Street, Bakersfield, CA 93301
                                                   Judge:   Hon. Jennifer L. Thurston
17
                                                   Jury Trial Demanded
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 3

    A.  Nationstar's HAMP Procedures ............................................................. 3

    B.  Facts Underlying Burton's Claims ......................................................... 4

III.  CLASS CERTIFICATION STANDARDS ......................................................... 5

IV.  VARIATIONS IN STATE LAW DEFEAT THE REQUIRED  SHOWING OF PREDOMINANCE ............................................................................................. 5

    A.  Burton Fails to Conduct the Required Choice-of-Law Analysis ............... 5

    B.  State Laws Vary Materially on Breach of Contract and the Implied Covenant ................................................................................................ 7

    C.  State Laws Vary Materially on Fraud ..................................................... 9

    D.  State Law Varies Materially on Promissory Estoppel ............................ 10

    E.  Burton Fails to Analyze Nationstar's Defenses ..................................... 11

V.  INDIVIDUAL ISSUES PREDOMINATE ON BURTON'S CLAIMS  AND NATIONSTAR'S DEFENSES .......................................................................... 12

    A.  Breach Is Not An Issue Likely to Drive Resolution of the Case ............. 12

    B.  Breach Cannot Be Proven With Common Evidence ............................... 13

    C.  Individual Factual Questions Predominate on the Implied Covenant Claim .......... 15

    D.  The Required Showing of Reliance Defeats Predominance  on Plaintiffs' Fraud and Promissory Estoppel Claims ................................................. 16

    E.  Individual Issues Predominate on Nationstar's Affirmative Defenses ................. 17

VI.  BURTON HAS NOT SHOWN COMMON PROOF OF DAMAGES ............................. 18

VII.  BURTON HAS NOT SHOWN A CLASS EXISTS ................................................ 20

    A.  The Class Is Not Administratively Ascertainable ................................... 20

    B.  The Class Definition Is Overbroad ........................................................ 21

VIII.  BURTON IS AN ATYPICAL REPRESENTATIVE ............................................. 23

IX.  A CLASS ACTION WOULD NOT BE SUPERIOR ............................................ 23

X.      NO ISSUE CLASS SHOULD BE CERTIFIED ................................................................. 24

XI.     CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*A-C Co. v. Sec. Pac. Nat. Bank,*
  173 Cal.App.3d 462 (1985) ............................................................................................11

*Acrymed, Inc. v. Convatec,*
  317 F. Supp. 2d 1204 (D. Or. 2004) ...............................................................................7

*Algarin v. Maybelline, LLC,*
  2014 WL 1883772 (S.D. Cal. May 12, 2014) .................................................................23

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................................................2

*Anderson v. Capital One Bank,*
  224 F.R.D. 444 (W.D. Wis. 2004) .................................................................................20

*Ardis v. Cox,*
  314 S.C. 512, 431 S.E.2d 267 (1993) .........................................................................9, 10

*Astiana v. Ben & Jerry's Homemade, Inc.,*
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ......................................................................18

*Auto. Leasing Corp. v. Mahindra & Mahindra, Ltd.,*
  2014 WL 988871 (N.D. Ga. Mar. 14, 2014) ..................................................................10

*Avritt v. Reliastar Life Ins. Co.,*
  615 F.3d 1023 (8th Cir. 2010) ........................................................................................15

*Bates v. Allied Mut. Ins. Co.,*
  467 N.W.2d 255 (Iowa 1991) ...........................................................................................9

*Bowers v. Jefferson Pilot Fin. Ins. Co.,*
  219 F.R.D. 578 (E.D. Mich. 2004) .............................................................................7, 8

*Burger King Corp. v. Weaver,*
  169 F.3d 1310 (11th Cir. 1999) .......................................................................................8

*Campusano v. BAC Home Loans Servicing LP,*
  2013 WL 2302676 (C.D. Cal. Apr. 29, 2013) .......................................................6, 13, 23

*Cardinal State Bank, Nat. Ass'n v. Crook,*
  184 W. Va. 152, 399 S.E.2d 863 (1990) ...........................................................................9

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
  222 Cal.App.3d 1371 (1990) ......................................................................................7, 15

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal.4th 342 (1992)................................................................................................9

*Carnegie v. Household Int'l, Inc.*,
   376 F.3d 656 (7th Cir. 2004)...............................................................................24

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013)................................................................................21

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996).................................................................6, 9, 10, 25

*Church v. Consol. Freightways, Inc.*,
   1991 WL 284083 (N.D. Cal. June 14, 1991) .......................................................9

*Citron v. Wachovia Mortgage Corp.*,
   922 F. Supp. 2d 1309 (M.D. Fla. 2013) ............................................................18

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) .................................................................................18, 19

*Commercial Credit Corp. v. Harris*,
   212 Kan. 310, 510 P.2d 1322 (1973) ...................................................................7

*Cruz v. Dollar Tree Stores, Inc.*,
   2011 WL 2682967 (N.D. Cal. July 8, 2011) ......................................................19

*Cunningham Charter Corp. v. Learjet, Inc.*,
   258 F.R.D. 320 (S.D. Ill. 2009)............................................................................6

*Dahl v. Sittner*,
   474 N.W.2d 897 (S.D. 1991) .............................................................................10

*Daniels v. Army Nat'l Bank*,
   822 P.2d 39 (Kan. 1991) ......................................................................................9

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)...............................................................................22

*Desai v. Deutsche Bank Sec. Ltd.*,
   573 F.3d 931 (9th Cir. 2009)..............................................................................16

*Duchardt v. Midland Nat'l Life Ins. Co.*,
   265 F.R.D. 436 (S.D. Iowa 2009) ........................................................................8

*Durell v. Sharp Healthcare*,
   183 Cal.App.4th 1350 (2010)...............................................................................7

*Echols v. Beauty Built Homes, Inc.*,
   132 Ariz. 498, 647 P.2d 629 (1982) ..................................................................10

*Eidsmore v. RBB, Inc.*,
    25 Cal.App.4th 189 (1994) ................................................................................14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ...............................................................................5

*English v. Fisher*,
    660 S.W.2d 521 (Tex. 1983) ................................................................................8

*Farmer v. Phillips Agency, Inc.*,
    285 F.R.D. 688 (N.D. Ga. 2012) ........................................................................20

*Fed. Ins. Co. v. Starr Elec. Co.*,
    410 S.E.2d 684 (Va. 1991) .................................................................................12

*Federal Deposit Ins. Co. v. Coleman*,
    795 S.W.2d 706 (Tex. 1990) ................................................................................9

*Field v. Mans*,
    516 U.S. 59 (1995) .............................................................................................10

*First Nat. Bank of Logansport v. Logan Mfg. Co., Inc.*,
    577 N.E.2d 949 (Ind. 1991) ...............................................................................11

*Foad Consulting Grp. Inc. v. Azzalino*,
    270 F.3d 821 (9th Cir. 2001) ...............................................................................8

*Franco v. Connecticut Gen. Life Ins. Co.*,
    2014 WL 1415949 (D.N.J. April 14, 2014) .......................................................25

*Garst v. Univ. of Oklahoma*,
    2001 OK CIV APP 144, 38 P.3d 927 ..................................................................11

*Gates v. Rohm & Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ...............................................................................25

*Gaudin v. Saxon Mortgage Servs., Inc.*,
    297 F.R.D. 417 (N.D. Cal. 2013) .......................................................................13

*Gomez v. Kroll Factual Data, Inc.*,
    2014 WL 1456530 (D. Colo. Apr. 14, 2014) .....................................................20

*Grant v. Aulicky*,
    161 Ga. App. 817, 290 S.E.2d 107 (1982) .........................................................10

*Graybill v. Wells Fargo Bank, N.A.*,
    2013 WL 978245 (N.D. Cal. Mar. 12, 2013) .....................................................17

*Green Spring Farms v. Kersten*,
    136 Wis. 2d 304 401 N.W.2d 816 (1987) ..........................................................10

*Greenberg v. Koegler*,
    59 Pa. D. & C. 31 (Com. Pl. 1947) .......................................................15

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003)........................................................16, 20

*Gustafson v. BAC Home Loans Servicing, LP*,
    294 F.R.D. 529 (C.D. Cal. 2013) ...............................................8, 9, 15

*Haiman v. Fed. Ins. Co.*,
    798 So.2d 811 (Fla. Ct. App. 2001) ..........................................................7

*Halvorson v. Auto-Owners Ins. Co.*,
    718 F.3d 773 (8th Cir. 2013) ....................................................................22

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ....................................................................23

*Harper v. Trans Union, LLC*,
    2006 WL 3762035 (E.D. Pa. Dec. 20, 2006) ..........................................20

*Haskins v. First Am. Title Ins. Co.*,
    2014 WL 294654, at *8-14 (D. N.J. Jan. 27, 2014) ................................21

*House of Prayer: Renewal & Healing Ctr. of Yuba City v. Evangelical Ass'n for India*,
    113 Cal.App.4th 48 (2003)........................................................................14

*In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig., MDL 10-2193-RWZ*,
    2013 WL 4759649 (D. Mass. Sept. 4, 2013)...............................13, 23, 24

*In re Citimortgage, Inc. Home Affordable Modification Program (-HAMP-) Litig.*,
    2013 WL 8844095 (C.D. Cal. Oct. 7, 2013) ....................14, 15, 17, 20, 23

*In re Med. Waste Servs. Antitrust Litig.*,
    2006 WL 538927 (D. Utah Mar. 3, 2006)...............................................19

*Industrias Magromer Cueros Y Pieles, S.A. v. Louisiana Bayou Furs, Inc.*,
    293 F.3d 912 (5th Cir. 2002)......................................................................9

*Isbell v. Ed Ball Const. Co., Inc.*,
    310 Ark. 81, 833 S.W.2d 370 (1992) .........................................................8

*J.J. Gumberg Co. v. Janis Servs., Inc.*,
    847 So. 2d 1048 (Fla. Ct. App. 2003) ........................................................7

*Jamison v. First Credit Servs., Inc.*,
    2013 WL 3872171 (N.D. Ill. July 29, 2013) ...........................................18

*Jensen v. Sipco, Inc.*,
    38 F.3d 945 (8th Cir. 1994) .........................................................................16

*Jim Ball Pontiac–Buick–GMC, Inc. v. DHL Exp. (USA), Inc.*,
    2011 WL 815209 (W.D.N.Y. March 2, 2011) ...............................................8

