Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Steven L. Woodrow*
swoodrow@edelson.com
Megan Lindsey*
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff* DENNIS BURTON

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DENNIS BURTON, on behalf of himself
and all others similarly situated,

               Plaintiff,

v.

NATIONSTAR MORTGAGE, LLC, a
Delaware limited liability company,

               Defendant.

No: 1:13-cv-00307-LJO-JLT

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR CLASS
CERTIFICATION**

Date: October 6, 2014
Time: 9:00 a.m.
Crtrm.: Bakersfield, 510 19th Street

## I.     INTRODUCTION

To hear Nationstar tell it**,** this Court should ignore the fact that this case presents a single question upon which each of the Class member's central claims either succeed or fail (the answer to which is subject to common proof and the same for everyone): whether Nationstar breached every Permanent Modification Agreement ("PMA") it processed under its sign-then-book procedure. According to Nationstar, certification is untenable for a laundry list of supposed reasons, among them that differences in state laws defeat predominance, that individual questions exist as to Nationstar's breaches, class members' reliance, and Nationstar's affirmative defenses, and that ascertaining class membership is too time consuming. Nationstar also accuses Burton of being an atypical class representative, claims that a class action isn't superior, and rejects the notion of a core-issues class under Rule 23(c)(4) out of hand.

Fortunately for the thousands of HAMP borrowers wrongfully subjected to Nationstar's sign-then-book procedure, Nationstar is incorrect. The proposed Class is certifiable, any differences in state laws may be managed by creating subclasses, and Nationstar exaggerates any supposed individual issues. Indeed, if Nationstar had its way, no HAMP class action could ever be certified, a result that lets Nationstar—which breached its PMAs as a matter of course until it switched to a book-then-sign procedure—to escape liability entirely.

The Class should be certified here.

## II.    ARGUMENT

### A.     Any Variations In State Law Can Be Readily Managed.

Nationstar first argues that differences in state laws preclude certification on Plaintiff's state-law claims. (Opp. 5-12.) According to Nationstar, such variations defeat predominance and render a class proceeding unmanageable. (*Id.*) Nationstar is incorrect.

As a preliminary matter, Nationstar completely ignores that differences in state law can be appropriately managed in a class action when—as here—the core facts are common to the class. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("Variations in state law do not necessarily preclude a 23(b)(3) action . . . "). And to the extent

state laws do vary, subclasses may be crafted. *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000) (court may use subclasses "to accommodate the variations" in state laws); *In re Telectronics Pacing Sys., Inc.,* 172 F.R.D. 271, 291–92 (S.D. Ohio 1997) (same).

As explained below, the supposed variations in state contract laws that Nationstar identifies are both inaccurate and off-point. Every Class member's claims here turns on whether Nationstar breached his or her PMA by applying its sign-then-book process. Likewise, any variations in implied covenant, promissory estoppel, and fraud claims can be managed by certifying subclasses as to only those states with laws substantially similar to California.

### 1.      Breach of contract law is consistent across all states.

Nationstar first claims Plaintiff cannot demonstrate predominance for breach of contract because supposedly "state laws vary materially even as to basic contract law," specifically with respect to performance, material breach, and extrinsic evidence. (Opp. 7-8.) None of these claimed variations overcome the common evidence available to prove Nationstar's breaches.

"[S]everal courts have recognized that the law relating to the element of breach does not vary greatly from state to state." *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529 (N.D. Cal. 2010). As such, "[c]ourts routinely certify class actions involving breaches of form contracts." *In re Med. Capital Sec. Litig.*, No. SAML 10-2145 DOC, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare,* 601 F.3d 1159, 1171 (11th Cir. 2010)) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment")[1]

The PMA is indisputably a form contract. (Opp. 3.) Each PMA expressly states that, "Loan Documents will **automatically** be modified on . . . the Modification Effective Date." (PMA, Ex. B to Mot. Class Cert., Dkt. 69, ¶ 3) (emphasis added.) This provision requires that loans be modified by the later of the Modification Effective Date or the date when Nationstar countersigns the PMA.

