JOHN B. SULLIVAN (State Bar No. 96742)
ERIK KEMP (State Bar No. 246196)
MARY KATE KAMKA (State Bar No. 282911)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
NATIONSTAR MORTGAGE LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BURTON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC, a Delaware limited liability company,<br><br>Defendant. | Case No. 1:13-cv-00307-LJO-JLT<br><br>**SUR-REPLY OF NATIONSTAR MORTGAGE LLC IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date:   October 6, 2014<br>Time:   9:00 a.m.<br>Crtrm.: Bakersfield Ctrm.<br>Judge:  Hon. Jennifer L. Thurston<br><br>Jury Trial Demanded |

## I.  INTRODUCTION

Mindful that sur-replies are disfavored and attempting to minimize the Court's burden, Nationstar limits the arguments below to rebutting only the most significant points Burton improperly raised for the first time in his reply brief.  In so doing, Nationstar does not agree with any of Burton's other arguments or adopt his characterization of the facts.

## II.  BURTON'S LATE STATE-LAW ANALYSIS DOES NOT SUPPORT CERTIFICATION OF A NATIONWIDE CLASS

As anticipated in Nationstar's opening memorandum, Burton improperly attempts to conduct an analysis of state-law variances in his reply.  Burton offers no adequate excuse for his omission, but instead blames Nationstar for supposedly not apprising him of his obligation to analyze state-law variances when seeking nationwide certification of four state-law claims.  *See* Dkt. no. 80, at 4 & n. 6.  The obligation to conduct an analysis of state-law variances in seeking certification of a national class is well-settled and Burton's counsel claim to be experienced with class action procedure.  Burton's accusation suggests his counsel made a significant oversight, at best, or are engaging in gamesmanship, at worst.  The Court should decline to consider Burton's analysis of state-law variances.  *Sweet v. Pfizer*, 232 F.R.D. 360, 370-72 (C.D. Cal. 2005).

If the Court does consider Burton's tardy analysis, he falls far short of showing state-law variances pose no insuperable obstacles to classwide resolution of his four state-law claims.

For example, as shown in Nationstar's opening memorandum, state laws vary on whether a borrower can sue for breach of contract if he is in breach or cannot demonstrate performance.  *See* Dkt. no. 72, at 7.  Other states provide a defense of "first material breach."  *Id.*, at 12.  Burton tacitly concedes state laws differ materially on these issues.  He argues only that the variances are irrelevant because the modification agreement is supposedly a separate contract from the note and security instrument before and after they are modified.  *See* Dkt. no. 80, at 3, 6.

Burton cites no authority for this distinction, because there is none.  In construing a modified agreement, "the unmodified terms of the original agreement are to be applied together with the terms of the new, modifying agreement."  *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir. 1995); Cal. Civ. Code § 1642.  "This is true although two

contracts are made at different times, providing the later is not intended to entirely supersede the first, but only modifies it in certain particulars." *Hawes v. Lux*, 111 Cal.App.21, 24 (1931).

Here, the modification agreement does not supersede the prior note and deed of trust entirely, but instead provides that the original loan documents remain in effect except as expressly modified. *See* Johnson Decl., Ex. 3, ¶ 3. Hence, the modification agreement and original note and deed of trust must be construed as one contract. Burton cannot artificially separate performance on the modification agreement from performance on the note and deed of trust. And so a borrower's default on the loan may bar his or her contract claim under some states' laws. *See In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, MDL 10-2193-RWZ, 2013 WL 4759649, at *12 (D. Mass. Sept. 4, 2013) ("Plaintiffs' individual performance is a necessary part of their breach of contract claim ....").

Similarly, Burton does not contest that state laws vary materially on the admissibility of extrinsic evidence, but argues—again without citing any authority—that extrinsic evidence is immaterial to the interpretation of a "form contract." *See* Dkt. no. 80, at 4. Several courts have disagreed with Burton. *See, e.g., Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 544 (C.D. Cal. 2013); *Rapp v. Green Tree Servicing, LLC*, 12-CV-2496 PJS/FLN, 2014 WL 3846032, at *6 (D. Minn. Aug. 5, 2014). Indeed, in denying certification of a HAMP case concerning trial period plans, Judge Fischer held extrinsic evidence was necessary to consider the meaning of the term "modification effective date," the same phrase Burton focuses on here. *In re Citimortgage, Inc. Home Affordable Modification Program (-HAMP-) Litig.*, ML 11-2274 DSF PLAX, 2013 WL 8844095, at *6 (C.D. Cal. Oct. 7, 2013).

