1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   DENNIS BURTON, on behalf of himself        )   Case No.: 1:13-cv-00307 - LJO - JLT
     and all others similarly situated,          )
12                                                )
                         Plaintiff,               )   FINDINGS AND RECOMMENDATIONS
13            v.                                   )   DENYING PLAINTIFF'S MOTION FOR CLASS
                                                  )   CERTIFICATION
14   NATIONSTAR MORTGAGE, LLC,                    )
                                                  )   (Doc. 69)
15                       Defendant.               )
                                                  )
16   _____   )

17            Dennis Burton sought a loan modification in 2009 after he had fallen behind in his mortgage

18   payments.  He complied with the terms of his trial period plan offered by Nationstar, during which he

19   was required to make reduced mortgage payments. Given his compliance, he was offered a permanent

20   loan modification.  Burton signed the documents to complete the modification and had them notarized

21   and, eventually, returned both of the needed original copies.  Though Nationstar approved the

22   modification by signing the documents, the loan was never "booked," meaning the modified loan was

23   never entered into the system.  Burton stopped making his payments timely and then stopped making

24   them altogether.  Nationwide foreclosed on the home.  In this action, Burton seeks to certify a class of

25   borrowers in all 50 states who suffered due to Nationstar's "sign then book" policy.

26            In support of his motion, Burton supplies sparse evidence that absent class members suffered

27   damages as a result of Nationstar's policy, and Nationstar provides evidence that no one suffered harm

28   similar to Burton.  Burton also fails to provide a sufficient examination of the law that would apply to

                                                   1

his nationwide class and fails to address the Rule 23(a) factors as to his proposed subclasses.

The Court has read and considered the pleadings and supporting documents and heard oral arguments of counsel.  For the reasons set forth below, the Court recommends Plaintiff's motion for class certification be **DENIED**.

## I.    HAMP BACKGROUND

Congress passed the Emergency Economic Stabilization Act, Pub. L. No. 110-343, 122 Stat. 3756 in 2008.  This included the Troubled Asset Relief Program, "which required the Secretary of the Treasury, among many other duties and powers, to 'implement a plan that seeks to maximize assistance for homeowners and . . . encourage the servicers of the underlying mortgages . . . to take advantage of . . . available programs to minimize foreclosures.'" *Corvello v. Wells Fargo Bank, N.A.,* 728 F.3d 878, 885 (9th Cir. 2013) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); 12 U.S.C. § 5219(a)).  In response, the Treasury Department initiated the Home Affordable Modification Program ("HAMP") "to incentivize banks to refinance mortgages of distressed homeowners so they could stay in their homes."  *Corvello*, 728 F.3d at 880.

Home loan servicers such as Nationstar and Fannie Mae signed a Servicer Participation Agreement, agreeing "to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program." *Wigod*, 673 F.3d at 556.   Under the Servicer Participation Agreement, "servicers would receive a $1,000 payment for each permanent modification, along with other incentives." *Id.*  Servicers were directed to perform loan modification pursuant to "guidelines and procedures issued by the Treasury," and follow "any supplemental documentation, instructions, bulletins, letters, directives, or other communications . . . issued by the Treasury." *Id.*

The Treasury set out the process for applying for and receiving loan modification in Treasury Supplemental Directive 09-01 ("SD 09-01").  *See Corvello*, 728 F.3d at 880.  The Ninth Circuit summarized the process as follows:

> First, borrowers supply information about their finances and their inability to pay their current mortgage to the servicer, and the servicer must evaluate whether the borrowers qualify for a loan modification. SD  09-01. The servicer computes modified mortgage payments on the basis of the borrowers' information. *Id.*
>
> For borrowers who appear eligible to participate in HAMP, the servicer then prepares a

2

TPP.  The TPP requires borrowers to submit documentation to confirm the accuracy of their initial financial representations, and to make trial payments of the modified amount to the servicer. The servicer must use the documentation to "confirm that the borrower[s]" meet the eligibility criteria for a permanent modification. *Id.*

In the step most critical to this litigation, the servicer then must report to the borrowers the results of the eligibility determinations. *Id.* If a borrower does not qualify for the HAMP program, the servicer must not only alert the borrower, but must consider alternatives. The servicer should "promptly communicate that [ineligibility] determination to the borrower in writing and consider the borrower for another foreclosure prevention alternative." *Id.* For borrowers who have made all their payments and whose representations remain accurate, the servicer must offer a permanent home loan modification. *Id.*

*Corvello*, 728 F.3d at 880-81.

## II.     PROCEDURAL HISTORY

In his second amended complaint, Plaintiff reports he had a mortgage on his home in Bakersfield, California.  (Doc. 45 at 3, ¶ 11.)  He asserts he "was qualified and eligible to participate in the [Home Affordable Modification Program] under all applicable directives and guidelines.  (*Id.*) Plaintiff entered into a Trial Payment Plan ("TPP") agreement with Nationstar, which was effective on May 6, 2009.  (*Id.* at 7, ¶ 25.)  Through the TPP, Plaintiff agreed:

> I understand that after I sign and return two copies of the Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  This Plan will not take effect unless and until both the Lender and I sign it and Lender provides me with a copy of this Plan with the Lender's signature.

(*Id.* at 7, ¶ 24.)  Plaintiff reports that he "timely made each of the $1,921.58 monthly trial payments due to Nationstar on May 6, 2009, June 1, 2009, and July 1, 2009." (*Id.*, ¶ 27.)  Nationstar sent Plaintiff a Permanent Modification Agreement ("PMA") with "a Modification Effective Date of August 1, 2009." (*Id.*, ¶ 28.)   Plaintiff "executed the PMA promptly on August 25, 2009 and returned it to Nationstar," whose representative "countersigned the PMA on or about October 9, 2009 and sent the signed PMA back to [Plaintiff]."  (*Id.*)

Plaintiff alleges that he "waited for Nationstar to record and otherwise put his PMA into effect as its terms required."  (Doc. 45 at 7, ¶ 30.)  According to Plaintiff, he "telephoned Nationstar repeatedly, and was told that all the paperwork had been received and that Nationstar simply had to "book" the modification."  (*Id.*)  Plaintiff reports Nationstar's "representative instructed [him] to keep paying the amount set forth in the PMA, or $1,915.20."  (*Id.*)  Plaintiff asserts he "continued to pay" the amount required in the PMA, but "received a Notice of Trustee's sale indicating the property had been

3

sold." (*Id.* at 7, ¶ 31.)  After receiving the Notice, Plaintiff contacted Nationstar and was "assured . . . this was not an actual foreclosure and again, that the permanent modification simply needed to be 'booked.'" (*Id.*)

On December 2, 2009, Plaintiff received a letter from Nationstar "informing him that he was in default, that he immediately owed Nationstar over $24,000, and that Nationstar was preparing to proceed to foreclosure." (Doc. 45 at 8, ¶ 32.)  Further, Plaintiff alleges: "The letter further informed Burton that he should explore a HAMP modification, which the letter described as a government sponsored program that included a trial plan—completely ignoring the fact that Burton had already completed a HAMP trial plan and he was actually waiting for Nationstar to cause his loan to become permanently modified." (*Id.*)  Plaintiff "believ[ed] that Nationstar was not going to honor the PMA," and obtained employment in Colorado. (*Id.*, ¶¶ 33, 34.)  He reports that he "temporarily relocated to Colorado to pursue the employment opportunity and earn additional money in an attempt to save his home" on January 17, 2010. (*Id.*, ¶ 34.)