*Johnson v. Brewer*,
    427 So. 2d 118 (Miss. 1983) ......................................................................10

*Keck v. Wacker*,
    413 F. Supp. 1377 (E.D. Ky. 1976)............................................................10

*Kopeikin v. Merchants Mortgage & Trust Corp.*,
    679 P.2d 599 (Colo. 1984) ...........................................................................9

*Krueger v. Nw. Mut. Life Ins. Co.*,
    2011 WL 2938273 (N.D. Fla. July 21, 2011) ..............................................7

*Kunzelmann v. Wells Fargo Bank, N.A.*,
    2013 WL 139913 (S.D. Fla. Jan. 10, 2013) ...................................6, 16, 18

*Lake Martin/Alabama Power Licensee Ass'n v. Alabama Power Co.*,
    601 So. 2d 942 (Ala. 1992) ..........................................................................8

*Lane v. Wells Fargo Bank, N.A.*,
    2013 WL 3187410 (N.D. Cal. June 21, 2013) .............................................6

*Licocci v. Cardinal Assocs., Inc.*,
    492 N.E.2d 48 (Ind. Ct. App. 1986) ..........................................................12

*Loranger Const. Corp. v. E. F. Hauserman Co.*,
    6 Mass. App. Ct. 152, 374 N.E.2d 306 *aff'd*, 376 Mass. 757, 384 N.E.2d 176
    (1978) ..........................................................................................................11

*Luedtke v. Nabors Alaska Drilling*,
    834 P.2d 1220 (Alaska 1992) .......................................................................9

*Martens v. Minnesota Min. & Mfg. Co.*,
    616 N.W.2d 732 (Minn. 2000) ...................................................................11

*Martin v. Dahlberg, Inc.*,
    156 F.R.D. 207 (N.D. Cal. 1994) ...............................................................16

*Mateo v. M/S Kiso*,
    805 F. Supp. 761 (N.D. Cal. 1991) ............................................................22

*Matter of Rhone-Poulenc Rorer, Inc.*,
    51 F.3d at 1302-1304 .................................................................................25

*Mazur v. eBay, Inc.*,
  257 F.R.D. 563 (N.D. Cal. 2009) ................................................18, 22, 23

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................................5, 21

*McCarthy v. U.S.I. Corp*,
  678 A.2d 48 (Me. 1996) ...........................................................................10

*McCreary v. Mercury Lumber Distributors*,
  124 Cal.App.2d 477 (1954) ......................................................................15

*McHale v. NuEnergy Grp.*,
  2002 WL 321797 (E.D. Pa. Feb. 27, 2002) ................................................8

*McKenna v. First Horizon Home Loan Corp.*,
  475 F.3d 418 (1st Cir. 2007) ....................................................................25

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  672 F.3d 482 (7th Cir. 2012) ....................................................................24

*Mejdrech v. Met-Coil Sys. Corp.*,
  319 F.3d 910 (7th Cir. 2003) ....................................................................24

*Midwest Mgmt. Corp. v. Stephens*,
  291 N.W.2d 896 (Iowa 1980) .....................................................................9

*Mirkin v. Wasserman*,
  5 Cal.4th 1082 (1993) ...............................................................................16

*Nilavar v. Osborn*,
  127 Ohio App. 3d 1, 711 N.E.2d 726 (1998) ...........................................11

*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*,
  144 Cal.App.4th 1175 (2006) ...................................................................18

*Osborne v. Subaru of Am., Inc.*,
  198 Cal.App.3d 646 (1988) ......................................................................10

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ...............................................................22, 23

*Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*,
  537 F.3d 1184, 1194 (10th Cir. 2008); ....................................................20

*Palmer v. Borg-Warner Corp.*,
  838 P.2d 1243 (Alaska 1992) ...................................................................10

*Petit v. Key Bank of Maine*,
  688 A.2d 427 (Me. 1996) ............................................................................9

*Poulos v. Caesars World, Inc.*,
    379 F.3d 654 (9th Cir. 2004) ..................................................................16

*Quake Const., Inc. v. Am. Airlines, Inc.*,
    141 Ill. 2d 281, 565 N.E.2d 990 (1990) ...................................................11

*Rapp v. Green Tree Servicing, LLC*,
    2014 WL 3846032, at *6 (D. Minn. Aug. 5, 2014)....................8, 12, 15, 18

*Reed v. King*,
    145 Cal.App.3d 261 (1983) ......................................................................10

*Rexnord Holdings, Inc. v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994) .........................................................................7

*Reynolds Metals Co. v. Hill*,
    825 So.2d 100 (Ala. 2002) ..........................................................................7

*Rice v. Vitalink Pharmacy Servs., Inc.*,
    124 F. Supp. 2d 343 (W.D.N.C. 2000)......................................................11

*Ripple's of Clearview, Inc. v. Le Havre Associates*,
    88 A.D.2d 120, 452 N.Y.S.2d 447 (1982) ................................................11

*Ritti v. U-Haul Int'l, Inc.*,
    2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) ...........................................7, 8

*Rivera v. Bio Engineered Supplements & Nutrition, Inc.*,
    2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) ...........................................9

*Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,
    113 S.W.3d 636 (Ky. Ct. App. 2003).......................................................11

*Rossberg v. Bank of Am., N.A.*,
    219 Cal.App.4th 1481 (2013) ...................................................................17

*Rowell v. Voortman Cookies, Ltd.*,
    2005 WL 1026715 (N.D. Ill. Apr. 27, 2005) ...........................................16

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159, 1176-77 (11th Cir. 2010). ..........................................11, 12

*Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*,
    319 F.3d 205 (5th Cir. 2003)....................................................................16

*Sepulveda v. Wal-Mart Stores, Inc.*,
    237 F.R.D. 229 (C.D. Cal. 2006) *aff'd in part, rev'd in part*, 275 F. App'x 672
    (9th Cir. 2008) *opinion vacated on reh'g*, 464 F. App'x 636 (9th Cir. 2011) ............................24

*Shoney's LLC v. MAC East, LLC,*
    27 So.2d 1216 (Ala. 2009) ...................................................................................9

*Simer v. Rios,*
    661 F.2d 655 (7th Cir. 1981) ...............................................................................20

*Singh v. I.N.S.,*
    213 F.3d 1050 (9th Cir. 2000) .............................................................................21

*Sky Chefs v. Pryor,*
    38 Tenn. App. 443, 276 S.W.2d 485 (1954) .......................................................15

*Spence v. Griffin,*
    236 Va. 21, 372 S.E.2d 595 (1988) .......................................................................9

*Sprague v. Gen. Motors Corp.,*
    133 F.3d 388 (6th Cir. 1998) ..........................................................................16, 23

*State of Alaska v. Suburban Propane Gas Corp.,*
    123 F.3d 1317 (9th Cir. 1997) .............................................................................23

*Steiner v. Thexton,*
    48 Cal.4th 411 (2010) ............................................................................................9

*Stone v. Advance Am.,*
    278 F.R.D. 562 (S.D. Cal. 2011) ........................................................................19

*Stone v. Lawyers Title Ins. Corp.,*
    554 S.W.2d 183 (Tex. 1977) ...............................................................................10

*Sweet v. Pfizer,*
    232 F.R.D. 360 (C.D. Cal. 2005) ..........................................................................6

*Tenzer v. Superscope, Inc.,*
    39 Cal.3d 18 (1985) .............................................................................................13

*Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.,*
    756 N.W.2d 907 (Minn. Ct. App. 2008) ...............................................................7

*Thorn v. Jefferson-Pilot Life Ins. Co.,*
    445 F.3d 311 (4th Cir. 2006) ...............................................................................18

*Tietsworth v. Sears, Roebuck & Co.,*
    2012 WL 1595112 (N.D. Cal. May 4, 2012) .......................................................22

*Ultracuts Ltd. v. Wal-Mart Stores, Inc.,*
    343 Ark. 224, 33 S.W.3d 128 (2000) ....................................................................7

*US Ecology, Inc. v. State,*
    129 Cal.App.4th 887 (2005) ................................................................................13

*Valentino v. Carter-Wallace, Inc.*
  97 F.3d 1227 (9th Cir. 1996) .................................................................................24, 25

*Ver Brycke v. Ver Brycke*,
  379 Md. 669, 843 A.2d 758 (2004) ..................................................................11

*Vu v. California Commerce Club, Inc.*,
  58 Cal.App.4th 229 (1997) ................................................................................13

*W.J. Schafer Associates, Inc. v. Cordant, Inc.*,
  254 Va. 514, 493 S.E.2d 512 (1997) ................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  __ U.S. __, 131 S.Ct. 2541 (2011) ........................................................... *passim*

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) ..........................................................................6

*Washington Mut. Bank, FA v. Sup. Ct.*,
  24 Cal.4th 906 (2001) ..........................................................................................5

*Watson Const. Co. v. Amfac Mortgage Corp.*,
  124 Ariz. 570, 606 P.2d 421 (1979) ....................................................................7

*Wechsler v. Hunt Health Sys., Ltd.*,
  186 F. Supp. 2d 402 (S.D.N.Y. 2004) ................................................................7

*White v. Empire Exp., Inc.*,
  395 S.W.3d 696 (Tenn. Ct. App. 2012) ............................................................12

*Wyman v. Popham*,
  252 Ga. 247, 312 S.E.2d 795 (1984) ..................................................................9

*Yarger v. ING Bank, FSB*,
  285 F.R.D. 308 (D. Del. 2012) .................................................................8, 9, 16

*Zandman v. Joseph*,
  102 F.R.D. 924 (N.D. Ind. 1984) ........................................................................9

*Zenor v. El Paso Healthcare Sys., Ltd.*,
  176 F.3d 847 (5th Cir. 1999) ..............................................................................11

*Zimmerman v. Kent*,
  31 Mass. App. Ct. 72, 575 N.E.2d 70 (1991) ..................................................10

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .........................................................................5, 6

1

**STATUTES**

2

Ala. Code,
 § 6-11-21(a) ..................................................................................................10

3

4

Cal. Civil Code
 § 1657 ...........................................................................................................14

5

Cal. Code of Civil Procedure
 § 338(d) .........................................................................................................18

6

7

Colo. Rev. Stat.
 § 13-21-102 ...................................................................................................10

8

9

Ga. Code Ann.
 § 51-12-5.1(g) ...............................................................................................10

10

Iowa Code
 § 668A.1(2)(a) ...............................................................................................10

11

12

La. Civil Code
 Article 1953 ...................................................................................................10

13

14

Or. Rev. Stat.
 § 31.735(1) ....................................................................................................10

15

16

**RULES**

17

Federal Rules of Civil Procedure
 Rule 23 .................................................................................................. *passim*

18

19

Fed. Rules of Evidence
 Rule 602 .........................................................................................................21
 Rule 802 .........................................................................................................21
 Rule 1001-1008 .............................................................................................21

20

21

**OTHER AUTHORITIES**

22

https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_4
 4.pdf................................................................................................................22

23

24

25

26

27

28

# I.  INTRODUCTION

When Dennis Burton first filed this putative class action, he alleged Nationstar Mortgage LLC had a systematic policy of foreclosing on borrowers to whom it had offered loan modifications under the Home Affordable Modification Program (HAMP).  Those allegations proved false.  Unwilling to abjure his class aspirations, Burton changed course and invented a new theory.  Burton now seeks to represent a class of persons who received the HAMP modification he did not, but who experienced a "delay" of at most two to three days between the date Nationstar signed the modification and the date it was "booked" within Nationstar's system.