---

[1] *See Rapp v. Green Tree Servicing, LLC,* No. 12-CV-2496, 2014 WL 3846032, at *2 (D. Minn. Aug. 5, 2014) ("the elements of breach of contract do not differ much from state to state"); *Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.,* 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (certification is typically appropriate in cases involving form contracts); *Winkler v. DTE, Inc.,* 205 F.R.D. 235, 243 (D. Ariz. 2001) (rejecting argument that individual issues would predominate in breach of contract claim where form contracts used).

1    (Order on Mot. to Dism., Dkt. 14, 10.) But through its uniform application of the sign-then-book

2    process, Nationstar breached every PMA. As such, nationwide certification is available.

3         Nationstar's first attack is that state laws vary with respect to whether Class members need

4    to show they performed under their contracts. (Opp. 7.) This is irrelevant. Putative Class members

5    were not required to make modified payments until **after** Nationstar caused their loan to be

6    modified (i.e. after Nationstar breached). Also, borrowers uniformly demonstrated their

7    willingness to perform by signing the PMA and thus promising to make payments. (PMA § 3.)

8         Second, Nationstar's arguments regarding materiality are baseless. No state's law actually

9    requires a material breach to state a claim for damages; materiality is only an issue when

10   determining if the non-breaching party has a right to rescind the agreement. In this respect it is not

11   surprising that the *only* state law Nationstar points to as an example—Florida (Opp. 7)—doesn't

12   actually require that all breach of contract actions involve *material* breaches.[2]

13        Equally meritless are Nationstar's attacks regarding extrinsic evidence. (*See* Opp. 8.) As

14   explained above, Nationstar breached form contract language, and no ambiguity exists that would

15   require parol evidence. The phrase "Documents will automatically be modified" as used in the

16   PMA is clear and should be construed against Nationstar, as the drafter.[3] (PMA ¶ 3.)

17        As such, the Court should reject Nationstar's baseless attacks.

18              **2.    Thirteen states unquestionably recognize breach of the implied
                        covenant causes of action that are substantially similar to California.**

19

20   _____
[2]      Nationstar's reliance on *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla.
21   Dist. Ct. App. 2003) is misplaced. *Gumberg* merely quoted from *Abbott Lab., Inc. v. Gen. Elec.
     Capital*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000), which included "material breach" as an
22   element. It appears the *Abbott* court simply inserted the word "material" before breach without
     much thought or purpose. When reciting the elements, *Abbott* cites *Mettler, Inc. v. Ellen Tracy,*
23   *Inc.,* 648 So. 2d 253, 255 (Fla. Dist. Ct. App. 1994) and *Abruzzo v. Haller*, 603 So.2d 1338 (Fla.
     Dist. Ct. App. 1992)—but neither case ever mentioned requiring a material breach. 765 So. 2d at
24   740. Burton has been unable to locate any decision where a breach of contract case was dismissed
     or failed on account of the breach not being "material," and Nationstar hasn't pointed to any.
25        Likewise, Nationstar's assertion that states differ as to whether materiality is an issue for a
     jury or for the Court is a red herring. Both *Haiman v. Fed. Ins. Co.*, 798 So.2d 811, 811 (Fla. Dist.
26   Ct. App. 2001) and *Wechsler v. Hunt Health Sys.*, Ltd., 186 F. Supp. 2d 402, 413 (S.D.N.Y. 2004)
     are off-point. *Haiman* addresses the "materiality" of a false statement, and *Wechsler* discussed
27   materiality in the context of the non-breaching party's right to terminate—not whether damages
     could be recovered. 186 F. Supp. 2d at 413. No Class member seeks to terminate the PMA here.
28   [3]     "[A]mbiguous language in a contract should be strictly construed against the drafter." *Cent.
     Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1132 (D. Ariz. 1998).

Nationstar next asserts that state laws regarding breach of the implied covenant differ so as to defeat predominance, claiming that certain states do not recognize the cause of action, others require a special relationship, and others have differing requirements regarding intent, the measure of good faith, and whether the claim only applies with respect to a party's exercise of discretion. (Opp. 8-9.) Nationstar's arguments fall flat.