Nor is Burton correct that extrinsic evidence is unnecessary because the contract's terms are supposedly "unambiguous." *See* Dkt. no. 80, at 4. Some states, like California, "permit[] consideration of extrinsic evidence to explain the meaning of the terms of a contract even when the meaning appears unambiguous." *Foad Consulting Grp. Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001). Burton does not analyze those states' laws or propose any plan for managing the introduction of extrinsic evidence. Nor does the contract "unambiguously" mandate that booking must occur before signing. *See, infra,* at pp. 6-7. It does not the address the issue at all, thus

1  opening the door for the introduction of extrinsic evidence under other state laws as well.

2        Burton's analysis of Nationstar's waiver defense follows the same pattern.  He tacitly
3  concedes the significant state-law variations on this defense and argues only that "no court" could
4  agree with Nationstar that the defense is viable.  *See* Dkt. no. 80, at 6.  But as already pointed out
5  in Nationstar's opening memorandum, some courts have held that accepting the benefits of a
6  modification may constitute a waiver of claims arising before the modification.  *See* Dkt no. 72, at
7  18.  Burton points to "no court" or other authority holding to the contrary.

8        Burton does not even attempt to analyze nationwide state-law variances on his breach of
9  implied covenant, promissory estoppel, and fraud claims, improperly proposing instead that the
10 Court certify new multi-state classes for the first time in his reply.  *See* Dkt. no. 80, at 6.  No
11 national class may be therefore be certified on any of those three claims.

12       In short, Burton's analysis comes a day late and a dollar short.  Certification of a
13 nationwide class should be denied for this reason alone.

14 **III.  BURTON HAS NOT SHOWN CERTIFICATION OF ANY MULTI-STATE
15 CLASS WOULD BE APPROPRIATE**

16       The Court should reject Burton's belated request to amend the class definition on his
17 implied covenant, promissory estoppel, and fraud claims.  Burton did not seek leave to amend his
18 class definition and never previously indicated he would seek to certify any multi-state class.
19 Burton should, therefore, be bound by the class alleged in the complaint and identified in his
20 moving papers.  *See Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 & n. 6 (C.D. Cal. 2009).

21       While the Court may have discretion to consider a revised class definition on reply, the
22 Court should decline to do so here as "to so narrow the classes at this stage in the litigation would
23 impede [Nationstar's] due process rights …."  *Soto v. Castlerock Farming & Transp., Inc*., 1:09-
24 CV-00701-AWI, 2013 WL 6844377, at *23 (E.D. Cal. Dec. 23, 2013) (Thurston, J.) report and
25 recommendation adopted, 1:09-CV-00701-AWI, 2014 WL 200706 (E.D. Cal. Jan. 16, 2014).

26       The parties conducted discovery for over a year based on the putative national classes
27 alleged in Burton's complaints.  Burton never sought any state-specific information.  Nationstar
28 thus did not have any reason to focus its investigation, discovery, or legal research on issues

80001.0009/3425466.2      3

Sur-reply in Opposition to Motion for Class Certification

particular to borrowers in the states Burton has belatedly identified.  Instead, Burton's last-minute change of course has forced Nationstar to attempt to rebut the new arguments on short notice within the abbreviated confines of this sur-reply.

Even were it permissible for Burton to change his class definitions at this late juncture, Burton has failed to carry his burden of showing certification of any of the multi-state classes would be appropriate.  As just one example, Burton "fails to demonstrate there are sufficiently numerous putative class members such to satisfy [] Rule 23(a)(1) …" because he has no evidence of how many borrowers in each state would fall within the classes. *See Soto*, 2013 WL 6844377, at *24.  "[W]here a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone."[1]  Certification of each multi-state class should be denied for that reason alone.  *See Soto*, 2013 WL 6844377, at * 24.

Burton also fails to conduct an adequate analysis of state-law variances on the proposed multi-state classes.  Burton's state-law charts "merely recite the elements of [his] claims… in various states without an analysis of how those elements are interpreted or analyzed by the various states." *Andersen v. Atl. Recording Corp.*,  No. 07-CV-934-BR, 2010 WL 1798441, at *9 (D. Or. May 4, 2010) (citation omitted).  Burton's "largely textual presentation of legal authority oversimplifie[s] the required analysis and glosse[s] over the glaring substantive legal conflicts among the applicable laws of each jurisdiction." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 725-26 (5th Cir. 2007).  Applicable law in the states Burton cherry-picked to attempt to achieve certification differs significantly in ways Burton does not address.