Plaintiff alleges that while he worked in Colorado, his "wife and seven children were still residing full time at the Bakersfield property." (Doc. 45 at 8, ¶ 34.)  However, "[in] a letter dated March 7, 2010, Nationstar indicated that it was terminating the PMA and dropping Burton from the HAMP because . . . his property was not 'owner occupied,' and that it was proceeding with the foreclosure." (*Id.*, ¶ 35.)  Plaintiff contends, "Nationstar had no such authority to re-evaluate [his] eligibility in March 2010, several months after his PMA's Modification Effective Date." (*Id.* at 9, ¶35.)

According to Plaintiff, "Nationstar has deprived homeowners of their contractual right to receive a timely permanent modification consistent with the terms of the signed PMA." (Doc. 45 at 6, ¶ 22.)  Plaintiff alleges: "Instead of timely performing tasks as required, Nationstar serially failed to 'book' or implement modifications by the later of the Modification Effective Date in the PMA or the date when Nationstar countersigned the PMA." (*Id.* at 10, ¶ 40.)  Rather, Plaintiff asserts Nationstar "countersigned PMAs and then took no action whatsoever, allowing the file to 'age' instead of permanently modifying the loans." (*Id.*)  Based upon these facts, Plaintiff states the following causes of action against Nationstar:  (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel ("pled in the alternative" to the breach of contract), fraudulent

4

misrepresentation. (*Id.* at 12-19.)  Further, Plaintiff seeks to "challenge[] Nationstar's serial failure to timely honor its PMAs" by representing a class defined as:

> All homeowners nationwide who received permanent modification agreements (PMAs) signed by Nationstar from January 2009 through the date when Nationstar implemented its "book then sign" procedure for PMAs, whose permanent modifications Nationstar did not book by the Effective Date stated in the PMA or by the day Nationstar executed the PMA, whichever is later.

(Doc. 45 at 9, ¶¶ 22, 38.)  Accordingly, Plaintiff's claims are brought individually and on behalf of the putative class. (*Id.* at 12-19.)

Plaintiff filed the motion for class certification now pending before the Court on July 28, 2014. (Doc. 69.)  Defendant filed its opposition on August 25, 2014, asserting Plaintiff fails to meet the burden to demonstrate class certification is appropriate. (Doc. 72.)  Plaintiff filed a brief in reply on September 8, 2010 (Doc. 80), to which Defendant filed a sur-reply on September 18, 2014 (Doc. 84).

## III.   LEGAL STANDARDS FOR CLASS CERTIFICATION

Class certification is governed by the Federal Rules of Civil Procedure, which provide: "One or more members of a class may sue or be sued as representative parties on behalf of all."  Fed. R. Civ. P. 23(a).  A class action is proper if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In general, these prerequisites are referred to as numerosity, commonality, typicality, and adequacy of representation, and "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 155-56 (1982) (citing *General Telephone Co. v. EEOC*, 446 U.S. 318, 330 (1980)). When a proposed class satisfies the prerequisites of Rule 23(a), the Court must determine whether the class is maintainable under Rule 23(b).  *Leyva v. Medline Indus.*, 716 F.3d 510, 512 (9th Cir. 2013); *Narouz v. Charter Communs., LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010).

A party seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and "must affirmatively demonstrate . . . compliance with the Rule."  *Wal-Mart Stores*, 131 S. Ct. at 2551; *Doninger v. Pacific Nw. Bell, Inc.*, 563 F.2d 1304, 1308 (9th Cir. 1977).  The Court

1   must conduct a "rigorous analysis," which may require the Court "to probe behind the pleadings before

2   coming to rest on the certification question." *Wal-Mart Stores*, 131 S. Ct. at 2551 (quoting *Falcon*, 457

3   U.S. at 160-61). The Court has an affirmative duty to consider the merits of an action "to the extent

4   that they overlap with class certification issues." *Ellis*, 675 F.3d at 981 ("a district court *must* consider

5   the merits if they overlap with the Rule 23(a) requirements") (citing *Wal-Mart Stores*, 131 S. Ct. at

6   2551-52). As a result, the Court may consider material evidence to determine Rule 23 requirements are

7   satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

8   **IV.   PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

9          Plaintiff asserts he and the proposed class members are homeowners who had PMAs with

10  Nationstar that were signed by Nationstar representatives beginning January 2009. According to

11  Plaintiff, "when generating PMAs to be sent to borrowers, Nationstar would include Modification

12  Effective Dates that were up to sixty (60) days before Nationstar believed the loan would be put into

13  effect." (Doc. 69 at 16.) For example, Plaintiff notes that "his PMA contained an effective date of

14  August 1, 2009—twenty days before Nationstar even mailed the PMA to [Plaintiff]," although "the

15  PMA was to be put into effect in October 2009." (*Id.*) Further, Plaintiff contends: "Nationstar has

16  produced no example from the relevant period of time (when sign-then-book was in use) to show that

17  any borrower's loan was booked prior to the Effective Date set forth in the borrower's PMA." (*Id.*)

18  Based upon these allegations, Plaintiff moved to certify a class defined as:

19          All homeowners nationwide who received permanent modification agreements (PMAs)
20          signed by Nationstar from January 2009 through the date when Nationstar implemented
            its "book then sign" procedure for PMAs, whose permanent modifications Nationstar
21          did not book by the Effective Date stated in the PMA or by the day Nationstar executed
            the PMA, whichever is later.

22  (Doc. 69 at 17.) Plaintiff contends the prerequisites of Rule 23(a) are satisfied, and certification of the

23  proposed class is appropriate under Rule 23(b)(3). (*Id.*) In addition, Plaintiff asserts the proposed

24  class may be certified "under Rule 23(c)(4), which allows the Court to certify classes with respect to

25  specific issues—in this case, whether Nationstar's sign-then-book process breached its PMAs with

26  borrowers." (*Id.*)

27          In his reply papers, Plaintiff argues the Court should also certify the following sub-classes: (1) a

28  thirteen-state "implied covenant subclass," encompassing the states that imply the duty of good faith

6

and fair dealing in each contract; (2) a six-state "fraud subclass; and (3) a four-state "promissory estoppel subclass."  (Doc. 80 at 3-6.)  Finally, Plaintiff contends an issues class should be certified if he is unable to meet the requirements of Rule 23(a) and (b), because such a class "would negate the need for every class member to prove Nationstar's liability thousands of times over."  (*Id.* at 13.)