Burton attempts to manufacture a class claim based on a procedural nuance that never affected anyone.  The date on which a modification was booked is not even significant—to the borrower or to Nationstar—since Nationstar booked all modifications to take effect as of the "modification effective date" identified in the parties' agreement, regardless of which date the modification was actually booked in Nationstar's system.  No one suffered any harm during the brief interval between signing and booking.

Burton falls far short of meeting his burden of showing his proposed "sign-then-book" claim satisfies Fed. R. Civ. P. 23's requirements.  Though Burton proposes a nationwide class on four state-law claims, he provides no analysis of state-law differences on those claims or Nationstar's defenses to them.  That omission alone warrants denial of Burton's motion.

Burton also fails to analyze the elements of his four claims or Nationstar's affirmative defenses, or show how they can be proven or disproven with common evidence.  Burton hinges his entire case on one allegedly common issue:  whether Nationstar breached the contract by signing it before booking it.  But defendant's breach is only one element of Burton's breach of contract claim.  He must also prove putative class members' performance and damages—each of which will require individual evidence.  Burton's implied covenant, promissory estoppel, and fraud claims raise yet more individual issues.  Thus, Burton fails to show that his single proposed common question will generate "common answers apt to drive the resolution of the litigation" as is required to establish commonality, let alone the "far more demanding" predominance criterion under Fed. R. Civ. P. 23(b)(3).  *See Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S.Ct. 2541,

1    2550 (2011); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997).

2        Even breach cannot be proven with common evidence.  The agreement is silent on when

3    the modification must be booked and whether it must be booked before signing.  The law thus

4    implies a reasonable time for performance, a question of fact that will vary from borrower to

5    borrower.  The answer to that question will also vary based on application of state law, since some

6    states' laws will allow the introduction of extrinsic evidence regarding what each borrower

7    believed with respect to when the modification will be booked.

8        Burton's motion falls short in other ways as well.  As Burton concedes, the damages

9    suffered by putative class members (if any) during the period between the countersigning and

10   booking is an inherently individual issue.  Statistical sampling, even were it still permissible post-

11   *Dukes*, would not help Burton since Nationstar does not maintain records that would prove the

12   type of damage Burton alleges.  Establishing any class member suffered credit damage would

13   require each individual class member to submit evidence showing he or she suffered a credit

14   denial between booking and signing proximately caused by Nationstar's reporting.

15       Burton also fails to define an ascertainable class.  Nationstar does not maintain electronic

16   records that would allow it to search for borrowers whose modifications were signed before they

17   were booked; a burdensome file-by-file review would be required.  Burton's proposed class is also

18   overbroad as it consists largely, if not exclusively, of persons who suffered no harm during the

19   brief interlude between the signing and booking of their modifications.

20       Burton is an atypical representative.  His claim is unique.  Every other putative class

21   member received the HAMP modification he or she sought.  Proof of Burton's individual claim—

22   that Nationstar wrongfully foreclosed on his property—would not prove any other class member's

23   claim—that he suffered harm between signing and booking.

24       Problems of individual proof and manageability preclude the required showing of

25   superiority.  Burton cannot avoid the issue by falling back on Rule 23(c)(4)(A).  Certifying an

26   issue class solely on the question of breach would benefit no one except Burton's lawyers, as each

27   putative class member would still have to file a separate individual action to recover.  The cost and

28   delay attendant with class certification are unnecessary in this case, as any person actually

1  aggrieved by Nationstar's practices will be motivated to file his or her own suit.

2      For these reasons and others detailed below, the motion should be denied.

3                          **II.   STATEMENT OF FACTS**

4  **A.      Nationstar's HAMP Procedures**

5      Except as otherwise noted, the facts summarized below pertain to Nationstar's HAMP

6  procedures between the inception of the program in 2009 and January 2010.

7      HAMP provides a two-step process for participating servicers to modify the delinquent

8  loans of eligible borrowers.  The first step is the trial period plan ("TPP").  The TPP requires the

9  borrowers to make three monthly payments and make a number of representations that must be

10  true, including that any income information provided in support of the application is accurate.  *See*

11  Johnson Decl., ¶¶ 3, 4.

12      If the borrower successfully completed the TPP and Nationstar determined that he

13  qualified for a modification under investor guidelines, Nationstar would send the borrower a

14  permanent modification offer, the second step of the modification process.  Each modification

15  agreement contains a "modification effective date," the date as of which the modification will take

16  effect if accepted by the borrower.  *Id.*, ¶¶ 3-5, 8.

17      Nationstar instructed borrowers to mail two original signed versions of the modification

18  agreement to it.  *Id.*, ¶ 7; *see also* Kemp Decl., Ex. B [30:8-25, 39:20-40:14].  Nationstar

19  administratively countersigned HAMP agreements and returned them to borrowers before booking

20  them in its system of record.  Johnson Decl., ¶ 7.  Nationstar booked all HAMP modifications to

21  take effect as of the "modification effective date" identified in the agreement even if that date had

22  already elapsed.  *Id.*, ¶ 8.

23      Nationstar would generally countersign and book modifications within two to three days of

24  delivery.  Kemp Decl., Ex. B [45:15-46:2, 46:16-47:6, 48:11-15, 53:10-54-21, 101:14-102:12,

25  102:20-103:19, 111:17-113:15].  There are no Nationstar borrowers other than Burton whose loan

26  modifications were countersigned but whose modifications were not ultimately booked.  *Id.*, Ex. B

27  [51:20-53:4]; Johnson Decl., ¶¶ 11, 29-34.

28      In approximately January 2010, Nationstar changed its process to book modifications

1   before signing them.  As a practical matter, that change did not affect the total time in which

2   Nationstar processed modifications since they were still signed and booked within two to three

3   days.  *See* Johnson Decl., ¶ 11; *see also* Kemp Decl., Ex. B [43:6-21, 60:2-61:6].

4   **B.      Facts Underlying Burton's Claims**

5        Burton fell delinquent on his home loan in late 2008.  Kemp Decl., Ex. A [38:18-39:15].

6   Burton contacted Nationstar, his loan servicer, and applied for a HAMP modification.  *Id.*, Ex. A

7   [47:18-49:2, 52:21-53:6, 58:10-59:16].  Burton entered into and completed a TPP.  *Id.*, Ex. A

8   [61:8-62:11, 93:2-12, Ex. 9]; *see also* Johnson Decl., ¶¶ 15-18.

9        In August 2009, Nationstar sent Burton an offer of a HAMP modification and two original

10  agreements for Burton to sign and return to Nationstar.  *See* Johnson Decl., ¶ 18; Kemp Decl., Ex.

11  A [107:15-110:1, 111:11-22, 112:16-113:6, Exs. 15, 16].  Burton returned one signed copy of the

12  modification to Nationstar by fax on August 27, 2009, but delayed until October 2009 in

13  submitting the required two signed originals.  Nationstar countersigned the agreement on October

14  9, 2009 and then returned one original to Burton.  *See* Johnson Decl., ¶¶ 19, 20, Ex. 3.

15       Contrary to Nationstar's standard procedure and for reasons still unknown, Burton's

16  modification was not booked after it was countersigned.  In response to Burton's inquiries,

17  Nationstar advised Burton to continue making monthly payments on the loan while the

18  modification was being booked.  Burton made payments on October 20, 2009, and November 30,

19  2009, but then stopped.  *See id.*, ¶¶ 20, 21.

20       In December 2009, Burton began looking for employment in Colorado.  Kemp Decl., Ex.

21  A [148:16-150:23].  Burton accepted employment at a car dealership in Colorado, and began work

22  in January 2010.  *Id.*, Ex. A [150:24-152:4].  Around that time, Burton began to believe that

23  Nationstar would not modify his loan on the terms promised or that it would not properly credit

24  prior payments he made on his account.  *Id.*, Ex. A [140:1-141:21]; *see also* Dkt. no. 9, at 10, 13.

25  Burton did not tell Nationstar he had moved to Colorado.  Kemp Decl., Ex. A [158:20-22].

26       Nationstar attempted to contact Burton regarding the modification several times in

27  December 2009 and January 2010, but was unable to reach him, likely because he was in

28  Colorado.  Johnson Decl., ¶¶ 22, 23, 27.  In January 2010, Nationstar conducted a property

1  inspection and verified that Burton no longer occupied the property.  *Id.*, ¶¶ 24, 25.

2       On February 22, 2010, the property was sold at a trustee's sale to Fannie Mae, the

3  foreclosing beneficiary.  *Id.*, ¶ 28.

4  ### III.  CLASS CERTIFICATION STANDARDS

5       "The class action 'is an exception to the usual rule that litigation is conducted by and on

6  behalf of the individual named parties only.' "  *Dukes*, 131 S.Ct. at 2550 (citation omitted).  "Rule

7  23 does not set forth a mere pleading standard.  A party seeking class certification must

8  affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that

9  there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  *Id.* at 2551.

10      "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine

11 whether the party seeking certification has met the prerequisites of Rule 23."  *Mazza v. Am. Honda

12 Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citation omitted).  "In many cases, 'that "rigorous

13 analysis" will entail some overlap with the merits of the plaintiff's underlying claim.' "  *Ellis v.