In California and at least twelve[4] other states, the duty of good faith is implied in every contract. *See* Restatement (2d) of Contracts § 205 (1981). These states each recognize the claim as a separate cause of action and require the same elements: (1) the existence of a valid contract, (2) that defendant unreasonably interfered with plaintiff's right to receive benefits under the contract, and (3) damages. (*See* Implied Covenant Chart, Ex. A to the Decl. of Megan Lindsey, attached as Ex. 1.)[5] Likewise, these states each permit causes of action when a defendant acts in a way that bears adversely on the party's reasonably-expected benefit of the bargain. *Id.*

Given the uniformity in these thirteen states, the Court should certify an implied covenant subclass covering these states.

### 3.    This Court should certify a six-state fraud subclass.

Nationstar next argues that state laws differ with respect to the elements of a fraud claim, the burden of proof, scienter, and reliance. (Opp. 9-10.) But at least five states (Alaska, Delaware, Indiana, Montana, and North Carolina) are like California. Each requires that the plaintiff establish fraud by a preponderance of the evidence,[6] and that the false statement be made either knowingly or with reckless indifference to the truth.[7] And the elements do not vary in any unmanageable way.

---

[4]    The twelve states are Arizona, Connecticut, Delaware, Kansas, Missouri, Nevada, New Hampshire, New Jersey, North Carolina, Oregon, Vermont, and Wisconsin.

[5]    Although Nationstar claims providing these state classes via reply comes too late (Opp. 6), Plaintiff had no way of knowing that Nationstar contested certification of a nationwide class on such grounds. While Nationstar has repeatedly asserted that certification is improper due to ascertainability issues, it has never—until its opposition—challenged the propriety of a nationwide class due to variances in state laws (despite raising twenty affirmative defenses). Further, Plaintiff does not object to Nationstar's request, if any, to file a sur-reply on this issue.

[6]    *Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1171 (Alaska 1988); *Rosener v. Sears, Roebuck & Co.*, 168 Cal. Rptr. 237, 246 (Cal. Ct. App. 1980); *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 389 (D. Del. 2005); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 976-77 (N.D. Ind. 1988); *Pare v. Morrison*, 241 Mont. 218, 221 (1990); Hudgins v. Wagoner, 694 S.E.2d 436, 446-47 (N.C. 2010).

[7]    Alaska Civ. Pattern Jury Instructs. 17.02; *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.

(*See* Fraud Chart, Ex. B to the Lindsey Decl.); *see also Ge Dandong*, 2013 WL 5658790, at *8 (each element need not be susceptible to class-wide proof; common issues must predominate).

Accordingly, Plaintiff has established predominance as to these six states.

### 4. This Court may certify a four-state promissory estoppel class.

Nationstar next claims state laws vary with respect to promissory estoppel. (Opp. 10-11.) Burton has identified four states (Ohio, California, New York, and Rhode Island) that require nearly identical elements, including a clear promise and reasonable reliance (*see* Promissory Estoppel Chart, Ex. C to the Lindsey Decl.). None of these states require the promisor to "intend" reliance, nor do they require the promisor to "expect" that the promisee will rely. (*See* Opp. 11.) While one state—New York—requires "unconscionable injury,"[8] no state requires a showing that promissory estoppel is necessary to prevent injustice. (Opp. 11.) In all four states, promissory estoppel is a claim in equity.[9] The sole variation—the type of injury required in New York—is not sufficient to defeat predominance and can readily be managed at trial.

Hence, the Court should certify a promissory estoppel subclass with respect to these states.

### 5. Nationstar's affirmative defenses do not defeat predominance.

Nationstar's claim that differences in state law regarding its affirmative defenses defeat predominance fails. As an initial matter, Nationstar's affirmative defenses are insufficiently pled to be considered. (*See* Answer, Dkt. 46, Aff. Def. Nos. 3, 4, 6); *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 678 (S.D. Fla. 2012) ("insufficiently pled" affirmative defenses do not defeat certification). Here, Nationstar's affirmative defenses are devoid of facts showing a plausible entitlement to relief, and thus fail to support a denial of class certification.