For example, in Delaware no claim for breach of the implied covenant will lie where the matter is governed by the contract's express terms. *See Broesler v. Wardens & Vestry of the St. Barnabus Episcopal Church*, 2011 WL 2174924, at *5 (Del. Super. Ct. 2011).  Kansas applies a subjective test for bad faith, whereas California applies an objective test.  *See Daniels v. Army Nat.*

---

[1] *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013); *see also Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (district court erred where it inferred numerosity for a Florida-only class based on evidence only of national scale).

*Bank*, 249 Kan. 654, 658, 822 P.2d 39, 43 (1991); *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,* 2 Cal.4th 342, 373 (1992). New Jersey requires proof of bad faith or intent, while Connecticut requires proof of fraud or other "sinister" intent. *See Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251, 773 A.2d 1121, 1130 (2001); *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382, 388 (2004). Other states have no intent element.

State law also varies significantly across the proposed promissory estoppel class. New York requires that the promisor make a false statement and intend the promisee rely on it. *See* Lindsey Decl., Ex. B. Ohio law requires both that the promisor "reasonably expect" that the promise will induce action by the promisee and that the promisee show "injustice can be avoided only by the enforcement of the promise." *McCroskey v. State*, 8 Ohio St. 3d 29, 30, 456 N.E.2d 1204, 1205 (1983). In Rhode Island it is "essential" that "the promise be made for the purpose of inducing the promisee or the third person to forbear." *B.M.L. Corp. v. Greater Providence Deposit Corp.*, 495 A.2d 675, 677 (R.I. 1985). And New York also requires proof of an unconscionable injury (*see* Dkt. no. 80, at 5), a high hurdle Burton does not even attempt to argue he can surmount by showing an agreement was signed a few days before it was booked.

State law also varies across the proposed fraud class. Alaska requires actual knowledge of falsity, while "reckless indifference" will suffice in Delaware and Indiana, and mere ignorance of the truth is enough in Montana. *See* Lindsey Decl., Ex. B. Montana requires proof of nine elements for fraud, while other states require only five. *See id.* Under the state laws Burton has chosen, many borrowers' claims may be barred by the statute of limitations, which is only two years in Alaska and Montana and three years in California. *See* Alaska Stat. § 09.10.070; Mont. Code § 27-2-203; Cal. Code Civ. Proc., § 338(d). Yet, Burton does not mention the issue.

Burton's maneuvering also undermines his adequacy. Burton may claim membership in a putative California or national class, but Burton suffered no injury in and has no apparent connection to Alaska, North Carolina, New York, or any of the other states scattered across the nation that are included in his new class definitions solely for strategic purposes. Burton thus

lacks standing to represent borrowers whose claims are governed by other states' laws.[2]

Burton's tactical decision to abandon many class members' implied covenant, promissory estoppel, or fraud claims also renders him inadequate. Claim trimming harms class members and defeats Burton's adequacy because if the class is certified, a judgment operates as *res judicata*, forever barring class members from pursuing the claims Burton has abandoned in a vain attempt to achieve certification.[3]

## IV.  BREACH OF CONTRACT CANNOT BE PROVEN WITH COMMON EVIDENCE

Addressing the modification agreement's language for the first time, the reply argues breach can be proven with common evidence because the agreement supposedly requires "automatic" modification as of the effective date. *See* Dkt. no. 80, at 3, 7.

The agreement is not susceptible to Burton's interpretation. Loan modifications do not happen "automatically"; human intervention is necessary. The agreement recognizes as much and provides that a servicer must, at a minimum, countersign the agreement and return it to the borrower to modify the loan: "I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred." *See* Johnson Decl., Ex. 3, § 2(C). Nothing in the agreement requires the modification be booked before it is signed. Nothing precludes a servicer from booking after it has manifested its assent by signing the contract and returning it to the borrower. Burton's interpretation would improperly insert into the contract that which has been omitted. Cal. Code Civ. Proc., § 1858.[4]

---

[2] *See, e.g., Xi Chen Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, CIV. 13-2664 ADM/SER, 2014 WL 943224 (D. Minn. Mar. 11, 2014); *In re Ditropan XL Antitrust Litig.,* 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

[3] *Clark v. Experian Info. Solutions, Inc.*, CIV.A.8:00-1217-24, 2001 WL 1946329, at *4 (D.S.C. Mar. 19, 2001); *Drimmer v. WD-40 Co.*, 06-CV-900 W (AJB), 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007) *aff'd*, 343 F. App'x 219 (9th Cir. 2009).