## V.   DEFENDANT'S OPPOSITION TO CLASS CERTIFICATION

Defendant Nationstar opposes certification of the proposed class, arguing Plaintiff has attempted "to manufacture a class claim based on a procedural nuance that never affected anyone." (Doc. 72 at 14.)  Defendant asserts:  "The date on which a modification was booked is not even significant—to the borrower or to Nationstar—since Nationstar booked all modifications to take effect as of the 'modification effective date' identified in the parties' agreement, regardless of which date the modification was actually booked in Nationstar's system.  No one suffered any harm during the brief interval between signing and booking."  (*Id.*)  As a result, Defendant argues Plaintiff "falls short of meeting his burden of showing his proposed "sign-then-book" claim satisfies Fed. R. Civ. P. 23's requirements."  (*Id.*)

According to Defendant, Plaintiff is unable to satisfy the requirements of Rule 23(a) because the class includes members without Article III standing, the class is not ascertainable, and Plaintiff "is an atypical representative." (Doc. 72 at 14-15. 25.)  Further, Defendant argues Plaintiff failed to meet his burden to demonstrate the requirements of Rule 23(b)(3) are satisfied because: (1) Plaintiff proposes a nationwide class but "provides no analysis of state-law differences on those claims or Nationstar's defenses to them; (2) the claim for breach of contract requires individual evidence including "putative class members' performance and damages," and the claims for "implied covenant, promissory estoppel, and fraud claims raise yet more individual issues;" and (3) "[p]roblems of individual proof and manageability preclude the required showing of superiority."  (*Id.* at 14-15.)  In addition, Defendant argues the class should not be certified under Rule 23(c)(4)(A).  (*Id.* at 15.)

## VI.   DISCUSSION AND ANALYSIS

### A.   Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."  *City*

7

1    *of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  The Ninth Circuit explained, "[T]he Constitution

2    mandates that prior to our exercise of jurisdiction there exist a constitutional 'case or controversy,' that

3    the issues presented are 'definite and concrete, not hypothetical or abstract.'"  *Thomas v. Anchorage*

4    *Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Ry. Mail Assoc. v. Corsi*, 326 U.S.

5    88, 93 (1945)).  To satisfy the "case or controversy" requirement, a plaintiff must establish standing

6    under Article III to bring suit.  *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir.

7    2010); *see also Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 938 (2007) ("standing is an

8    essential and unchanging part of the case-or-controversy requirement of Article III").  To establish

9    standing—and thus show an actual case or controversy—a plaintiff "must demonstrate (1) an injury-in-

10   fact, (2) causation, and (3) a likelihood that the injury will be redressed by a decision in the plaintiff's

11   favor." *Human Life,* 624 F.3d 1000 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

12           Prior to evaluating Plaintiff's proposed classes under Rule 23, the Court must determine

13   whether Plaintiff has standing to assert his claims.  The Ninth Circuit explained that standing "is a

14   jurisdictional element that must be satisfied prior to class certification.  *LaDuke v. Nelson*, 762 F.2d

15   1318, 1325 (9th Cir. 1985).  Consequently, the Court should address the issue of standing prior to

16   certifying a class. *See Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir.2004).  In a proposed class

17   action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case

18   or controversy with the defendants, none may seek relief on behalf of himself or any other member of

19   the class." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003).

20           Further, a class must be defined to include only individuals with Article III standing.  *See Wal-*

21   *Mart Stores*,131 S.Ct. at 2552 (acknowledging "the necessity" to exclude putative class members who

22   "lack[ed] standing to seek injunctive or declaratory relief" from a proposed class).  As such, the Ninth

23   Circuit has determined that "no class may be certified that contains members lacking Article III

24   standing." *Mazza v. Am. Honda Motor*, 666 F.3d 581, 594 (9th Cir. 2012) (quoting *Denney v. Deutsche*

25   *Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). Similarly, other circuits have determined class certification

26   was not appropriate when it was not clear that class members had Article III standing for the claims

27   presented. *See, e.g., Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980) (affirming the denial of

28   class certification where it was not clear "the proposed class members have all suffered a constitutional

1   or statutory violation warranting some relief"); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034

2   (8th Cir. 2010) ("a class cannot be certified if it contains members who lack standing").  Consequently,

3   the Court must determine whether the class proposed by Plaintiff contains only individuals who have

4   standing under Article III.

5           Defendant does not dispute that Plaintiff has standing under Article III but asserts that the

6   proposed class is overbroad because it "would consist primarily, if not entirely, of persons who lack

7   standing."  (Doc. 72 at 35.)  Defendant reports that "HAMP modifications were generally signed and

8   booked within two to three days of delivery," and the loan modifications were booked to be

9   "retroactive to the agreement's effective date."  (*Id.*, citing Kemp Decl., Ex. B [53:10-54-21, 101:14-

10  102:12, 102:20-103:19, 111:17-113:15]; Doc. 72-4 at 4, Johnson Decl., ¶ 11.)  Therefore, Defendant

11  asserts the putative class members "suffered no harm stemming from any 'delay' in booking," which

12  renders the borrowers unable to show an "injury-in-fact."  (*Id.*)  On the other hand, Plaintiff argues "all

13  Class members have Article III standing because—regardless of the length of their delay or whether

14  Nationstar eventually modified their loans—all experienced some delay in the booking of their

15  modifications."[1]  (Doc. 80 at 12.)

16          Importantly, a claim for breach of contract arises under state law.  In California, a plaintiff

17  must demonstrate (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the

18  defendants, and (4) damages.  *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. App'x

19  661, 662 (9th Cir. 2009) (citing *First Comm. Mortgage Co. v. Reece*, 89 Cal. App. 4th 731 (Ct. App.

20  2001)); *see also Haberbush v. Clark Oil Trading Co.*, 33 Fed. App'x 896, 898 (9th Cir. 2002)

21  (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages"

22  as elements to a breach of contract).  Further, California law requires a showing of "appreciable and

23  actual damage" to assert a breach of contract claim.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223

24  F.3d 1010, 1015 (9th Cir. 2000).  Nominal damages and speculative harm do not suffice. *Ruiz v. Gap,*

25  *Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).

26

27      [1] Without discounting that a breach of contract may have occurred, the Court is at a loss to understand how the
requirement, permitting Nationstar up to 30 days to countersign the PMA after receiving the signed PMA from the

28  borrower (Doc. 69 at 9), would work if Plaintiff is correct that the PMA must be booked *before* the Modified Effective
Date.  For this provision to apply, under Plaintiff's logic, the lender would have had to offer the PMA to the borrower at
nearly the same time as the TPP; this cannot be correct.