14 Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (*citing Dukes*, 131 S.Ct. at 2551).

15 ### IV.  VARIATIONS IN STATE LAW DEFEAT THE REQUIRED
   ### SHOWING OF PREDOMINANCE
16

17 **A.      Burton Fails to Conduct the Required Choice-of-Law Analysis**

18      Burton has ignored his first duty in seeking nationwide certification on his four state-law

19 claims—which is to tell the Court which law applies and how any variances in applicable state law

20 can be handled in a classwide trial.

21      "A federal court sitting in diversity must look to the forum state's choice of law rules to

22 determine the controlling substantive law."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180,

23 1187 (9th Cir. 2001).  Under California law, the choice-of-law provisions in putative class

24 members' security instruments are enforceable.[1]  *See Washington Mut. Bank, FA v. Sup. Ct.*, 24

25 _____

26 [1] Burton and every other borrower entered into a deed of trust or mortgage that chooses the law of
   the state in which the encumbered real property is located.  *See* Kemp Decl., Ex. A [29:7-30:2,
27 31:6-32:10, Exs. 1, 2, § 16.].  A HAMP modification alters a loan in specified respects, but
   otherwise leaves unaffected all other terms of the original note and security instruments, including
28 (footnote continued)

1   Cal.4th 906, 916-18 (2001).  Accordingly, the laws of all 50 states will apply to Burton's proposed

2   nationwide class.

3          Since all 50 states' laws will apply, Burton must "creditably demonstrate, through an

4   'extensive analysis' of state law variances, that class certification does not present insuperable

5   obstacles.' " *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986).  Put another way,

6   Burton must present "a suitable and realistic plan for trial of the class claims," addressing how he

7   proposes to address "individualized issues and variances in state law."  *Zinser*, 253 F.3d at 1190.

8   This showing must be made with the initial moving papers, not slipped into a reply which the

9   defendant cannot address.  *Sweet v. Pfizer*, 232 F.R.D. 360, 370-72 (C.D. Cal. 2005).

10         Burton has made no attempt to address this obvious obstacle to certification, asserting

11  instead in a footnote that there are no variances among state contract laws.  *See* Dkt. no. 17, at n.

12  11.  Burton does not even mention his other three claims, let alone examine any state-law

13  variances on those claims.  For Burton to forego his most fundamental obligation in seeking

14  certification of a nationwide class on four state-law claims—thereby foisting his duty of

15  performing a choice-of-law analysis on Nationstar and this Court—is a critical deficiency that in

16  itself warrants denial of the entire motion.

17         "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any

18  problems with predominance or superiority can be overcome."  *Castano v. Am. Tobacco Co.*, 84

19  F.3d 734, 742 (5th Cir. 1996).  "If a plaintiff fails to present a sufficient choice of law analysis,

20  [he] fails to meet [his] burden of proof on Rule 23(b)(3)'s predominance requirement."[2]  As

21  Burton failed to perform any choice-of-law analysis, certification should be denied for that reason.

22  *See Campusano v. BAC Home Loans Servicing LP,* CV 11-4609 PSG JCX, 2013 WL 2302676, at

23  *6 (C.D. Cal. Apr. 29, 2013)..

24  _____

25  the choice-of-law provision.  *See id.*, Ex. A [61:8-62:11, Ex. 9,¶ 3].

26  [2] *Cunningham Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 332-33 (S.D. Ill. 2009); *accord*
    *Lane v. Wells Fargo Bank, N.A.,* C 12-04026 WHA, 2013 WL 3187410, at *4 (N.D. Cal. June 21,
27  2013); *Kunzelmann v. Wells Fargo Bank, N.A.*, 9:11-CV-81373-DMM, 2013 WL 139913, at *10
    (S.D. Fla. Jan. 10, 2013); *Sweet*, 232 F.R.D. at 370-72.

28

**B.       State Laws Vary Materially on Breach of Contract and the Implied Covenant**

Even if Burton had attempted a thorough choice-of-law analysis, he would have been unable to establish predominance.  Contrary to Burton's bald assertion, state laws vary materially even as to basic contract law.[3]

For example, in some states, a plaintiff cannot sue for breach of contract if he or she has materially breached the agreement.[4]  Some states, including California, require a plaintiff to prove that he performed, while others do not.[5]  Still others require a "willingness" to perform.[6]

One or more of these rules may bar putative class members' claims as many borrowers defaulted on their loans again even after being granted a HAMP modification.  Those borrowers cannot demonstrate performance or sue for any breach.  Burton does not suggest how performance can be proven at all, let alone on a class-wide basis.

The same goes for those states that require a breach to be "material," such as Florida.  *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. Ct. App. 2003).  In those states, even if a borrower proved a technical breach, no class member could recover unless the trier of fact also determines signing a few days before booking is material.  Further, materiality is a question of fact in some states, *Haiman v. Fed. Ins. Co.*, 798 So.2d 811, 811 (Fla. Ct. App. 2001), but a question of law elsewhere.  *See Wechsler v. Hunt Health Sys., Ltd.*, 186 F. Supp. 2d 402, 413 (S.D.N.Y. 2004) (New York law).  Accordingly, for some states, this would be an issue for the

---

[3] *See, e.g., Krueger v. Nw. Mut. Life Ins. Co.,* 1:10-CV-00128-SPM, 2011 WL 2938273, at *5 (N.D. Fla. July 21, 2011); *Ritti v. U-Haul Int'l, Inc*., CIV.A. 05-4182, 2006 WL 1117878, at *14 (E.D. Pa. Apr. 26, 2006); *Bowers v. Jefferson Pilot Fin. Ins. Co*., 219 F.R.D. 578, 583-84 (E.D. Mich. 2004).

[4] *See, e.g.*, *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1367-1368 (2010); *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1214 (D. Or. 2004); *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105-06 (Ala. 2002); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

[5] *Compare Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990); *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 918 (Minn. Ct. App. 2008) *with Ultracuts Ltd. v. Wal-Mart Stores, Inc*., 343 Ark. 224, 231-32, 33 S.W.3d 128, 133 (2000).

[6] *See, e.g., Watson Const. Co. v. Amfac Mortgage Corp*., 124 Ariz. 570, 581, 606 P.2d 421, 432 (1979); *Commercial Credit Corp. v. Harris*, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973)

1   jury, whereas for other states, it would be an issue for the court.

2   　　　　The application of varying state laws to putative class member contracts also implicates

3   state-law differences with respect to whether, when, and the extent to which extrinsic evidence

4   may be used to aid in the interpretation of a contract.

> Here, there are key differences among states laws regarding, for
> instance, the admissibility of extrinsic evidence.  [Citations]; *see
> also Duchardt v. Midland Nat'l Life Ins. Co.*, 265 F.R.D. 436 (S.D.
> Iowa 2009) (noting that "the law of 47 states ... vary as to their rules
> governing contract interpretation, especially regarding the use of
> extrinsic evidence in contract interpretation...."). For instance, the
> Ninth Circuit has noted that "[i]n contrast to many other states,
> California has a liberal parol evidence rule:  It permits consideration
> of extrinsic evidence to explain the meaning of the terms of a
> contract even when the meaning appears unambiguous." *Foad
> Consulting Grp. Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001).
> Other states, such as Arkansas, allow extrinsic evidence only where
> there is contractual ambiguity. *See, e.g., Isbell v. Ed Ball Const.
> Co., Inc.*, 310 Ark. 81, 85, 833 S.W.2d 370 (1992) ("Only when
> ambiguity exists and the meaning of a contract becomes a question
> of fact is parol evidence admissible.").

*Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 544 (C.D. Cal. 2013).

　　　　As the agreement does not address when the modification must be booked (*see, infra,* at

pp. 13-14), some states' parol evidence rules will allow both sides to adduce extrinsic evidence of

borrowers' expectations regarding the timing of booking.  The application of these different parol

evidence rules here would require a jury to consider different evidence for different issues at

different stages of the trial, thus precluding any showing of predominance.[7]

　　　　State law on the implied covenant is even more varied.  *See, e.g., Yarger v. ING Bank,

FSB*, 285 F.R.D. 308, 325 (D. Del. 2012).  Some states do not recognize the implied covenant or

do not permit an independent claim for its breach.[8]  Other states do not recognize the doctrine

---

[7] *See, e.g., Rapp*, 2014 WL 3846032, at *3-4; *Jim Ball Pontiac–Buick–GMC, Inc. v. DHL Exp.
(USA), Inc.*, No. 08–CV–761C, 2011 WL 815209, at *7 (W.D.N.Y. March 2, 2011); *Ritti v. U-
Haul Int'l, Inc.*, Civ. A. No. 05-4182, 2006 WL 1117878, at *14 (E.D. Pa. Apr. 26, 2006); *Bowers
v. Jefferson Pilot Fin. Ins. Co.*, 219 F.R.D. 578, 583-84 (E.D. Mich. 2004).

[8] *See, e.g., McHale v. NuEnergy Grp.*, CIV.A. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27,
2002); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316-17 (11th Cir. 1999); *English v. Fisher*,
660 S.W.2d 521, 522 (Tex. 1983); *Lake Martin/Alabama Power Licensee Ass'n v. Alabama
Power Co.*, 601 So. 2d 942, 945 (Ala. 1992).

1    absent a "special" or "fiduciary" relationship.  *See Federal Deposit Ins. Co. v. Coleman*, 795

2    S.W.2d 706, 708-09 (Tex. 1990).

3        Also, "[t]he states' laws vary as to whether there is an intent element and, if so, what intent

4    must be proven."  *Yarger*, 285 F.R.D. at 325 & n. 27 (citing cases); *see also Gustafson,* 294

5    F.R.D. at 547.  States disagree about whether good faith sets a subjective or an objective standard.[9]

6    And they disagree about whether the duty constrains discretion clearly conferred by the contract's

7    express terms.[10]  Of these complexities, Burton also says nothing.

8    **C.      State Laws Vary Materially on Fraud**

9        State laws also vary materially on common law fraud, precluding nationwide certification

10   on such claims.[11]

11       Differences begin with the burden of proof:  clear and convincing evidence in some

12   states;[12] a preponderance of the evidence in others.[13]  Yet others appear to mix the two.[14]  What

13   must be proven by those differing standards also varies.  Nine elements must be proven to

14   establish fraud under South Carolina law;[15] in West Virginia proof of only three suffices. *Cardinal*

15

16   [9] Subjective:  *Industrias Magromer Cueros Y Pieles, S.A. v. Louisiana Bayou Furs, Inc.,* 293 F.3d

17   912, 922 (5th Cir. 2002); *Daniels v. Army Nat'l Bank,* 822 P.2d 39, 43 (Kan. 1991); Objective:
     *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 373 (1992); *Luedtke v.*

18   *Nabors Alaska Drilling,* 834 P.2d 1220, 1224 (Alaska 1992).