Further, and as addressed above, (*see* Section II(A)(1), *supra*), extrinsic evidence is not relevant. None of the putative Class members could have possibly caused a "first material breach"

---

4th 951, 974 (1997); *DRR, L.L.C. v. Sears, Roebuck & Co.*, 949 F. Supp. 1132, 1137 (D. Del. 1996); *Grace Vill. Health Care Facs., Inc. v. Lancaster Pollard & Co.*, No. 3:11-cv-295, 2012 U.S. Dist. LEXIS 127306, at *8-9 (N.D. Ind. Sep. 7, 2012); *Pfau v. Mortenson*, No. CV-11-72-M, 2012 U.S. Dist. LEXIS 60322, at *15-*16 (D. Mont. Apr. 30, 2012); *Myers & Chapman, Inc.*, v. *Thomas G. Evans, Inc.*, 323 N.C. 559, 568 (1988).

[8]     *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996).
[9]     *US Ecology, Inc. v. State of Cal.*, 129 Cal. App. 4th 887, 904 (2005); *Schwartz v. Miltz*, 77 A.D.3d 723, 725 (N.Y. App. Div. 2010); *Dunn v. Bruzzese*, 874 N.E.2d 1221, 1237 (Ohio 2007); *Karousos v. City of Newport*, CIV. A. NC96-0205, 2001 WL 1685596 (R.I. Dec. 5, 2001).

because—as of the time when Nationstar breached the PMA—the putative Class members were not yet required to make payments on their PMAs. Also, Nationstar's waiver defense is misplaced. Putative Class members had no option but to make the modified payments on their mortgage to avoid foreclosure. And no court could reasonably conclude that a putative class member should have foregone the modification and faced the immediate threat of foreclosure to preserve his or her rights associated with Nationstar's failure to timely book the borrower's PMA. Accordingly, this Court should reject Nationstar's argument that its affirmative defenses defeat predominance.

Burton is thus able to establish predominance both as to a nationwide breach of contract class and for a limited set of subclasses for his remaining common-law claims.

**B.     The Common Issue Of Whether Nationstar Breached The Putative Class Members' PMAs Is Central To Each Of His Claims.**

Nationstar also maintains that proving its breaches is unlikely to drive the resolution of the case—that the claims aren't susceptible to common proof and that individual questions predominate. (Opp. 12-18.) As with its other arguments, these fail as well.

**1.     Burton has shown that common issues predominate.**

First, Nationstar erroneously argues Plaintiff's common issue doesn't predominate. (Opp. 12.) Predominance "focuses on the legal or factual questions that qualify each class member's case as a genuine controversy to determine whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1182 (N.D. Cal. 2013) (quotation omitted.) Predominance is plainly shown here. The central issue in the case—upon which the success or failure of each claim will rest—is whether Nationstar breached its PMAs by implementing the sign-then-book policy. (*See* Mot. 1.)[10]

Nationstar further asserts predominance for breach of contract remains unsatisfied, claiming many putative Class members failed to make payments under their original notes. (Opp. 13.) This is baseless. First, that many borrowers failed to make loan payments on their original

---

[10]     Other common questions that predominate include whether Nationstar promised and falsely represented that loans would automatically be modified by the date they became effective, whether Nationstar intended to induce reliance, and whether the putative Class members reasonably and foreseeably relied. These questions are susceptible to common proof: each centers on whether the sign-then-book process violated the promises and representations in the PMAs.

1  notes is predictable—being in default or imminent risk of default is an eligibility requirement for

2  HAMP. Second, that breach has *nothing* to do with the borrower's performance under the PMA—

3  which was a separate contract. The PMA's very purpose was to resolve issues (such as being in

4  default) that arose when the borrower breached the underlying loan agreement.

5      Nationstar likewise raises hypothetical concerns that borrowers may not have demonstrated

6  eligibility under HAMP (*id.*)—but this is belied by the fact that each putative Class member

7  received a signed modification agreement from Nationstar. As such, their eligibility cannot be

8  questioned. Similarly, Nationstar's claim that some borrowers may have defaulted on their

9  modified loan (*id.*) and thus breached the PMA is also erroneous—any such default would have

10  occurred long after Nationstar breached by failing to timely modify the borrowers' loan.