[4] Burton's interpretation is also implausible, as it often was not possible to book modifications before the effective date because of borrowers' delay, changes in Treasury guidelines, or other circumstances outside of Nationstar's control. *See* Johnson Decl., ¶¶ 5-8. Even under those circumstances, Nationstar booked all HAMP modifications to take effect as of the "modification (footnote continued)

Since Burton has not shown the agreement addresses when the modification must be booked, the law implies a reasonable time for performance. *See* Cal. Civ. Code § 1657.  Burton does not dispute this question of fact will vary from borrower to borrower (*see* Dkt. no. 72, at 14-15), thus precluding Burton from proving breach with common evidence.

## V.  RELIANCE MUST BE PROVEN INDIVIDUALLY, NOT PRESUMED

Addressing the fraud and promissory estoppel claims for the first time, Burton's reply asserts reliance need not be proven by individual evidence because it can be presumed under *Vasquez v. Superior Court*, 4 Cal.3d 800, 811-14 (1971) and its progeny.  *See* Dkt. no. 80, 8-9.

Burton is wrong.  As the California Supreme Court later explained in *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1095 (1993), *Vasquez* holds only that "*when the same material misrepresentations have actually been communicated to each member of a class* [i.e., each class member is shown to have heard or read the same misrepresentation], an inference of reliance arises as to the entire class."  Also, "because *Vasquez* was appealed after a demurrer to class allegations was sustained without leave to amend, the court accepted as true the allegation that identical oral representations were made to each member of the class." *Osborne v. Subaru of Am., Inc.*, 198 Cal.App.3d 646, 661 (1988).  *Vasquez* said nothing about the evidentiary burden a plaintiff must meet on class certification.

Burton has not shown and cannot show that all class members heard or read the same representation.  This is not a case where there was a standardized, uniform sales pitch as in *Vasquez* or *In re First Alliance Mortgage Co.*, 471 F.3d 977, 991 (9th Cir. 2006). Again, the agreement does not represent when the modification must be booked or countersigned or specify which action must occur first.  *See, supra,* at pp. 6-7.  Hence, there is no uniform representation regarding the timing of booking that all class members could have relied on; rather, evidence of "[i]ndividual representations made by [Nationstar] to individual plaintiffs" will be necessary in evaluating borrowers' reliance, if any.  *See In re Citimortgage, Inc. Home Affordable Modification*

---

effective date" (*see id.*, ¶ 8), so Nationstar did not breach the agreement merely by effecting it after the effective date "ha[d] occurred."  *See id.*, Ex. 3, § 2(C).

*Program (-HAMP-) Litig.*, 2013 WL 8844095, at *6.

Assuming an inference of reliance were appropriate, Nationstar "may, of course, introduce evidence in rebuttal." *Vasquez*, 4 Cal.3d at 814.  Nationstar adduced evidence showing Burton did not pursue other alternatives to foreclosure because he had no viable options, not because of any reliance on supposed representations Nationstar made.  *See* Kemp Decl., Ex. A [72:5-73:8, 74:23-75:12, 76:11-77:7, 86:25-87:21, 182:20-185:1, Ex. 10].  Proof of other class members' reliance, if any,  would also require individual proof, rendering a classwide presumption of reliance improper. *See Caro v. Procter & Gamble Co.*, 18 Cal.App.4th 644, 668 (1993).

Even were Burton's contrary argument correct, the *Vasquez* presumption of reliance would at most apply to putative class members' fraud claims that are governed by California law.  Burton has made no attempt to show any other state's law would infer a presumption of reliance on a common-law misrepresentation claim, let alone on a promissory estoppel claim.  There is plenty of authority to the contrary, both generally (*see* Dkt. no. 72, at 9, 16) and in the states Burton has included in his new multi-state classes.[5]  Accordingly, for most class members, if not all of them, reliance will be an individual issue, requiring each class member to submit evidence that he would have and could have successfully pursued some other loss mitigation option had he known his modification might be booked a few days after it was signed.  *See* Dkt. no. 72, at 16-17.

## VI.  CONCLUSION

For the reasons stated above and in Nationstar's opposition, certification should be denied.

DATED:  September 18, 2014         SEVERSON & WERSON
                                   A Professional Corporation

                                   By:  */s/ Erik Kemp*
                                        Erik Kemp

                                   Attorneys for Defendant  NATIONSTAR MORTGAGE LLC

---

[5] *See, e.g., Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 474 (Del. 1992) (citing cases); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) (North Carolina law); *Hurd v. Monsanto Co.*, 164 F.R.D. 234, 240 (S.D. Ind. 1995) (Indiana law).