Similarly, "palpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972); *see also Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("[e]conomic injury is clearly a sufficient basis for standing").  Here, Plaintiff offers no evidence of damage suffered by any of the absent class members and, instead, speculates that the delay caused borrowers to suffer "damages in the form of delayed incentive payment accrual time and prolonged negative credit reporting."  (Doc. 69 at 12.)  However, Nationstar presents evidence that the booking occurred within "[t]wo to three days tops" of receiving the signed originals from the borrower.  (*See* Doc. 76-2 at 13, Kellett Depo. 53:16-22).

Erin Johnson, the Assistant Vice President of Nationstar Mortgage LLL, reports that the policy of Nationstar was to book loans to take effect on the "modification effective date" identified in the PMAs, "even though that date may have already lapsed."  (Doc. 72-4 at 3, Johnson Decl. ¶ 8.)  This ensured that future entitlement to incentive pay would not be impacted by the delay.  (*Id.* at 3.)  Also, if a borrower made payment after the "modification effective date" identified in the PMA and the date the modification was booked by Nationstar, the payments were "applied as payments on the modified loan," and the borrowers "receive[d] credit for those payments for purposes for HAMP's pay-for-performance program."  (*Id.*)  Any late fees, likewise, were waived once the load was booked.  (*Id.*)

Plaintiff claims also that absent class members suffered damages because a delay impacts the borrower's credit rating due to the consequent delay in providing a revised report to the credit reporting agencies demonstrating that the PMA had been implemented.  This damage claim is unsupported by evidence and there is no showing that the contract required a revised report to the credit agencies at any particular time or that the usual time for making the revised report was impacted by the one-to-three day delay.  (*Id.* at 4.)  More important is the evidence, supplied by Plaintiff, that a credit score is negatively impacted by the implementation of the PMA (Doc. 69-1 at 49) so any delay in reporting the PMA seems to work in the borrower's favor.

Given this analysis, there is no evidence the absent class members who received loan modifications booked by Nationstar suffered the damages presumed by Plaintiff in his motion for class certification.  Because Plaintiff has not met his obligation of establishing the requisite injury-in-fact

1    for the absent class members,[2] the Court finds he has not met his burden of showing the putative class

2    members have Article III standing. For this reason, the Court recommends Plaintiff's motion for class

3    certification of all borrowers processed under Nationstar's "sign-then-book" policy be **DENIED**.

4        **B.    The Nationwide Class**

5        Even if the putative class members have standing, Plaintiff fails to meet his burden to

6    demonstrate class certification is appropriate under Rule 23(a), because the commonality and typicality

7    requirements are not satisfied.[3]

8        1.    Numerosity

9        A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P.

10   23(a)(1). This requires the Court to consider "specific facts of each case and imposes no absolute

11   limitations." *EEOC*, 446 U.S. at 330. Although there is no specific numerical threshold, joining more

12   than one hundred plaintiffs is impracticable. *See Immigrant Assistance Project of Los Angeles Cnt.*

13   *Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) ("find[ing] the numerosity requirement . . .

14   satisfied solely on the basis of the number of ascertained class members . . . and listing thirteen cases in

15   which courts certified classes with fewer than 100 members").

16       According to Plaintiff, "Nationstar admits that it was using the sign-then-book policy from at

17   least the start of HAMP in May 2009 through January 2010." (Doc. 69 at 18; Exh. O.) Plaintiff reports

18   Nationstar's counsel revealed during an informal telephonic conference with the Court that "Nationstar

19   had identified between 7,000 and 7,500 borrowers[4] who had been processed under the pre-January

20

21        [2] Plaintiff's complaint that he was thwarted in conducting discovery has been addressed in the Court's previous
     orders (Docs. 60-61) and the Court declines to address this again. Even still, review of the discovery that had been
22   propounded and would have been the subject of a motion to compel had one been filed (counsel clarified at the hearing that
     Request for Production No.21 (Doc. 69-2 at 33) was key), reveals that it would not have born on the question of standing.
23   In any event, Plaintiff's counsel admitted at the hearing that his firm has spoken to "hundreds" of Nationstar borrowers who
     underwent PMAs. Thus, Plaintiff had the ability to produce evidence to support his motion obtained from borrowers
24   directly if there was any.
          [3] Defendant argues also that the class members are not ascertainable. Defendant asserts, "Nationstar does not
25   maintain electronic records that would allow it to search for borrowers whose modifications were signed before they were
     booked; a burdensome file-by-file review would be required." (Doc. 72 at 15.) Defendant explains that the company "does
26   not maintain any electronic records for HAMP modifications booked during the proposed class period that are searchable
     for both the dates of countersigning and booking." (*Id.* at 34, citing Johnson Decl. ¶¶ 30-31.) Defendant argues this file-by-
     file review renders the class unascertainable. (*Id.*, citing, e.g., *Haskins v. First Am. Title Ins. Co.*, 2014 WL 294654 (D. N.J.
27   Jan. 27, 2014)). Notably, however, Nationstar conducted a file-by-file review of 1,323 files, for another purpose, without
     any apparent difficulty and, apparently, in a reasonably expeditious fashion. Thus, the Court rejects that the failure of
     Defendant to maintain its records in a manner more easily conducive to this review renders the class unascertainable.
28        [4] The number of borrowers identified by Plaintiff—without supporting evidence—is contradicted by Nationstar
     who reports "there were 2,548 accounts that were mailed permanent modification agreements between the inception of
     HAMP and January 2010." (Doc. 72-4 at 8, Johnson Decl. ¶ 36.) When Defendant's evidence is considered related to the

1   2010 sign-then-book procedure." (Doc. 69 at 13, citing Doc. 69-2 at 42, Woodrow Decl. ¶ 18.)

2   Beyond reporting the estimation made by counsel, Plaintiff presents no evidence of the number of

3   borrowers who entered into loan modification agreements with Defendant during the relevant time

4   period.  On the other hand, Nationstar reports that it determined "there were 2,548 accounts that were

5   mailed permanent modification agreements between the inception of HAMP and January 2010." (Doc.

6   72-4 at 8, Johnson Decl. ¶ 36.)  Accordingly, Defendant does not dispute that the numerosity element

7   of the proposed class is satisfied.