19   [10] Yes: *Midwest Mgmt. Corp. v. Stephens*, 291 N.W.2d 896, 913 (Iowa 1980); No:  *Steiner v.*
     *Thexton,* 48 Cal.4th 411, 419-20 (2010); *Shoney's LLC v. MAC East, LLC,* 27 So.2d 1216, 1220

20   (Ala. 2009).

21   [11] *See, e.g., Castano*, 84 F.3d at 742; *Rivera v. Bio Engineered Supplements & Nutrition, Inc*.,
     SACV07-1306JVS(RNBX), 2008 WL 4906433, at * 2 (C.D. Cal. Nov. 13, 2008); *Church v.*

22   *Consol. Freightways, Inc*., C-90-2290 DLJ, 1991 WL 284083, at *11-13 (N.D. Cal. June 14,
     1991); *Zandman v. Joseph*, 102 F.R.D. 924, 930 (N.D. Ind. 1984).

23   [12] *Petit v. Key Bank of Maine*, 688 A.2d 427, 431 (Me. 1996); *Spence v. Griffin*, 236 Va. 21, 28,

24   372 S.E.2d 595, 598 (1988).

25   [13] *Kopeikin v. Merchants Mortgage & Trust Corp*., 679 P.2d 599, 601 (Colo. 1984); *Wyman v.*
     *Popham,* 252 Ga. 247, 248, 312 S.E.2d 795, 796-97 (1984).

26   [14] *Bates v. Allied Mut. Ins. Co*., 467 N.W.2d 255, 260 (Iowa 1991) ("preponderance of clear,
     satisfactory and convincing evidence").

27   [15] *Ardis v. Cox*, 314 S.C. 512, 515, 431 S.E.2d 267, 269 (1993)

28

1   *State Bank, Nat. Ass'n v. Crook*, 184 W. Va. 152, 156, 399 S.E.2d 863, 867 (1990).  Other states'

2   laws lie between.  *Reed v. King*, 145 Cal.App.3d 261, 264 (1983) (five elements)

3       Scienter requirements differ as well.  In some states, actual intent to defraud or knowledge

4   of falsity is required.[16]  In others, a defendant may be liable if the statements are made

5   "recklessly" without regard to their truth or falsity.[17]  Under some states' laws, ignorance of the

6   truth of the representation will suffice.[18]  Louisiana requires proof of intent to obtain an unjust

7   advantage or cause loss or inconvenience.  La. Civ. Code art. 1953.

8       States have followed at least three distinct reliance standards:  actual reliance, justifiable

9   reliance, and reasonable reliance.  *Field v. Mans*, 516 U.S. 59, 72-75 nn. 10-12 (1995); *Castano*,

10  84 F.3d at 742-43 n. 15 (citing authorities).  These nuances may matter here as class members'

11  reliance, if any, raises inherently individual questions.  *See, infra*, at pp. 16-17.

12      Burton also seeks punitive damages.  SAC, prayer ¶ d.  But, scienter standards on punitive

13  damages vary widely from state to state.  *See Osborne v. Subaru of Am., Inc*., 198 Cal.App.3d 646,

14  658 (1988).  Several states require a portion of the punitive damage award to be paid to a state

15  fund (Or. Rev. Stat. § 31.735(1); Iowa Code § 668A.1(2)(a)), while others cap punitive damages.

16  Ala. Code, §6-11-21(a) ($500,000 cap); Ga. Code Ann. § 51-12-5.1(g) ($250,000 cap); Colo. Rev.

17  Stat. § 13-21-102 (no more than actual damages).  Burton ignores these differences as well.

18  **D.    State Law Varies Materially on Promissory Estoppel**

19      State laws also vary materially on promissory estoppel claims.  *See, e.g., Auto. Leasing*

20  *Corp. v. Mahindra & Mahindra, Ltd.*, 1:12-CV-2048-TWT, 2014 WL 988871, at * 5 (N.D. Ga.

21  Mar. 14, 2014) (denying certification of nationwide promissory estoppel class).

---

22  [16] *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 318, n. 5 401 N.W.2d 816, 821 (1987) ; *Palmer*

23  *v. Borg-Warner Corp.*, 838 P.2d 1243, 1252 n. 16 (Alaska 1992); *Grant v. Aulicky*, 161 Ga. App. 817, 819, 290 S.E.2d 107, 109 (1982).

24  [17] *McCarthy v. U.S.I. Corp*, 678 A.2d 48, 53 (Me. 1996); *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D.

25  1991); *Ardis*, 314 S.C. at 515; *Keck v. Wacker*, 413 F. Supp. 1377, 1383 (E.D. Ky. 1976); *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977).

26  [18] *Echols v. Beauty Built Homes, Inc*., 132 Ariz. 498, 500, 647 P.2d 629, 631 (1982); *Johnson v.*

27  *Brewer*, 427 So. 2d 118, 121 (Miss. 1983); *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 78, 575 N.E.2d 70, 74 (1991).

28

Not all states recognize the doctrine.[19]  Those states that do permit affirmative claims for promissory estoppel require proof of different elements.[20]  Some states require that the promisor "intend" to induce reliance on the promise,[21] others states require that the promisor "expect" the promisee will rely,[22] and others require only that the promisee's reliance be reasonable.[23]  Some states will apply promissory estoppel only if it is necessary to avoid injustice[24]—likely a difficult hurdle for class members to clear in this case—but other states have no such requirement.[25]

In some states, like Maryland, promissory estoppel is a claim at law, whereas in others, like California, it is a claim in equity.[26]  Hence, for some states, the promissory estoppel claim would be tried to the jury, whereas for other states, it would be tried to the Court.

**E.     Burton Fails to Analyze Nationstar's Defenses**

Burton also ignores Nationstar's affirmative defenses to his claims.  Even with regard to "the alleged breach of a form contract … [t]he risk of voluminous and individualized extrinsic proof runs particularly high where a defendant raises substantial affirmative defenses to breach." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.,* 601 F.3d 1159, 1176-77 (11th Cir. 2010).

---

[19] *W.J. Schafer Associates, Inc. v. Cordant, Inc*., 254 Va. 514, 521, 493 S.E.2d 512, 516 (1997); *Rice v. Vitalink Pharmacy Servs., Inc*., 124 F. Supp. 2d 343, 347 (W.D.N.C. 2000).

[20] *Ripple's of Clearview, Inc. v. Le Havre Associates*, 88 A.D.2d 120, 122, 452 N.Y.S.2d 447, 449 (1982) (three elements); *Garst v. Univ. of Oklahoma*, 2001 OK CIV APP 144, 38 P.3d 927, 931(2001) (four elements); *First Nat. Bank of Logansport v. Logan Mfg. Co., Inc*., 577 N.E.2d 949, 954 (Ind. 1991) (five elements)

[21] *Martens v. Minnesota Min. & Mfg. Co*., 616 N.W.2d 732, 746 (Minn. 2000).

[22] *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc*., 113 S.W.3d 636, 642 (Ky. Ct. App. 2003); *First Nat. Bank of Logansport*, 577 N.E.2d at 954; *Loranger Const. Corp. v. E. F. Hauserman Co*., 6 Mass. App. Ct. 152, 154, 374 N.E.2d 306, 308 *aff'd*, 376 Mass. 757, 384 N.E.2d 176 (1978)

[23] *Zenor v. El Paso Healthcare Sys., Ltd*., 176 F.3d 847, 864 (5th Cir. 1999); *Ripple's of Clearview, Inc.*, 88 A.D.2d at 122.

[24] *First Nat. Bank of Logansport*, 577 N.E.2d at 954; *Loranger Const. Corp*., 374 N.E.2d at 308.

[25] *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 16, 711 N.E.2d 726, 736 (1998); *Quake Const., Inc. v. Am. Airlines, Inc*., 141 Ill. 2d 281, 309-10, 565 N.E.2d 990, 1004 (1990).

[26] *Ver Brycke v. Ver Brycke*, 379 Md. 669, 698, 843 A.2d 758, 775 (2004); *A-C Co. v. Sec. Pac. Nat. Bank*, 173 Cal.App.3d 462, 472 (1985).

Many states, for example, apply the defense of "first material breach."[27]  "A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986) (citations omitted). Many putative class members breached their home loan contracts by failing to make the required payments.  "Whether any particular class member's breach was 'material' … would require an analysis of the facts of each case and the law of each of the 50 states."  *Rapp v. Green Tree Servicing, LLC*, 12-CV-2496 PJS/FLN, 2014 WL 3846032, at *6 (D. Minn. Aug. 5, 2014)..

Waiver is another defense on which state laws differ.  "Of particular relevance to… [the] waiver defense is the extent to which conduct alone may be deemed a waiver of known rights. Among the [states], there are varying degrees of solicitude or hostility towards this method of proof."  *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1180 (citations omitted).  Many putative class members accepted the benefit of their modifications and ratified them by making payments for months or years thereafter.  Under some states' law, such conduct may be sufficient to impliedly waive any claim arising out of a supposed delay in booking the modification.  Whether such conduct constitutes waiver will vary factually as well as legally, thus creating another individual inquiry.  *See Rapp*, 2014 WL 3846032, at *6.

## V.  INDIVIDUAL ISSUES PREDOMINATE ON BURTON'S CLAIMS AND NATIONSTAR'S DEFENSES

### A.    Breach Is Not An Issue Likely to Drive Resolution of the Case

Burton proposes only a single common issue:  whether Nationstar breached the modification agreement by countersigning it before booking it.  *See* Dkt. no. 69, at 12.

Breach alone is not an issue that "will resolve an issue that is central to the validity of each one of [Burton's] claims in one stroke."  *Dukes*, 131 S. Ct. at 2551.  Breach is only one element of one of Burton's four claims.   It is not enough to prove promissory estoppel, which applies only in

---

[27] *Fed. Ins. Co. v. Starr Elec. Co.*, 410 S.E.2d 684, 689 (Va. 1991); *White v. Empire Exp., Inc.*, 395 S.W.3d 696, 716 (Tenn. Ct. App. 2012).

the absence of a contract and requires proof of reliance and damages.  *US Ecology, Inc. v. State*, 129 Cal.App.4th 887, 904 (2005).  And it certainly is not enough to prove fraud.  "[I]f plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of a[] … promise, he will never reach a jury."  *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 31 (1985).