11      **2.    Nationstar's breaches of contract can be proven with common evidence.**

12      Nationstar's next argument, that its breaches can't be proven with common evidence (*id.*

13  13-14), is also incorrect. As explained above, in using the sign-then-book process, Nationstar

14  breached the PMAs, which require that borrowers' loans be "automatically" modified by the later

15  of the Modification Effective Date or the date when Nationstar signs. (Order 10.) There is no need

16  to look at what the law implies regarding performance (Opp. 14)—the contract explicitly requires

17  'automatic' modification. (PMA ¶ 3.)

18      Relying on *In re Citimortgage, Inc. Home Affordable Modification Program (-HAMP-)*

19  *Litig.*, No. ML 11-2274, 2013 WL 8844095 (C.D. Cal. Oct. 7, 2013), Nationstar asserts that a

20  borrower's conduct (i.e. whether they submitted a complete application) may impact whether

21  Nationstar breached the PMAs. (Opp. 14.) This is incorrect. The *Citimortgage* court addressed

22  stated trial period plans ("TPPs"), rather than PMAs. Stated TPPs require that borrowers submit

23  financial information to confirm HAMP eligibility after entering into the TPP. By contrast,

24  borrowers who receive a signed PMA have already been fully evaluated and deemed eligible for a

25  modification. Similarly, Nationstar's breach cannot turn on when the borrower signed and returned

26  the PMA because, by the time Nationstar breached, it necessarily had signed the PMA. (*See id.*

27  15.) Even where a borrower questioned his own eligibility to receive a modification (*see id.*),

28  Nationstar undoubtedly would have researched such concerns *before* countersigning.

1    Finally, as explained above, there are no significant variations in state law that would

2  impact the legal question of when Nationstar was required to book loan modifications. (*See*

3  Section II(A)(1), *supra*.) In short, the common issue of whether Nationstar breached the PMA by

4  using its now-abandoned sign-then-book process predominates.

5              **3.    Reasonable expectations may be ascertained from common evidence.**

6    Nationstar's assertion that determining every Class member's reasonable expectations for

7  the purpose of the implied covenant claim "would require individual evidence regarding

8  borrower's subjective expectations" (Opp. 16) is also incorrect. Every Class member expected that

9  the loan would become automatically modified (i.e. booked) by the effective date stated in the

10  PMA or the date Nationstar countersigned, whichever was later. At most the PMA gave Nationstar

11  discretion to determine the timing when the loan was booked on the effective date (i.e. for a PMA

12  signed in the morning, Nationstar could modify the loan at that time or later that same day). In no

13  case, however, did any Class member expect that Nationstar could fail to modify by that date.

14    Thus, the HAMP guidelines and the PMA itself will commonly establish the expectations

15  of Class members for their implied covenant claims.[11]

16              **4.    Reliance can also be proven with common evidence.**

17    Nationstar next argues that fraud and promissory estoppel classes can't be certified because

18  "reliance is inherently individual." (Opp. 16.) To the contrary, class treatment of fraud claims is

19  favored where these claims stem from common course of conduct. *In re First Alliance Mortgage*

20  *Co.*, 471 F.3d 977, 990 (9th Cir. 2006). Indeed, the rule in California "and elsewhere is that it is

21  not necessary to show reliance upon false representations by direct evidence. The fact of reliance

22  upon alleged false representations may be inferred from the circumstances attending the

23  transaction which oftentimes afford much stronger and more satisfactory evidence of the

24  inducement which prompted the defrauded party to enter into the contract than his direct testimony

25  to the same effect." *Vasquez v. Superior Court*, 484 P.2d 964, 972 (Cal. 1971) (quotation omitted.)

26

27  [11]    As for Nationstar's untested assertion that all loan modifications were booked retroactive

28  to their modification effect date, that is a common merits issue. (Opp. 22.) And if true, Nationstar
should welcome certification as an opportunity to defeat every claim in a single stroke.

Applied here, the Class members all faced the same representation that their loans would be "automatically" modified by the effective date if they signed the PMA and received a signed copy from Nationstar. At a bare minimum, all Class members took consistent action based on the misrepresentation by signing the PMAs and returning copies to Nationstar. The Class members also refrained from taking or pursing any other options to save their homes based on Nationstar's false representation that their loans would in fact be permanently modified by the effective date.

Accordingly, the Court should find that reliance can be established with common evidence.