8           2.    Commonality

9        Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

10  The commonality requirement has been construed permissively; not all questions of law and fact need

11  to be common.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "However, it is

12  insufficient to merely allege any common question." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

13  981 (9th Cir. 2011).  Commonality must be shown by a "common contention" that is "of such a nature

14  that it is capable of classwide resolution—which means that determination of its truth or falsity will

15  resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*,

16  *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

17       Plaintiff observes that "[c]laims arising out of form contracts are particularly appropriate for

18  class action treatment." (Doc. 69 at 20) (quoting *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428

19  (N.D. Ill. 2007)).  According to Plaintiff, the Court should consider the PMAs entered into by

20  Nationstar and homeowners "as form contracts because "the terms of the PMAs and the process each

21  borrower was subjected to in light of Nationstar's interpretation of those terms—the sign-then-book

22  process—were substantively identical." (*Id.*)  With the PMAs being interpreted as form contracts,

23  Plaintiff asserts there is a "common question of whether Nationstar breached its borrowers' PMAs by

24  subjecting them to the sign-then-book process." (*Id.* at 19.)  Further, Plaintiff contends "the instant

25  proceedings will generate a common answer for every Class Member—yes, Nationstar breached their

26  form PMAs when it signed but then waited to book their modifications." (*Id.* at 21.)  Consequently,

27

28

---

lack of harm a one-to-three day delay in booking imposed on borrowers, this further casts into doubt how many of these
borrowers, if any, could be members of any of the class or subclasses.

1  Plaintiff concludes the commonality requirement of Rule 23(a)(2) is satisfied.  (*Id.*)

2        Significantly, Plaintiff's arguments for commonality are premised on the finding that

3  Nationstar's PMA documents were a "form contract."  (*See* Doc. 69 at 20; Doc. 80 at 3) Yet there is no

4  evidence support this assertion. Nationstar informed Plaintiff during discovery that its "HAMP program

5  was limited prior to 2010," and as a result, the company "did not use template HAMP communications

6  before 2010."  (Doc. 69-2 at 25.)  Nationstar reported that its employees "manually prepared HAMP

7  correspondences and contracts prior to 2010."  (*Id.*)  Moreover, though Plaintiff's counsel reports that

8  Nationstar produced "thousands of pages of template HAMP contracts" (Doc. 69-2 at 39, Woodrow

9  Decl. ¶ 7), this evidence has not been presented to the Court nor has Plaintiff provided any analysis of

10  the variability, if any, from contract-to-contract.  Rather, Plaintiff presents *only* his PMA and a single

11  blank Home Affordable Modification Agreement.  (*See* Doc. 69, Exhs. B and C.)

12        The bottom of Plaintiff's PMA indicates it is Fannie Mae/Freddie Mac Uniform Instrument

13  Form 3157, entitled "MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT –

14  SINGLE FAMILY."  (Doc. 69-1 at 43.)  It indicates the document was revised on "05-01-09."  (*Id.*)

15  The "template" provided by Plaintiff is also a Form 3157 and indicates it was revised in October 2010.[5]

16  (*Id.* at 52.) Thus, from the face of the evidence, there are at least three versions of the Home Affordable

17  Modification Agreement at issue here—one in use before May 1, 2009, the May 1, 2009 revision and

18  the October 2010 version.  The second two of these documents appear to have the same key issues.

19  However, the Court is unaware of the terms of the earlier document.

20        As noted above, Plaintiff makes no effort to compare the terms of the agreements, but assumes

21  the Court will extrapolate the terms of his PMA to the putative class, encompassing all borrowers who

22  entered into a loan modification agreement with Nationstar.  Though these contracts may be the same

23  in many respects, there is no evidence of this and the Court lacks the authority to presume the key

24  terms of all three PMAs are identical.  Consequently, Plaintiff fails to show that the PMAs for all of

25  the putative class members should be considered a "form contract," or that breaches of the PMAs may

26  be demonstrated with common evidence.

27  _____

28      [5] It is unclear why this form, drafted ten months after the "book then sign" procedure was put in place, has any bearing on the terms under which the prospective class members proceeded in 2009.

1    On the other hand, Defendant points out that the in 2009, the federal guidelines changed

2    frequently which means that some of the loans were governed by different standards.  (Doc. 72-4 at 3)

3    For example, Defendant's evidence shows that as to some loans, Nationstar was allowed to continue

4    the TPP and the original modification effective date by months.  Id.  Plaintiff fails to address how this

5    evidence impacts the analysis related to the proposed class and it casts significant doubt upon whether

6    commonality is shown.

7    As a result, the Court finds Plaintiff fails to establish that the commonality requirement is

8    satisfied.  *See Wal-Mart Stores*, 131 S. Ct. at 2551 ("[w]hat matters to class certification . . . is not the

9    raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to

10   generate common *answers* apt to drive the resolution of the litigation").[6]

11                  3.    Typicality

12   Even if the Court accepts that all of the PMAs contained the same key terms and that the

13   interpretation of the contract *only* from Nationstar's perspective would, somehow, constitute a common

14   question for the entire class[7], Plaintiff's claims are not typical of the class.

15   The typicality requirement demands the "claims or defenses of the representative parties are

16   typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A claim or defense is not

17   required to be identical but "reasonably co-extensive" with those of the absent class members.  *Hanlon*,

18   150 F.3d at 1020.  "The test of typicality is whether other members have the same or similar injury,

19   whether the action is based on conduct which is not unique to the named plaintiffs, and whether other

20   class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp*., 976

21   F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted); *see also Kayes v. Pac.*

22   *Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (typicality is satisfied when named plaintiffs have the

23

24   [6] On the other hand, Plaintiff's argument that Nationstar drafted the HAMP agreements is unsupported by evidence.  As noted above, the documents Plaintiff submitted indicate they were created by Freddie Mac/Fannie Mae.  Thus,

25   why Plaintiff believes the contract should be interpreted against Nationstar and in favor of the borrowers is not supported by applicable authorities.

26   [7] What one party understood the contract to mean in these circumstances is of little value.  Because, on its face, the contract can be interpreted in different ways—one way which implies a duty to book the loan by the Modified Effective Date and one way which does not—this would require the presentation of evidence as to what each of the parties to the

27   PMA reasonably understood. For example, if the parties did not have a meeting of the minds, other issues, such as the enforceability of the contract, could arise.  This case-by-case determination does not lend itself to class treatment according to Rule 23(a) analysis. On the other hand, Nationstar evidences here that it did not intend, when entering into the PMAs, that

28   it had any contractual obligation to book the loan before the Modified Effective Date.  Thus, Nationstar's intent, without more, does not resolve the matter as to Burton or anyone else.

1    same claims as other members of the class and are not subject to unique defenses).

2    Plaintiff contends the typicality requirement is satisfied because "[l]ike every other Class

3    Member, [Plaintiff] was processed under Nationstar's sign-then-book procedure prior to January 2010

4    and, as is the case with every other Class Member, Nationstar failed to book his modification by the

5    Effective Date. . ." (Doc. 69 at 21-22.)  Given these facts, Plaintiff asserts that he "suffered the same

6    legal injury as everyone else—a breach of his PMA and the denial of benefits it contained for which

7    he bargained."  (*Id.* at 22.)