A breach, by itself, is not even enough to prove breach of contract or of the implied covenant of good faith, neither of which is actionable absent a showing that the plaintiff performed under the contract and suffered proximately caused damages.  *See Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 233 (1997).  Burton concedes that proving damages will be difficult in this case. *See* Dkt. no. 69, at 19, n. 13.  And proof of performance raises inherently individual issues that have already felled similar attempts to certify classes.  *See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig., MDL 10-2193-RWZ,* 2013 WL 4759649, at *10-13 (D. Mass. Sept. 4, 2013); *Campusano*, 2013 WL 2302676, at *6.[28]  Most, if not all, absent class members breached their home loans by failing to make the payments due.  Others may not have complied with their obligations to demonstrate eligibility under HAMP or have defaulted again on their modified loans.  Yet, Burton does not even mention the issue.

Hence, showing only breach, even were it possible with common evidence, will not advance the litigation at all.  Class members would still have to prove several other elements on each of Burton's claims and overcome any applicable state-law defenses to recover.  Burton thus has not established commonality, let alone predominance.

**B.      Breach Cannot Be Proven With Common Evidence**

Burton cannot even prove the only supposed common issue he identifies with classwide evidence.  Burton baldly asserts that Nationstar breached putative class members' contracts whenever a modification was booked after it was countersigned or the "modification effective date," whichever date is later.  *See* Dkt. no. 69, at 13.  Tellingly, he points to no provision of the

---

[28] While *Gaudin v. Saxon Mortgage Servs., Inc.*, 297 F.R.D. 417 (N.D. Cal. 2013) certified a single-state class on a HAMP claim under a different theory, it is unpersuasive and a clear outlier that has been rejected by subsequent decisions.

1   contract that supports this theory.

2       The agreement does not address *when* a modification must be "booked" or implemented

3   within Nationstar's system.  The agreement does not mention "booking," much less specify when

4   the booking must take place or that it must occur before the countersigning.

5       Since the agreement is silent on the timing of performance, the law implies that booking

6   must be completed within a reasonable time.  "[I]f no time is specified for the performance of an

7   act required to be performed, a reasonable time is allowed."  *House of Prayer: Renewal & Healing*

8   *Ctr. of Yuba City v. Evangelical Ass'n for India*, 113 Cal.App.4th 48, 54 (2003) (*citing* Cal. Civ.

9   Code 1657).  "[R]easonableness of time for performance is a question of fact which depends on

10  the circumstances of the particular case."  *Eidsmore v. RBB, Inc.*, 25 Cal.App.4th 189, 198 (1994).

11      Whether a borrower's modification was booked within a reasonable time is an inherently

12  individual issue.  The speed at which Nationstar processes borrowers' modifications will vary for

13  a number of reasons, including Nationstar employees' workload, fluctuations in staffing, and

14  changes in Treasury's HAMP guidelines.

15      Borrowers' conduct may also have caused or contributed to the booking of the

16  modification after the agreement's effective date.  As Judge Fischer held in denying certification

17  of a similar HAMP class action, such individual factors preclude proof of breach of contract by

18  common evidence.

19          [D]etermination of the deadline by which Citi was required to
            provide either a permanent modification or a written denial cannot
20          be made simply by identifying the [modification effective date] as
            stated in the TPP.  The deadline may also have been affected by the
21          parties' course of conduct, changes in income, inaccurately or
            incompletely reported income, oral and written representations
22          regarding documentation still needed and other modification
            options, applicable Treasury Directives, and other considerations.
23          These determinations are critical to evaluating whether Citi breached
            the TPP, whether Plaintiffs are entitled to any damages as a result of
24          the breach, and the amount of any such damages.

25  *In re Citimortgage, Inc. Home Affordable Modification Program (-HAMP-) Litig.*, ML 11-2274

26  DSF PLAX, 2013 WL 8844095, at *6 (C.D. Cal. Oct. 7, 2013).

27      Similarly, some borrowers here may have delayed in submitting information demonstrating

28  their eligibility, or submitted incomplete information that required additional follow-up.  Others

1   may have delayed in accepting the agreement or, like Burton, delayed in submitting two signed

2   originals.  *See Johnson Decl.*, ¶¶ 5-7, 19-20.  Still others may have raised various individual

3   questions about their compliance with HAMP's prerequisites before Nationstar countersigned the

4   modification (*see* Dkt. no. 14, at 10), thus delaying the booking.  The trier of fact would have to

5   consider all these factors in determining whether any borrower's modification was booked within

6   a reasonable time after the effective date.

7          Determining a reasonable time of performance will vary based on application of state law

8   as well.  As explained above (*see, supra,* at p. 8), applicable state law may "open[] the door for

9   extrinsic evidence about what each party intended when it entered the contract."  *Avritt v.*

10  *Reliastar Life Ins. Co.,* 615 F.3d 1023, 1030 (8th Cir. 2010).  In some states, evidence of oral

11  agreements regarding time of performance may be admissible.[29]  When permitted by state law,

12  both parties would be entitled to submit individual evidence of borrowers' intent and what they

13  understood about when the modifications should be booked.  "Thus, [Nationstar's] liability to the

14  entire class for breach of contract cannot be established with common evidence."  *See Avritt*, 615

15  F.3d at 1030.  Rather, individual issues governing interpretation of borrowers' contracts will

16  predominate.  *See id.*; *Rapp*, 2014 WL 3846032, at *3-4; *Gustafson*, 294 F.R.D. at 543-45.[30]

17  **C.      Individual Factual Questions Predominate on the Implied Covenant Claim**

18         The same problems that plague proof of the express contract claim also apply to the

19  implied covenant claim.  *See In re Citimortgage, Inc. Home Affordable Modification Program (-*

20  *HAMP-) Litig.*, 2013 WL 8844095, at *6.

21         Breach of the implied covenant requires proof of the contracting parties' "reasonable

22  expectations," which "must be determined on a case by case basis."  *Careau & Co. v. Sec. Pac.*

23  _____

24  [29] *See, e.g., McCreary v. Mercury Lumber Distributors*, 124 Cal.App.2d 477, 484-85 (1954); *Sky*

25  *Chefs v. Pryor*, 38 Tenn. App. 443, 447-48, 276 S.W.2d 485, 487 (1954); *Greenberg v. Koegler*, 59 Pa. D. & C. 31, 33-34 (Com. Pl. 1947).

26  [30] For this reason, Burton's assertion that breach of a "form contract" presents a common issue is

27  misplaced.  None of the cases Burton cites involved factual questions that could affect the contract's meaning, let alone the application of 50 states' different laws.  *See* Dkt. no. 69 at 20.

28

1    *Bus. Credit*, 222 Cal.App.3d 1371, 1395 (1990).  Under some states' laws, the trier of fact would

2    "need to examine the state of mind of each borrower, including awareness, expectations, and

3    conduct." *Kunzelmann*, 2013 WL 139913, at *9-10.  Proof of such elements would require

4    individual evidence regarding borrowers' subjective expectations about when the modifications

5    would be booked or whether Nationstar had discretion to book them after signing.

6    **D.    The Required Showing of Reliance Defeats Predominance
       on Plaintiffs' Fraud and Promissory Estoppel Claims**

7

8            Burton's claims for fraud and promissory estoppel are also ill-suited for class certification

     because the required showing of reliance is inherently individual.

9

10           Courts have repeatedly held that " 'a fraud class action cannot be certified when

11   individualized reliance will be an issue.'  This is so because cases that involve individual reliance

     fail the predominance test."[31]  Reliance must be proven, not presumed. *Mirkin v. Wasserman*, 5

12   Cal.4th 1082, 1093 (1993).  The same individualized showing of reliance has also repeatedly

13   barred attempts to certify promissory estoppel claims.[32]

14

15           This case is no different.  Burton alleges that had the putative class members known their

16   modifications might be booked a few days after countersigning, "they would've engaged in other

     efforts to save their homes and/or bring their mortgages out of default, such as refinancing their

17   mortgages, performing 'efficient breaches' by refraining from making additional payments on a

18   mortgage that was going to be put in foreclosure, declaring bankruptcy, or taking other alternatives

19   …" to avoid foreclosure.  SAC, ¶ 73, *see also id.*, ¶¶ 66-69.

20

21           Assuming there is any proof of this allegation, it could only be established by individual

22   evidence.  Each borrower would be required to testify whether he or she would have taken any

23   _____

     [31] *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir.
24   2003) (citation omitted); *accord Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 942 (9th Cir.
     2009); *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666-67 (9th Cir. 2004); *Gunnells v.*
25   *Healthplan Servs., Inc.*, 348 F.3d 417, 434-35 (4th Cir. 2003); *Martin v. Dahlberg, Inc.*, 156
     F.R.D. 207, 217 (N.D. Cal. 1994).

26   [32] *See, e.g., Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998); *Jensen v. Sipco,*
27   *Inc.*, 38 F.3d 945, 953 (8th Cir. 1994); *Yarger*, F.R.D. at 328; *Rowell v. Voortman Cookies, Ltd.*,
     02 C 0681, 2005 WL 1026715, at *2 (N.D. Ill. Apr. 27, 2005).

28

1  different action had he or she known that the modification would be booked shortly after it was

2  signed.  Moreover, "[i]ndividual representations made by [Nationstar] to individual plaintiffs are

3  critically important in determining whether, under the state law of each proposed class, for

4  example, reliance was reasonable, whether a reasonable consumer would be likely to be deceived,

5  and whether a promise was clear."  *In re Citimortgage, Inc. Home Affordable Modification*

6  *Program (-HAMP-) Litig.*, 2013 WL 8844095, at *6.

7        Burton, for example, alleges that he did not pursue other alternatives to foreclosure

8  because Nationstar orally represented that his modification was just waiting to be booked.  *See*

9  SAC, ¶¶ 30-32; Dkt. no. 69, at 3.  Proof of other customers' conversations with Nationstar and

10  how they relied, if at all, could only be established by individual evidence.