> ### 5. Nationstar's affirmative defenses are improperly pled and, in any event, are insufficient to defeat predominance.

Nationstar's assertion that the Class can't be certified because supposedly certification will deprive it of the ability to litigate its defenses to each individual's claims (Opp. 17) also falls apart. Again, Nationstar failed to properly plead its defenses and therefore cannot rely on them. (*See* Section II(A)(5), *supra*.) Further, "[c]ourts have traditionally been reluctant to deny class action status . . . simply because affirmative defenses may be available against individual members." *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) (quotation omitted.) Instead, "where common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses." *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *see Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 924 (3d Cir. 1992) (statute of limitations defense has not prevented certification); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 244 F.R.D. 79, 87 (D. Mass. 2007) (mitigation defense did not preclude class certification). Further, Nationstar's waiver defense isn't a viable defense (*see* Section II(A)(5), *supra*) and may actually present another common issue that *supports* certification. *Smilow*, 323 F.3d 39.

Accordingly, Nationstar's affirmative defenses do not defeat class certification.

## C. Damages are ascertainable and may be severed from the liability phase.

Nationstar's claim that "Burton hasn't shown that damages can be measured on a classwide basis" (Opp. 18) is unfounded. First, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) doesn't stand for the position that litigation can no longer be severed into liabilities and damages phases.

(Opp. 19.) Rather, *Comcast* held that any damages model must be tailored to the liability in the case. *Comcast*, 133 S. Ct. at 1433. Thus, the liability phase can (and perhaps should) be severed from the damages phase to "materially advance [the] litigation" and avoid challenging case management issues. *See Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 380 (E.D. Ark. 2007).

Second, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) doesn't show that sampling can't ever be used to determine classwide damages. (Opp. 19.) Rather, *Dukes* stands for the premise that a formula can't be used to replace the two-step procedure for trying pattern-or-practice cases. *Dukes*, 131 S. Ct. at 2561. Thus, as Plaintiff explained in his opening brief, this Court grant Plaintiff access to sample loan files, from which his expert could model damages. Likewise, whether Nationstar booked loan modifications retroactive to their effective dates or waived late fees are common questions of fact bearing on class member damages. (*See* Opp. 20.) Finally, with regard to harm to credit, borrowers may be able to submit individual proof regarding their historic credit reports, which can be used in conjunction with monthly billing statements to calculate harm to credit. (*Id.*)

Fourth, any set-offs do not create management difficulties—liability can still be established on a class-wide basis. *James D. Hinson Elec. Contracting Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 648 (M.D. Fla. 2011) ("set-off claims will affect only the measure of damages . . . individual determinations of damages do not ordinarily preclude certification . . .").

Accordingly, the Court should find that either damages can be adequately managed or that the damages phase should be severed from the liability phase.

**D.      The Class Definition is Ascertainable and Class Members have Standing.**

Nationstar next claims that the Class cannot be ascertained (Opp. 20) and that the Class definition is overbroad (*id.* 21). With regard to ascertainability, Nationstar admits that the Class members may be ascertained by reviewing three data points (countersigned date, Modification Effective Date, and booking date). (*See* Johnson Decl. ¶¶ 35-38.) The countersigned date is available through LSAMS. (*Id.* ¶ 37.) Likewise, Nationstar was required to begin reporting the Modification Effective Date to the Treasury as of May 2009 and therefore possess, or can obtain, such information. (*See* HAMP Supplemental Directive 09-01, 33, available at: https://www.

1   hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf.) These two dates can be cross

2   referenced to immediately ascertain certain Class members—put simply, if the effective date was

3   *prior to* the signature date, the borrower is necessarily a Class member because Nationstar

4   implemented a uniform "sign-then-book" policy.

5          For those borrowers that remain after cross referencing these dates (if any), a file-by-file

6   review is minimally burdensome, taking at most 5-10 minutes to find all three data points.

7   (Johnson Decl. ¶ 38.) That the identification of class may require a file-by-file review does <u>not</u>

8   defeat certification, especially where, as here, the standard is clearly defined. *See, e.g., Ramirez v.*

9   *Fidelity Nat. Title Ins. Co.*, No. 09-cv-230, Dkt. 78, 16 (Mar. 3, 2011) (certifying class where

10  determining membership may involve file-by-file review, not a "file-by-file trial").