8    Nationstar maintains that Plaintiff is the *only* individual whose approved PMA was not booked

9    into its system.  (Doc. 72 at 36) ("Burton's claim is not that there was a delay between the date his

10   loan modification was countersigned and the date it was booked, but rather that Nationstar never

11   booked the modification at all. No other putative class member has that claim.")  As discussed above,

12   there is a lack of evidence that the putative class members suffered damages as a result of any alleged

13   delay in booking.  Where some of the class members have not suffered any injury, yet the class

14   representative has been injured, the typicality requirement of Rule 23(a) is not satisfied.  *See, e.g.,*

15   *O'Neill v. Gourmet Sys. of Minnesota, Inc.,* 219 F.R.D. 445, 453 (W.D. Wis. 2002) (finding no

16   typicality when many of the proposed class members suffered no injury); *see also In re New Motor*

17   *Vehicles Canadian Export, No. MDL 1532*, 2006 WL 623591, at *3 (D. Me. Mar. 10, 2006) *rev'd on*

18   *other grounds*, 522 F.3d 6, 27-28 (1st Cir. 2008) (assessing standing under typicality).  Indeed, where

19   the plaintiff has suffered damages and the putative class members have not, the Court cannot conclude

20   he suffered "the same or similar injury," as is required by Rule 23(a)(3).  Therefore, the Court finds

21   Plaintiff fails to meet his burden to demonstrate the typicality requirement is satisfied.

22                          4.    Adequacy of Representation

23   Absentee class members must be adequately represented for judgment to be binding upon them.

24   *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).  Accordingly, this prerequisite is satisfied when the

25   "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

26   23(a)(4). "[R]esolution of this issue requires that two questions be addressed: (a) do the named

27   plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the

28   named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego*

1  *Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

2         According to Plaintiff, he "can adequately represent the Class Members." (Doc. 69 at 22.)

3  Plaintiff asserts there are no "actual conflicts between [Plaintiff] and the rest of the Class Members"

4  because he "doesn't have any interest antagonistic to the Class Members." (*Id.* at 22-23.) In addition,

5  Plaintiff contends he is "committed to the vigorous prosecution of this case," and "has taken his duties

6  as a putative class representative seriously. (*Id.* at 23.) For example, Plaintiff "sat for his (full day)

7  deposition . . . [and] answered all discovery propounded on him completely and on time." (*Id.*)

8         Further, Plaintiff asserts "proposed Class Counsel have significant experience litigating large

9  national class actions against banks and other financial institutions, specifically on claims challenging

10 conduct under HAMP." (Doc. 69 at 23.) Plaintiff reports the proposed counsel "argued and won

11 reinstatement of a putative HAMP class action in the case of *Wigod v. Wells Fargo Bank, N.A.,* 673

12 F.3d 547, 568 (7th Cir. 2012), the first federal appellate decision to hold that aggrieved HAMP

13 borrowers could pursue claims against HAMP servicers under State breach of contract laws." (*Id.*,

14 citing Doc. 69-2 at 38, Woodrow Decl. ¶ 5.) As a result, Plaintiff contends "proposed Class Counsel

15 are among the leading attorneys in the Country with respect to HAMP class action litigation." (*Id.*)

16 Therefore, Plaintiff concludes the class representatives and proposed class counsel will adequately

17 represent the classes as required by Rule 23(a). (*Id.* at 23-24.)

18        Importantly, however, because Plaintiff has not satisfied the prerequisites of commonality and

19 typicality under Rule 23(a), he would not be a proper representative of the class. *See Stearns v.*

20 *Ticketmaster Corp.*, 655 F.3d 1013, 1027 (9th Cir. 2011) (affirming a finding that the named plaintiffs

21 "are not proper class representatives" because their claims were "not typical of the class members").

22 **B.      Rule 23(b) Requirements**

23        If an action meets the prerequisites of Rule 23(a), the party seeking class certification must

24 demonstrate the action is appropriate under Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

25 614 (1997). Plaintiff contends this class action meets the requirements of Rule 23(b)(3), and

26 certification is proper because "common issues predominate over any claimed individual issues."

27 (Doc. 69 at 24.)

28        Class certification under Rule 23(b)(3) is an "adventuresome innovation," and allows for class

16

1    certification in cases where "questions of law or fact common to the members of the class predominate

2    over any questions affecting only individual members," and where "a class action is superior to other

3    available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3);

4    *Amchem Prods.*, 521 U.S. at 615.  When the issues of a case "require the separate adjudication of each

5    class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v.*

6    *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).  Therefore, the Court must examine

7    "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."

8    *Amchem Prods.*, 521 U.S. at 623.

9        Plaintiff argues individualized inquiries are avoided in this action because the proposed class

10   "includes only those borrowers who had received a signed PMA, signifying that their eligibility had

11   already been confirmed and their modifications were already legally binding." (Doc. 69 at 24.) Plaintiff

12   asserts that "no differences in state laws are present in this case that could defeat predominance." (*Id.*,

13   n. 11.)  Plaintiff contends, "The law regarding whether Nationstar breached its contracts is the same in

14   all fifty states."  (*Id.*) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is

15   a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn

16   breeze in New Jersey.")  Thus, Plaintiff argues Defendant "cannot rely on claimed differences in state

17   laws to block a finding of predominance."  (*Id.*)

18       Defendants disputes this and argues the predominance requirement of Rule 23(b)(3) is not

19   satisfied due to the "variances in applicable state law." (Doc. 72 at 18.)  According to Defendant, this

20   "is a critical deficiency that in itself warrants denial of the entire motion."  (*Id.*, citing *Cunningham*

21   *Charter Corp. v. Learjet, Inc.*, 258 F.R.D. 320, 332-33 (S.D. Ill. 2009) ("If a plaintiff fails to present a

22   sufficient choice of law analysis, [he] fails to meet [his] burden of proof on Rule 23(b)(3)'s

23   predominance requirement").

24       Along these lines, Defendant argues the state law analysis performed by Plaintiff "falls far short

25   of showing state-law variances poses no insuperable obstacles to classwide resolution of his four state-

26   law claims."  (Doc. 84 at 2.)  For example, Defendant asserts: "[S]tate laws vary on whether a borrower

27   can sue for breach of contract if he is in breach or cannot demonstrate performance.  Other states

28   provide a defense of 'first material breach.'" (*Id.*, citation omitted.) Because homeowners' modification

17

agreements, original notes and deeds of trust "must be construed as one contract," Defendant argues, and "default on the loan may bar his or her contract claim under some states' laws." (*Id.* at 3, citing, *e.g.*, *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 2013 WL 4759649, at *12 (D. Mass. Sept. 4, 2013) ("Plaintiffs' individual performance is a necessary part of their breach of contract claim"). Defendant notes also that state laws vary regarding whether extrinsic evidence should be considered to interpret meaning of terms in a contract, such as the term "modification effective date," "even when the meaning appears unambiguous." (*Id.*, quoting *Foad Consulting Grp. Inc. v. Azzalino*, 270 F.3d 821, 826 (9th Cir. 2001).