11        Also, to show reliance, it is not enough that class members may have been able to explore

12  other loss mitigation options in lieu of experiencing a "delay" in the abstract.  A borrower must

13  prove that alternative would have been "successful" in avoiding foreclosure.  *See Graybill v. Wells*

14  *Fargo Bank, N.A.*, C 12-05802 LB, 2013 WL 978245, at *15-16 (N.D. Cal. Mar. 12, 2013).  For

15  example, to determine whether a borrower could have refinanced or sought a more favorable

16  modification, each class member would have to show he "had sufficient equity in [his] home and

17  sufficient income to qualify for a replacement loan."  *Rossberg v. Bank of Am., N.A.*, 219

18  Cal.App.4th 1481, 1500 (2013).

19        Burton's case is again instructive.  Contrary to his complaint's allegations, Burton made no

20  attempt to pursue other alternatives to foreclosure because he had no viable options.  *See* Kemp

21  Decl., Ex. A [76:21-77:7, 86:25-87:21, 182:20-185:1].  Burton had "no cash reserves or retirement

22  [account]," all of his credit cards were "maxed out," and he otherwise had "no credit available to

23  him."  *Id.*, Ex. A, [72:5-73:8, 74:23-75:12, 76:11-20, Ex. 10].  Determining whether other

24  borrowers, unlike Burton, had realistic alternatives to foreclosure would require individualized

25  scrutiny of their finances and other factors affecting their ability to pursue such alternatives.

26  **E.**    **Individual Issues Predominate on Nationstar's Affirmative Defenses**

27        "[A] class cannot be certified on the premise that [the defendant] will not be entitled to

28  litigate its … defenses to individual claims."  *Dukes*, 131 S. Ct. at 2561.  It is plaintiff's burden to

1    prove that affirmative defenses can be resolved through class-wide proof.  *See, e.g.*, *Thorn v.*

2    *Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321-24 (4th Cir. 2006); *Jamison v. First Credit Servs.,*

3    *Inc.,* 12 C 4415, 2013 WL 3872171, at *6 (N.D. Ill. July 29, 2013); *Kunzelmann*, 2013 WL

4    139913, at *11.  Burton has not met his burden; he does not even discuss affirmative defenses,

5    much less show how they may be resolved by common, class-wide proof.

6            **Waiver, estoppel, consent, ratification.**  Putative class members may have waived any

7    claims against Nationstar related to a delay in booking by accepting the loan modification and

8    making payments on the modified loan.  *See, e.g., Oakland Raiders v. Oakland-Alameda County*

9    *Coliseum, Inc.*, 144 Cal.App.4th 1175, 1185 (2006); *Citron v. Wachovia Mortgage Corp.*, 922

10   F. Supp. 2d 1309, 1321-22 (M.D. Fla. 2013).  Having accepted the benefits of the loan

11   modifications, such persons may have consented to or ratified its terms and may thus be estopped

12   from pursuing any claim arising out of a supposed delay in the modification's booking.

13          **Statutes of Limitation.**  Many putative class members may have their claims barred by the

14   applicable statute of limitations.  For example, Burton's fraud claim is barred by California's

15   three-year statute of limitations since he believed Nationstar would not modify his loan in

16   December 2009 or January 2010 (*see* SAC, ¶ 33; Dkt. no. 9, at 10, 13; Kemp Decl., Ex. A [140:1-

17   141:21]), but did not file suit until March 2013, more than three years later.  Cal. Code Civ. Proc.,

18   § 338(d).  When any other putative class members discovered their claims and whether those

19   claims are subject to equitable tolling under applicable state law is an individual inquiry.  *See*

20   *Thorn*, 445 F.3d at 321-23; *Rapp*, 2014 WL 3846032, at *4.

21          **Mitigation.**  Whether a borrower mitigated his damages (if any) by pursuing other

22   alternatives to foreclosure (and if so, how quickly) present individual issues that cannot be

23   resolved in a single mass trial.  *See Mazur v. eBay, Inc.*, 257 F.R.D. 563, 572 (N.D. Cal. 2009).

24                    **VI.  BURTON HAS NOT SHOWN COMMON PROOF OF DAMAGES**

25          As the United States Supreme Court reemphasized last year, plaintiffs seeking class

26   certification must "establish[]that damages are capable of measurement on a classwide basis…"

27   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013).  A court cannot rely on a party's mere

28   assurances that damages are capable of being measured classwide.  *See id.* at 1434; *Astiana v. Ben*

1   & *Jerry's Homemade, Inc*., C 10-4387 PJH, 2014 WL 60097, at *12-13 (N.D. Cal. Jan. 7, 2014);

2   *In re Med. Waste Servs. Antitrust Litig*., No. 2:03MD1546 DAK, 2006 WL 538927, at *8 (D. Utah

3   Mar. 3, 2006).  Otherwise, "at the class-certification stage *any* method of measurement [would be]

4   acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may

5   be.  Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity."

6   *Comcast*, 133 S.Ct. at 1433.

7        Burton again offers only assurances, not evidence that would suffice to meet his burden on

8   the issue.  Burton concedes that the "[t]he damages suffered in this case are indeed likely to differ

9   depending on certain factors …."  *See* Dkt. no. 69, at 19, n. 13.  Yet, Burton does not even identify

10  what records he would use to prove damages or propose any model.  Instead, he asks that the

11  Court to bifurcate damages from liability and grant him additional time to retain an expert to

12  formulate a damage theory after a class certified.  *See* Dkt no. 69, at 20, 24.  This does not suffice.

13  Burton must make his showing now, not later.  *Comcast*, 133 S.Ct. at 1433

14       Nor can Burton fall back on "sampling."  *See* Dkt. no. 69, at 20.  The Supreme Court

15  disapproved of "trial by formula" in class actions in *Dukes*, 131 S. Ct. at 2561.  A court may no

16  longer employ statistical sampling to prove damages where, as here, damages are inherently

17  individual.[33]  Burton's cases all predate *Dukes* and so are inapposite.  *See* Dkt. no. 69 at 20.

18       Even were sampling permissible, Burton does not explain how sampling would allow him

19  to prove damages on a classwide basis.  Most of the damage theories Burton briefly alludes to are

20  invalid on their face.  *See* Dkt. no. 69, at 5.  No class member paid any "unlawful" late fees as a

21  result of the alleged delay in booking since all such fees were waived as soon as the modifications

22  were booked.  *See* Johnson Decl., ¶ 9.

23       Nor did any class members suffer any "delayed incentive payment accrual" since

24  Nationstar booked all modifications retroactive to the "modification effective date."  *See id.*, ¶ 8.

25  Burton, himself, concedes that under applicable HAMP guidelines the "Modification Effective

26  _____

27  [33] *See, e.g., Stone v. Advance Am.*, 278 F.R.D. 562, 566 n. 1 (S.D. Cal. 2011); *Cruz v. Dollar Tree
    Stores, Inc*., 07-2050 SC, 2011 WL 2682967, at *6 (N.D. Cal. July 8, 2011).

28

1   Date is used to determine when the servicer's obligations are triggered and the timing for incentive

2   payments." *See* Dkt. no. 69, at 3. So, the date the modification is actually booked has no bearing

3   on the receipt of incentive payments.

4           The only other damage type Burton proposes, credit reporting damage, cannot be proven

5   by sampling either. Nationstar generally does not maintain current copies of borrowers' credit

6   reports, let alone copies of any credit denials. *See* Johnson Decl., ¶ 14. Thus, to establish damage

7   from any credit reporting, all class members would have to submit individual evidence showing

8   Nationstar reported inaccurate information on their credit reports, that they suffered a credit denial

9   during the two to three day interlude between signing and booking, "and the individual

10  consumers' injuries were caused by [Nationstar's reporting] of the inaccuracies." *Harper v. Trans*

11  *Union, LLC*, CIV.A. 04-3510, 2006 WL 3762035, *8 (E.D. Pa. Dec. 20, 2006). Proving causation

12  would be particularly difficult for borrowers who, like Burton, have other negative remarks on

13  their credit reports. Kemp Decl., Ex. A [195:12-196:9, Ex. 31]. For that reason, courts have

14  repeatedly denied certification in similar cases seeking damage arising out of credit reporting.[34]

15          Moreover, some putative class members have defaulted on their modified loans and owe

16  Nationstar for unpaid amounts, which "greatly increase[s] the difficulty of determining a

17  classwide measure of damages." *In re Citimortgage, Inc. Home Affordable Modification Program*

18  *(-HAMP-) Litig.*, 2013 WL 8844095, at *6. Determining which borrowers owe what and whether

19  Nationstar is entitled to a set-off for any damages awarded are individual inquiries inappropriate

20  for class-wide treatment. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 438 (4th Cir.

21  2003). Burton is silent on this point as well.

## VII. BURTON HAS NOT SHOWN A CLASS EXISTS

### A.    The Class Is Not Administratively Ascertainable

24          "It is axiomatic that for a class action to be certified a 'class' must exist." *Simer v. Rios*,

---

[34] *See Gomez v. Kroll Factual Data, Inc.*, No. 13-CV-0445-WJM-KMT, 2014 WL 1456530, at *3-4 (D. Colo. Apr. 14, 2014); *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 703 (N.D. Ga. 2012); *Owner-Operator Indep. Drivers Ass'n, Inc. v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1194 (10th Cir. 2008); *Anderson v. Capital One Bank*, 224 F.R.D. 444, 452 (W.D. Wis. 2004).

661 F.2d 655, 669 (7th Cir. 1981).  "The method of determining whether someone is in the class must be 'administratively feasible.'  A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership."  *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (citations omitted).

Burton's proposed class is not ascertainable within reasonable bounds of time and expense. Nationstar does not maintain any electronic records for HAMP modifications booked during the proposed class period that are searchable for both the dates of countersigning and booking.  *See* Johnson Decl., ¶¶ 30-31.[35]  To identify such persons, Nationstar would at a minimum have to individually review the loan files of over 2,500 customers who were sent a permanent modification between 2009 and January 2010.  *Id.*, ¶¶ 35-38.[36]  The inquiry would be even more burdensome if Burton proposes a different endpoint.  *See* Dkt. no. 69, at 11, n. 9.  The class is thus not ascertainable.  *See, e.g., Haskins v. First Am. Title Ins. Co.*, CIV. 10-5044 RMB/JS, 2014 WL 294654, at *8-14 (D. N.J. Jan. 27, 2014) (file-by-file review rendered class unascertainable).