11         Likewise, all Class members have Article III standing because—regardless of the length of

12  their delay or whether Nationstar eventually modified their loans—all experienced some delay in

13  the booking of their modifications. (*See* Opp. 21-22.) As explained above, whether Nationstar

14  booked modifications retroactive to their effective dates, waived fees, and harmed borrowers'

15  credit are common questions of fact that sampling, along with submissions from Class members,

16  can demonstrate are answerable in the Class's favor. (*See* Section II(C), *supra*.)

17         Therefore, Class membership is ascertainable and standing isn't an issue.

18       **E.      Burton is a Typical Class Representative.**

19         Nationstar next argues Burton is an atypical representative. (Opp. 23.) However, beyond

20  claiming Burton suffered greater damages than the other Class members (because he was

21  eventually foreclosed on), Nationstar offers no explanation as to why Burton is supposedly

22  atypical. (*Id.*) Burton is a member of the Class, he was processed under the sign-then-book

23  procedure like all the other Class members, and Nationstar failed to book his loan modification by

24  the effective date. (Mot. 15-16.) He suffered the same legal injuries as everyone else—he didn't

25  get a modification when he should have. (*Id.*) As such, Burton is a typical Class representative.

26       **F.      A Class Action is Both Manageable and Superior.**

27         Nationstar next claims a class action would not be superior because Burton hasn't shown

28  that the case is manageable and because an individual remedy exists. (Opp. 24.) First, Plaintiff has

presented a plan as to how the causes of action could proceed in certain states and readily managed at trial. (*See* Section II(A) *supra*.) Second, Nationstar claims Burton is the only Class member who lost his home, so its assertion that individual remedies exist because borrowers are likely to bring actions to save their homes is disingenuous. (Opp. 24.) As such, a class action is both manageable and the superior method for adjudicating the case. (*See* Mot. 20-22.)

### G.    At a Minimum, an Issues Class Should Be Certified Under Rule 23(c)(4)(A).

Finally, Nationstar claims no core-issues class should be certified because breach cannot be proven with common evidence, a declaration that Nationstar breached PMAs would not advance the litigation, and a second wave of trials might require the examination of the state-law defense of first material breach. (Opp. 24-25.) Such arguments border on the specious.

First, as explained above, Plaintiff's claims can be proven with common evidence. (*See* Section II(A), *supra*.) Second, Nationstar presents no explanation for why a declaration of breach would not substantially advance the litigation. (Opp. 25.) It would negate the need for every class member to prove Nationstar's liability thousands of times over. Finally, there are no Seventh Amendment risks related to the defense of "first material breach" because, as explained above, the Class members weren't required to make payments under the PMA until *after* Nationstar booked the loan modification. (*See* Section II(A)(1), *supra*.)

Accordingly, this Court should, at a minimum, certify an issues class under Rule 23(c)(4).

### III.    CONCLUSION

Nationstar has vigorously sought to defeat certification here precisely because a denial of certification will allow it to continue hurting homeowners. Unlike the broad-based putative HAMP class actions attempted in the Bank of America and Citibank MDLs that involved borrowers at various stages of the process—Stated TPPs, Verified TPPs, un-signed vs. signed-TPPs, signed and un-signed PMAs—in this case every class member made it to the same point in the process: receiving a countersigned PMA from Nationstar—the *last* step needed for modification. Everyone had the same contract, the same rights, and the same expectations, and Nationstar breached with respect to each of them by processing everyone under the sign-then-book procedure.

Dated:  September 8, 2014

Respectfully Submitted,

DENNIS BURTON, individually and on behalf of a Class of similarly situated individuals,

By:   /s/ Steven L. Woodrow
          Steven L. Woodrow

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Steven L. Woodrow*
swoodrow@edelson.com
Megan Lindsey*
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff* DENNIS BURTON

**CERTIFICATE OF SERVICE**

I, Steven L. Woodrow, an attorney, hereby certify that I served *Plaintiff's Reply In Support of Motion for Class Certification* by causing true and accurate copies of such papers to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 8th day of September 2014.

/s/ Steven L. Woodrow