According to Plaintiff, the arguments set forth by Defendant do not defeat class certification. Plaintiff asserts "the core facts are common to the class," and as a result "differences in state law can be appropriately managed." (Doc. 80 at 2.) He asserts "any variations in implied covenant, promissory estoppel, and fraud claims can be managed by certifying subclasses as to only those states with laws substantially similar to California." (*Id.* at 3.) Though Plaintiff provides a table demonstrating highlighted portions of cases to show the commonality of the legal requirements from state to state, the analysis is so sparse and so incomplete as to provide little assistance to the Court.

Even still, Plaintiff contends "the Court should find that the common issue—whether Nationstar breached its PMAs by subjecting them to the sign-then-book process—predominates over any individual issues." (Doc. 69 at 27.) Plaintiff recognizes "[t]he damages suffered in this case are indeed likely to differ depending on certain factors, such as the length of delay between the Effective Date and when the loan was actually booked, whether the borrower incurred unlawful fees, whether the borrower was reported as being delinquent to credit bureaus, and whether the borrower lost his or her home." (*Id.* at 26, n. 13.) Plaintiff suggests that to address any individualized issues related to damages, the Court either "sever the liability phase from the damages phase" or "order Class Counsel to craft a class notice that requests additional information from class members about the categories of damages they suffered." (*Id.* at 26-27.)

Plaintiff asserts also the "proposed Class meets the requirements of superiority and manageability." (Doc. 69 at 27.) Plaintiff's counsel reports "this is the only class action [he] is aware of challenging this particular sign-then-book policy." (*Id.* at 28, citing Doc. 69-2 at 41, Woodrow

1    Decl. ¶13.)  Plaintiff argues that "individual actions are unlikely to be brought" by putative class

2    members, and that "[a]llowing individual courts to reach separate decisions on the issue threatens to

3    introduce a level of uncertainty and inconsistency into Nationstar's HAMP obligations and the rights

4    of its borrowers."  (*Id.* at 28-29.)  Plaintiff concludes "the Court should find that the proposed class

5    action would be superior and manageable," and that the requirements of Rule 23(b)(3) are satisfied.

6    (*Id.* at 29; *see also id.* at 27-29.)

7            Defendant observes the superiority requirement is defeated because "adequate individual

8    remedies exist" for any homeowners who believe they suffered damages under the "sign-then-book"

9    policy: "[A]s the many mortgage-related cases in the federal courts attest, individual plaintiffs are

10   normally well-motivated to bring any claims they might have in order to save their homes." (Doc. 72 at

11   37, quoting *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 2013

12   WL 4759649 at *14 (D. Mass. Sept. 4, 2013)).

13           When, as here, the laws of up to all fifty states are implicated, the plaintiff has a "burden to

14   conduct an extensive choice of law analysis and show that the requirements of Rule 23(b)(3) are not

15   defeated.  *Bobbitt v. Milberg, LLP*, 285 F.R.D. 424, 428 (citing *Zinser v. Accufix Research Inst., Inc.*,

16   253 F.3d 1180, 1189 (9th Cir. 2001); *Lozano v. AT & T Wireless Services, Inc.* 504 F.3d 718, 728 (9th

17   Cir. 2007); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996)).  Here, Plaintiff failed to

18   conduct this analysis.  Regardless, the Court declines to discuss further whether the proposed class

19   satisfies the requirements of Rule 23(b) because of Plaintiff's failure to meet his burden of establishing

20   the Rule 23(a) factors.  *See Amchem Prods.*, 521 U.S. at 614 (explaining a court only reaches the

21   requirements of Rule 23(b) when a party seeking class certification demonstrates the proposed classes

22   satisfy the prerequisites of Rule 23(a)).

23           Based upon the foregoing, the Court recommends Plaintiff's motion for certification of the

24   nationwide class of borrowers be **DENIED**.

25       **C.    Plaintiff's Proposed Subclasses**

26           Without conceding Defendant's arguments related to the differences in state law, Plaintiff

27   argues the Court should certify the following sub-classes: (1) a thirteen-state "implied covenant

28

1   subclass," encompassing the states that imply the duty of good faith and fair dealing in each contract;

2   (2) a six-state "fraud subclass; and (3) a four-state "promissory estoppel subclass."  (Doc. 80 at 3-6.)

3     The Court has the authority to cure the defects of a proposed class definition. *See, e.g., Wolph v.*

4   *Acer Am. Corp.*, 272 F.R.D. 477, 482-83 (N.D. Cal. 2011); *see also Powers v. Hamilton County Public*

5   *Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007) ("district courts have broad discretion to modify

6   class definitions"); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004) ("district courts

7   are permitted to limit or modify class definitions to provide the necessary precision"). In addition, the

8   Court may consider proposals to change a class definition first raised in a plaintiff's reply brief on a

9   motion for class certification. *See, e.g., Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives &*

10   *Composites, Inc.*, 209 F.R.D. 159, 161 (C.D. Cal. 2002) (in response to the defendant's objections that

11   individual factual assessments precluded class certification, to "alleviate[] these concerns," the

12   plaintiffs proposed an amended definition in their reply brief, which was considered by the court in

13   evaluating the Rule 23 requirements); *Conant v. McCaffrey*, 172 F.R.D. 681, 683 (N.D. Cal. 1997)

14   (finding the plaintiffs "substantially alleviated" the problem resulting from an overly broad class

15   definition by "revising  the class definition in their reply brief").  Accordingly, the Court may consider

16   the subclasses proposed by Plaintiff in his reply brief to address Defendant's arguments.

17     Significantly, however, Plaintiff offers no analysis of the Rule 23(a) prerequisites for the

18   proposed implied covenant subclass, promissory estoppel subclass, or fraud subclass.[8]  Although

19   Plaintiff asserts Nationstar "identified 7,000 to 7,500 borrowers who . . . were processed during the pre-

20   January 2010 sign-then-book phase of Nationstar's HAMP procedures"[9] (Doc. 69 at 18), Plaintiff fails

21   to offer any evidence regarding the number of borrowers in each of the states identified in the

22   subclasses.  (*See generally* Doc. 80.)  The Court is unable to speculate regarding the number of

23   borrowers in each state who entered into permanent loan modifications under HAMP with Nationstar.

24   *See Wal-mart Stores,* 131 S. Ct. at 2551 (a plaintiff "must be prepared to prove that there are in fact

25   sufficiently numerous parties"); *see also Schwartz v. Upper Deck Co.,* 183 F.R.D. 672, 681 (S.D. Cal.