**B.    The Class Definition Is Overbroad**

"[N]o class may be certified that contains members lacking Article III standing."  *Mazza*, 666 F.3d at 594 (citations omitted).  A class is overbroad and should not be certified if it contains

---

[35] Burton's assertion to the contrary is false.  *See* Dkt. no. 69, at *7; Woodrow Decl., ¶ 10.  The HAMP report Burton refers to contains the countersigning date, but not the booking date.  There is no single electronic system containing searchable fields for *all three* dates relevant to Burton's class definition prior to May 2011.  More fundamentally, Burton's counsel's characterization of documents not submitted in evidence is neither accurate nor admissible.  It is hearsay, lacks foundation, and violates the Best Evidence Rule.  *See* Fed. R. Evid. 802, 602, 1001-1008.  Indeed, Burton's repeated reliance on statements made by or to either party's counsel is inappropriate. *See, e.g.,* Woodrow Decl., ¶¶ 4, 7-10.  Statements offered by counsel are not evidence.  *See Singh v. I.N.S.*, 213 F.3d 1050, 1054 n. 8 (9th Cir. 2000).

[36] Unable to identify any realistic means for identifying class members, Burton suggests he will ask for an adverse inference that a spreadsheet previously maintained by Nationstar employee Clay Kellet regarding booked modifications contained the date they were countersigned.  *See* Dkt. no. 69 at 8, n. 8.  Burton ignores, however, that Kellett testified that the spreadsheet did not track when modifications were signed and that he only tracked booking.  *See* Kemp Decl., Ex. B [43:2-5].  Burton also has not and cannot establish that the spreadsheet was lost after the litigation was filed or despite reasonable steps having been taken to preserve relevant evidence, so no adverse inference would be warranted in any event.

a number of persons who suffered no injury.

> Although federal courts "do not require that each member of a class submit evidence of personal standing," a class cannot be certified if it contains members who lack standing. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006). A class "must therefore be defined in such a way that anyone within it would have standing." *Id.* at 264. Or, to put it another way, a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves.

*Halvorson v. Auto-Owners Ins. Co.,* 718 F.3d 773, 779 (8th Cir. 2013).

Burton's proposed class would consist primarily, if not entirely, of persons who lack standing. There are no other borrowers who, like Burton, received a countersigned modification but whose modification was not ultimately booked. *See* Johnson Decl., ¶¶ 29-34. Everyone else received a HAMP modification. They avoided foreclosure. Their homes were saved.

Burton adduces no evidence showing there are *any* other persons whose modifications were booked "weeks or months" after countersigning. *See* Dkt. no. 69, at 1.[37] HAMP modifications were generally signed and booked within two to three days of delivery. *See* Kemp Decl., Ex. B [53:10-54-21, 101:14-102:12, 102:20-103:19, 111:17-113:15]; Johnson Decl., ¶ 11. As Burton, himself, volunteers (*see* Dkt. no. 69 at 2), this is far quicker than the turnaround required by current HAMP guidelines, which mandate only that modifications be countersigned within 30 days of receipt.[38] And since Nationstar booked the modifications retroactive to the agreement's effective date regardless of when they were physically booked, class members suffered no harm stemming from any "delay" in booking. The class is thus fatally overbroad.[39]

---

[37] Burton devotes much of his brief to blaming Nationstar or its counsel for his inability to meet his burden or criticizing this Court's order denying him additional time to conduct discovery. Needless to say, Nationstar disagrees with Burton's account of the case's procedural history. Burton had months to conduct class discovery, but was unable to develop any evidence showing this case warrants class treatment. In any event, that dispute has no bearing on this motion as Judge O'Neill has since denied Burton's motion for reconsideration (*see* Dkt. no. 71), thus rendering Burton's argument moot.

[38] https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_44.pdf.

[39] *See, e.g., Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006); *Tietsworth v. Sears, Roebuck & Co.*, 5:09-CV-00288-JF HRL, 2012 WL 1595112, at *14-15 (N.D. Cal. May 4, 2012); *Mazur*, 257 F.R.D. at 567-68; *Mateo v. M/S Kiso*, 805 F. Supp. 761, 773 (N.D. Cal. 1991).

## VIII.  BURTON IS AN ATYPICAL REPRESENTATIVE

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' "  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted).  Absent typicality, "[a] named plaintiff who proved his own claim would not necessarily have proved anyone else's claim."  *Sprague*, 133 F.3d at 399.

Burton's claim is unique.  Burton's claim is not that there was a delay between the date his loan modification was countersigned and the date it was booked, but rather that Nationstar never booked the modification at all.  No other putative class member has that claim.  Thus, Burton's unusual "experiences cannot be typical of all of the myriad potential factual scenarios relating to the formation and alleged breach of the loan modification agreements of the entire class."  *Campusano*, 2013 WL 2302676, at *8.  Certification should be denied for that reason.[40]

## IX.  A CLASS ACTION WOULD NOT BE SUPERIOR

Burton also fails to show a class action would be superior to other alternatives.  "[I]ncluded in the superiority analysis is whether the proposed class action would be manageable.  'Courts are "reluctant to permit [class] action[s] to proceed" where there are "formidable ... difficulties of distributing any ultimate recovery to the class members," because such actions "are not likely to benefit anyone but the lawyers who bring them." ' "  *Algarin v. Maybelline, LLC*, 12CV3000 AJB DHB, 2014 WL 1883772, at *14 (S.D. Cal. May 12, 2014) (citations omitted).

That is the case here.  Burton seeks to certify a nationwide class with no plan as to how application of different states' laws would be managed at trial or how damages would be calculated and distributed to class members.  Neither the Court nor putative class members would benefit from certification of such a class.  *See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 2013 WL 4759649, at *14; *In re Citimortgage, Inc. Home*

---

[40] *See, e.g., State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *Sprague*, 133 F.3d at 399; *Oshana*, 472 F.3d at 514; *Mazur*, 257 F.R.D. at 568-69.

*Affordable Modification Program (-HAMP-) Litig.*, 2013 WL 8844095, at *7.

Superiority is also lacking as adequate individual remedies exist. *See Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234-35 (9th Cir. 1996). "[A]s the many mortgage-related cases in the federal courts attest, individual plaintiffs are normally well-motivated to bring any claims they might have in order to save their homes." *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 2013 WL 4759649, at *14.

Any persons actually injured by Nationstar's former booking procedure, assuming there are any, can file an individual action. There is no reason to incur the substantial expense and delay inherent in class litigation when aggrieved persons are able and willing to file their own suits.

## X.  NO ISSUE CLASS SHOULD BE CERTIFIED

In a final attempt to achieve certification, Burton asks the Court to certify an issue class under Fed. R. Civ. P. 23(c)(4)(A) solely on the question of breach. *See* Dkt. no 69 at 22-24.

"Rule 23(c)(4)(A) does not permit a court to bypass the requirements of Rule 23(b)(3) entirely simply by defining the issues for certification narrowly enough."[41]  If "individual issues … affect liability," certification of an issue class is improper. *Id.*  The Rule 23(c)(4) inquiry also overlaps with the superiority criterion.  Under Ninth Circuit precedent, no issue class may be certified unless the court finds that "adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency." *Valentino*, 97 F.3d at 1229, 1234-35.[42]

---

[41] *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 250 (C.D. Cal. 2006) *aff'd in part, rev'd in part*, 275 F. App'x 672 (9th Cir. 2008) *opinion vacated on reh'g*, 464 F. App'x 636 (9th Cir. 2011) *and aff'd*, 464 F. App'x 636 (9th Cir. 2011)

[42] Burton's reliance on three Seventh Circuit cases—*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 490 (7th Cir. 2012); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911-12 (7th Cir. 2003)—is misplaced.  *See* Dkt. no. 69, at 22-23.  None of those cases involved a choice-of-law provision requiring the application of all 50 states' laws, a distinction the Seventh Circuit made expressly in *Mejdrech*, or the myriad individual factual issues present here.  Also, to the extent Seventh Circuit precedent is more lenient in permitting certification under Rule 23(c)(4) even where multiple issues remain to be litigated, it is inconsistent with Ninth Circuit precedent requiring the Court to evaluate whether an issue class is actually superior.  *See Valentino*, 97 F.3d at 1229.

1       Certification of an issue class would not promote judicial economy or efficiency.  Breach

2   cannot be proven in this case with common evidence or by applying uniform law (*see, supra,* at

3   pp. 7-9 & 14-16), so Burton cannot escape the manageability problems that plague his proposed

4   Fed. R. Civ. P. 23(b)(3) class.  *See Valentino*, 97 F.3d at 1234-35; *Gates v. Rohm & Haas Co.*, 655

5   F.3d 255, 272-74 (3d Cir. 2011).

6       Nor is a mere declaration of "breach" superior to other alternatives.  Even if some putative

7   class members could show Nationstar breached their contracts, this would leave for resolution in a

8   series of individual lawsuits across the country the other elements of borrowers' claims as well as

9   Nationstar's defenses.  Any aggrieved persons are already motivated to file their own suits.  *See,*

10  *supra,* at p. 24.  So, certifying a "breach only" class would be no better than allowing borrowers to

11  file individual actions in the first place.  *See, e.g., McKenna v. First Horizon Home Loan Corp.*,

12  475 F.3d 418, 427 (1st Cir. 2007) (reversing certification of "liability only" class); *Franco v.*

13  *Connecticut Gen. Life Ins. Co.*, 2014 WL 1415949, at *15-16 (D.N.J. April 14, 2014).

14      Moreover, Burton's proposed issue class creates the risk of a Seventh Amendment

15  violation since a second jury would have to reexamine issues already decided by the first jury.

16  Application of state-law defenses such as "first material breach" (*see, supra,* at pp. 12-13) in the

17  second wave of trials would require the second set of juries to revisit the first jury's finding of

18  whether there was a breach and, if so, whether it was material.  Burton's proposed issue class is

19  unworkable for this reason, too.  *See Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d at 1302-1304

20  (reversing certification of issue class); *Castano*, 84 F.3d at 750-51 (same).

## XI.  CONCLUSION

22      For the reasons stated, Burton's motion should be denied in its entirety.

23  DATED:  August 25, 2014        SEVERSON & WERSON
                     A Professional Corporation

25                       By:      */s/ Erik Kemp*
                                  Erik Kemp

26                       Attorneys for Defendant NATIONSTAR MORTGAGE
27                       LLC

28