26

27     [8] Notably, Plaintiff's motion for class certification discusses *only* the breach of contract claim, and does not mention his claims for breach of the implied covenant, promissory estoppel, or fraud.  (*See generally* Doc. 69.)  Plaintiff offers no explanation why he failed to raise this issue in his motion or why he is entitled to raise this issue in his reply.

28     [9] *See* Footnote 4.

1999) ("Plaintiffs must show some evidence of or reasonably estimate the number of class members").

As the Eleventh Circuit explained in *Vega v. T-Mobile USA, Inc.*, even where a plaintiff establishes the number of putative class members in nationwide class was "in the thousands," the plaintiff nevertheless has a burden to establish the numerosity requirement is satisfied by a subclass. *Id.*, 564 F.3d 1256, 1267-68 (11th Cir. 2009). Specifically, the court explained:

> Yes, T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1). However, a plaintiff still bears the burden of establishing every element of Rule 23 [citation], and a district court's factual findings must find support in the evidence before it. In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation. Accordingly, the district court abused its discretion by finding the numerosity requirement to be satisfied with respect to a Florida-only class when the record is utterly devoid of any showing that the certified class of T-Mobile sales representatives "in Florida" is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

*Id.*, 564 F.3d at 1267-68 (citation omitted). Similarly, here, Plaintiff identifies evidence related to the nationwide class, but offers no evidence related to the number of borrowers in each of the proposed subclasses. Thus, Plaintiff fails to meet his burden to show the requirements of Rule 23(a)(1) are satisfied by the proposed implied covenant, promissory estoppel, and fraud subclasses. *See Vega*, 564 F.3d at 1268; *see also Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013) ("where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone"). Accordingly, the Court recommends certification of Plaintiff's proposed subclasses be **DENIED**.

### D.      Issues Class under Rule 23(c)(4)

Plaintiff asserts that "to the extent the Court declines to certify the Class in accordance with Rule 23(b)(3), the Court should certify an issues-class under Rule 23(c)(4)" to determine "whether Nationstar breached… PMAs by processing using the sign-then-book procedure." (Doc. 69 at 29-30.) According to Plaintiff, such an "issue class" is appropriate here:

> The common issue for the entire class—which asks whether Nationstar breached their PMAs by processing them using the sign-then-book procedure—should be adjudicated in a single proceeding. Such a determination would significantly advance the litigation and, if successful, allow aggrieved borrowers to file claims for damages as opposed to having to re-litigate this specific issue. It would further provide consistency and uniformity with respect to Nationstar's borrowers concerning their rights and obligations under HAMP.

21

(*Id.* at 30-31.)  With the common issue identified by Plaintiff, he argues the action "presents a model set of facts for, at the very least, certification of an issue class in accordance with Rule 23(c)(4)."  (*Id.* at 31.)

Defendant opposes certification of an "issue class" as proposed by Plaintiff, arguing certification of such a class "solely on the question of breach would benefit no one except Burton's lawyers, as each putative class member would still have to file a separate individual action to recover." (Doc. 72 at 15.)  Defendant notes, "Under Ninth Circuit precedent, no issue class may be certified unless the court finds that 'adjudication of the certified issues would significantly advance the resolution of the underlying case, thereby achieving judicial economy and efficiency.'" (*Id.* at 37, *quoting Valentino v. Carter-Wallace, Inc.*, 97 F.3d at 1227, 1229, 1234-35 (9th Cir. 1996)).

Pursuant to Rule 23(c)(4): "When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  The Ninth Circuit has endorsed the use of issue classes where individualized questions predominate and make certification under Rule 23(b)(3) inappropriate.  *See Valentino*, 97 F.3d at 1234 (9th Cir. 1996) ("[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues"); *see also Dukes*, 603 F.3d at 620 n. 43 ("[r]elying on Rule 23(c)(4), our own precedent also generally allows class treatment of common issues even when not all issues may be treated on a class basis").  When evaluating whether certification under Rule 23(c)(4), the Court considers whether, as under Rule 23(b)(3), a class action is the superior method of litigating the action. *See In re N.D. Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 856 (9th Cir. 1982) (treating Rule 23(c)(4)(A) as part of the superiority inquiry).

The superiority inquiry requires a determination of "whether objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023 (citation omitted). Pursuant to Rule 23(b)(3), the Court considers four non-exclusive factors to determine whether a class is a superior method of adjudication, including (1) the class members' interest in individual litigation, (2) other pending litigation, (3) the desirability of concentrating the litigation in one forum, and (4)

22

1   difficulties with the management of the class action.  The focus of the superiority evaluation is on

2   "judicial economy."  *Valentino*, 97 F.3d at 1234. When "the time saved by a class action may be

3   relatively insignificant," a class action is not a superior method of trying issues.  *See Dalkon Shield*

4   *IUD Prods. Liab. Litig.*, 693 F.2d at 856.

5         Here, there is no indication that class members have an interest in individual litigation, or that

6   they would have standing to bring such suits.  Plaintiff's counsel reports also that they believe "this is

7   only class action [he] is aware of challenging this particular sign-then-book policy." (Doc. 69 at 28,

8   citing Doc. 69-2 at 41, Woodrow Decl. ¶13.)   There is no evidence, however, that the litigation should

9   be concentrated in this, or one, forum.  Indeed, the difficulties in managing this case as a class action

10  include a "range of practical problems that may render the class format inappropriate for a particular

11  suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  For example, the laws of all states

12  governing breach of contracts are implicated in the nationwide class.  Further, as discussed above, the

13  Court would be required to evaluate the terms of the various PMAs according to the applicable and

14  varying guidelines in place at the various times throughout the class period to determine whether

15  Nationstar breached the PMAs under the various laws of the states.  This does not lend itself to a single

16  determination of a single issue.  Accordingly, it does not appear that certification of a Rule 23(c)(4)

17  class is a superior method of litigating the claims presented, or that such a class would serve the

18  interests of judicial economy. Therefore, the Court recommends Plaintiff's motion to certify an "issues

19  class" be **DENIED**.

20  **VII.    FINDINGS AND RECOMMENDATIONS**

21        As set forth above, Plaintiff failed to demonstrate class certification is appropriate for the

22  proposed class, and the subclasses proposed in his Reply.  The class definition is overbroad, and

23  includes individuals who lack Article III standing.  Further, Plaintiff fails to carry his burden to show

24  the requirements of Rule 23 are satisfied.

25        Accordingly, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for class

26  certification be **DENIED**.

27        These findings and recommendations are submitted to the United States District Judge assigned

28  to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of

Practice for the United States District Court, Eastern District of California. Within 21 days of the date of service of these findings and recommendations, any party may file and serve written objections with the Court.  A document containing objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the Objections shall be filed and served within fourteen days of the date of service of the Objections.   The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

   Dated:   **October 8, 2014**                 **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE